# EXHIBIT A

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ Luzerne _____ **County**

| For Prothonotary Use Only: | | TIME STAMP |
|---|---|---|
| Docket No: | 2020-07988 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| David Hagenbaugh | Nissan North America d/b/a Nissan USA |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: (check one) ☐ within arbitration limits ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☒ Yes ☐ No    **Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Christopher B. Slusser, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:
  _____
  _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:
  _____
  _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____
  _____

**CONTRACT** *(do not include Judgments)*
- ☒ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☒ Other:
  Fraud; Unjust Enrichment;
  & Violation of UTPCPL Act

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
  _____
- ☐ Zoning Board
- ☐ Other:
  _____
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:
  _____
  _____

*Updated 1/1/2011*

THE SLUSSER LAW FIRM

BY:   CHRISTOPHER B. SLUSSER, ESQUIRE        ATTORNEYS FOR PLAINTIFFS
      IDENTIFICATION NO. 78609

      JOHN M. SOLT, ESQUIRE
      IDENTIFICATION NO. 89146

      JOSEPH R. BARANKO, JR., ESQUIRE
      IDENTIFICATION NO. 39124

      JEFFREY A. ROCKMAN, ESQUIRE
      IDENTIFICATION NO. 47463

      JOHN LUCAS, ESQUIRE
      IDENTIFICATION NO. 53503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and | IN THE COURT OF COMMON PLEAS |
| HEATHER HAGENBAUGH, his wife | |
| 309 Plymouth Avenue | OF LUZERNE COUNTY |
| Wilkes-Barre, PA 18702; on behalf of themselves | |
| and all others similarly situated | |
| | |
| MICHAEL P. HOMANKO, JR. | CLASS ACTION COMPLAINT |
| 349 West 30ᵗʰ Street | |
| Hazle Township, PA 18202; on behalf of himself | |
| and all others similarly situated | JURY TRIAL DEMANDED |
| | |
| SHERRI A. HOMANKO | |
| 349 West 30ᵗʰ Street | |
| Hazle Township, PA 18202; on behalf of herself | CIVIL ACTION NO. 2020-07988 |
| and all others similarly situated | |
| | |
| and | |
| | |
| FREDERICK L. LUBRECHT and | |
| MARIANNE P. LUBRECHT, his wife | |
| 269 Turnberry Lane | |
| Hazle Township, PA 18202; on behalf of | |
| themselves and all others similarly situated | |
| | |
| Plaintiffs | |
| | |
| vs. | |
| | |
| NISSAN NORTH AMERICA d/b/a | |
| NISSAN USA | |
| One Nissan Way | |
| Franklin, TN 37067; | |

HYUNDAI MOTOR COMPANY :
10550 Talbert Avenue :
Fountain Valley, CA 92708; :
 :
KIA MOTORS AMERICA :
111 Peters Canyon Road :
Irvine, CA 92606; :
 :
AIRPORT ROAD MOTORS N., LLC. :
d/b/a HAZLETON NISSAN :
661 Airport Road, :
Hazle Township, PA 18202; :
 :
AIRPORT ROAD MOTORS HY., LLC. :
d/b/a HAZLETON HYUNDAI :
703 Airport Road :
Hazle Township, PA 18202; :
 :
AIRPORT ROAD MOTORS K, LLC :
d/b/a HAZLETON KIA :
701 Airport Road, :
Hazle Township, PA 18202; :
 :
MICHAEL S. SAPORITO :
382 Old York Road :
Hamilton, NJ 08620; :
 :
ANTONIO D. PIERCE :
1376 Via Romero :
Palos Verdes Estates, CA 90274; :
 :
and :
 :
JESSIE W. ARMSTEAD :
2300 Top Rail Lane :
Southlake, TX 76092 :
 :
            Defendants :

**NOTICE:**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH

**AVISO**

A USTED SE LE HA DEMANDADO EN LA CORTE. Si usted quiere defenderse contra la demanda expuesta en las siguientes páginas, tiene que tomar acción en un plazo de los veinte (20) días después que reciba esta demanda y aviso, por presentar una notificación de comparecencia escrita personalmente o por un abogado y radicar por escrito en law Corte sus defensas u objeciones a las demandas presentadas en su contra. Se le advierte que si falla en hacerlo, el caso podría seguir adelante sin usted y un fallo podría ser dictado en su contra por law Corte sin previo aviso por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio pedido por esta demandante. Puede que usted pierda dinero o propiedad u otros derechos importantes para usted. USTED

INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PEOPLE AT A REDUCED RATE OR NO FEE.

North Penn Legal Services, Inc.
33 North Main Street
Suite 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Toll Free
(570) 824-0001 Fax

101 West Broad Street
Suite 713
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Toll Free
(570) 455-3625 Fax

DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO, DIRÍJASE O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ABAJO. ESTA OFICINA PUEDE PROVEERLE CON INFORMACIÓN SOBRE COMO CONTRATAR UN ABOGADO. SI NO TIENE LOS FONDOS SUFICIENTES PARA CONTRATAR UN ABOGADO, ESTA OFICINA PODRÍA PROPORCIONARLE INFORMACIÓN ACERCA DE AGENCIAS QUE PUEDAN OFRECERLES SERVICIOS LEGALES A PERSONAS QUE REÚNAN LOS REQUISITOS A UN HONORARIO REDUCIDO O GRATIS.

Servicios Legales de North Penn, Inc.
33 la Calle Main del Norte
Oficina 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Llamada gratuita
(570) 824-0001 Fax

101 la Calle Brod del Oeste
Oficina 513
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Llamada gratuita
(570) 455-3625 Fax

THE SLUSSER LAW FIRM

DY:     CHRSTOPHER B. SLUSSER, ESQUIRE               ATTORNEYS FOR PLAINTIFFS
        IDENTIFICATION NO. 78608

        JOHN M. SOLT, ESQUIRE
        IDENTIFICATION NO. 89146

        JOSEPH R. BARANKO, JR., ESQUIRE
        IDENTIFICATION NO. 39124

        JEFFREY A. ROCKMAN, ESQUIRE
        IDENTIFICATION NO. 47463

        JOHN LUCAS, ESQUIRE
        IDENTIFICATION NO. 58503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 19202
(570) 453-0463

| | | |
|---|---|---|
| DAVID HAGENBAUGH and | : | IN THE COURT OF COMMON PLEAS |
| HEATHER HAGENBAUGH, his wife | : | |
| 309 Plymouth Avenue | : | OF LUZERNE COUNTY |
| Wilkes-Barre, PA 18702; on behalf of themselves | : | |
| and all others similarly situated | : | |
| | : | CLASS ACTION COMPLAINT |
| MICHAEL P. HOMANKO, JR. | : | |
| 349 West 30th Street | : | |
| Hazle Township, PA 18202; on behalf of himself | : | |
| and all others similarly situated | : | JURY TRIAL DEMANDED |
| | : | |
| SHERRI A. HOMANKO | : | |
| 349 West 30th Street | : | |
| Hazle Township, PA 18202; on behalf of herself | : | CIVIL ACTION NO. 2020-07988 |
| and all others similarly situated | : | |
| | : | |
| and | : | |
| | : | |
| FREDERICK L. LUBRECHT and | : | |
| MARIANNE P. LUBRECHT, his wife | : | |
| 269 Turnberry Lane | : | |
| Hazle Township, PA 18202; on behalf of | : | |
| themselves and all others similarly situated | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| VS. | : | |
| | : | |
| NISSAN NORTH AMERICA d/b/a | : | |
| NISSAN USA | : | |
| One Nissan Way | : | |
| Franklin, TN 37067; | : | |
| | : | |
| HYUNDAI MOTOR COMPANY | : | |
| 10550 Talbert Avenue | : | |

1

| | |
|---|---|
| Fountain Valley, CA 92708; | : |
| | : |
| | : |
| KIA MOTORS AMERICA | : |
| 111 Peters Canyon Road | : |
| Irvine, CA 92606; | : |
| | : |
| AIRPORT ROAD MOTORS N., LLC. | : |
| d/b/a HAZLETON NISSAN | : |
| 661 Airport Road, | : |
| Hazle Township, PA 18202; | : |
| | : |
| | : |
| | : |
| AIRPORT ROAD MOTORS HY., LLC. | : |
| d/b/a HAZLETON HYUNDAI | : |
| 703 Airport Road | : |
| Hazle Township, PA 18202; | : |
| | : |
| AIRPORT ROAD MOTORS K, LLC | : |
| d/b/a HAZLETON KIA | : |
| 701 Airport Road, | : |
| Hazle Township, PA 18202; | : |
| | : |
| MICHAEL S. SAPORITO | : |
| 382 Old York Road | : |
| Hamilton, NJ 08620; | : |
| | : |
| ANTONIO D. PIERCE | : |
| 1376 Via Romero | : |
| Palos Verdes Estates, CA 90274; | : |
| | : |
| and | : |
| | : |
| JESSIE W. ARMSTEAD | : |
| 2300 Top Rail Lane | |
| Southlake, TX 76092 | |

Defendants

## CLASS ACTION COMPLAINT

Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife, Michael P. Homanko,

Jr. and Sherri A. Homanko, and Frederick L. Lubrecht and Marianne P. Lubrecht, his wife, hereby

bring this action individually and behalf of all others similarly situated (hereafter, the "Class")

pursuant to Pennsylvania Rules of Civil Procedure 1701 et. seq. against Defendants herein named

2

for fraudulently inducing consumers into purchasing and/or leasing new vehicles by offering free services under a certain "Set for Life Program", which is more fully described herein. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## THE PARTIES

1. Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife (collectively referred to herein as the "Hagenbaughs"), are adult individuals residing at 308 Plymouth Avenue, Wilkes-Barre, Luzerne County, Pennsylvania 18702.

2. Plaintiffs, Michael P. Homanko, Jr. and Sherri A. Homanko (collectively referred to herein as the "Homankos"), are adult individuals residing at 349 West 30th Street, Hazle Township, Luzerne County, Pennsylvania 18202. Michael P. Homanko, Jr. is the father of Sherri A. Homanko.

3. Plaintiff, Frederick L. Lubrecht and Marianne P. Lubrecht his wife (collectively referred to herein as the "Lubrechts"), are adult individuals residing at 269 Turnberry Lane, Hazle Township, Luzerne County, Pennsylvania 18202.

4. Defendant, Nissan North America d/b/a Nissan USA ("Nissan") is, upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at One Nissan Way, Franklin, Tennessee 37067.

5. Defendant, Hyundai Motor Company ("Hyundai") is, upon information and belief, a corporation organized under the laws of the State of California, with its corporate headquarters located at 10550 Talbert Ave., Fountain Valley, California 92708.

3

6.     Defendant. Kia Motors America ("Kia") is. upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California 92606. At all times material hereto, Defendant, Kia was/is a subsidiary of Defendant, Hyundai, which owns approximately one-third of Kia's stock and is Kia's largest stakeholder. (Defendants, Hyundai, Nissan and Kia are hereinafter sometimes collectively referred to as the "Manufacturers.")

7.     Defendant, Airport Road Motors N., LLC. d/b/a Hazleton Nissan ("Hazleton Nissan"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 661 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Nissan was an authorized Nissan dealer.

8.     Defendant, Airport Road Motors Hy., LLC. d/b/a Hazleton Hyundai ("Hazleton Hyundai"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 703 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Hyundai was an authorized Hyundai dealer.

9.     Defendant, Airport Road Motors K, LLC. d/b/a Hazleton Kia ("Hazleton Kia"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 701 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Defendant, Hazleton Kia was an authorized Kia dealer. (Defendants, Hazleton Nissan, Hazleton Hyundai and Hazleton Kia are hereinafter sometimes collectively referred to as the "Dealerships.")

10.     Defendant, Michael S. Saporito ("Saporito"), is an adult individual residing at 382 Old York Road, Hamilton, New Jersey 08620.

4

11.    Defendant, Antonio D. Pierce ("Pierce"), is an adult individual residing at 1376 Via Romero, Palos Verdes Estates, California 90274.

12.    Defendant, Jessie W. Armstead ("Armstead"), is an adult individual residing at 2300 Top Rail Lane, Southlake, Texas 76092. (Defendants, Saporito, Pierce and Armistead are hereinafter sometimes collectively referred to as the "Owners.")

13.    At all times material hereto, Dealerships were owned and/or controlled by the Owners. At all times material hereto, Owners personally directed, participated or cooperated in the misfeasance that forms the basis of this Complaint and as such, can be held personally liable therefore under Pennsylvania case precedent.

14.    Whenever any reference is made in this Complaint to any representation, act or transaction of the Dealerships, or any principals, officers, directors, employees, agents, or representatives thereof, including but not limited to the Owners, such allegations shall be deemed to mean that such principals, officers, directors, employees, agents or representatives of the Dealerships, whether they were acting on their own behalf or for their own benefit, did or authorized such representations, acts or transactions on behalf of the Manufacturers and, based upon the Manufacturers' actions and/or conduct, possessed the actual or apparent authority to do so.

## FACTUAL HISTORY

15.    Sometime in or about 2014, Owners agreed to open a retail auto mall in Hazle Township, Luzerne County, Pennsylvania known as the Hazleton Auto Mall, which was to consist of separate Nissan, Hyundai, Kia and Honda dealerships. In or about February 2015, Defendants, Hazleton Nissan, Owners and certain entities which were owned and/or controlled by Owners, including All Pro Airport Rd., N 4, LLC., All Pro Airport Rd. Detail 3, LLC., and Airport Road

5

Motors Detail (collectively, the "Nissan Financing Entities"), sought and subsequently received financing from Nissan Motor Acceptance Corporation ("NMAC"), an entity which is closely affiliated with Defendant, Nissan and which provides wholesale credit to authorized Nissan dealers to purchase vehicle inventory for retail sale to the public and for working capital and real estate loans. Wholesale credit lines are commonly referred to as "floorplan financing."

16.     As a condition to its agreement to extend such floorplan financing, NMAC required, among other things, that Hazleton Nissan enter into an Automotive Wholesale Finance and Security Agreement ("WSA") pursuant to which Hazleton Nissan agreed to promptly repay to NMAC, upon the retail sale of each Nissan vehicle, the monies advanced by NMAC when Hazleton Nissan purchased that vehicle at wholesale. Under the terms of the WSA, Hazleton Nissan's failure to pay NMAC upon the retail sale of a Nissan vehicle constituted a default thereunder and is commonly referred to as a "sale out of trust" or "SOT". NMAC further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Nissan, Owners and the Nissan Financing Entities. Finally, and pursuant to the terms of the WSA, Hazleton Nissan, Owners and the Nissan Financing Entities granted permission to NMAC to conduct periodic audits of Hazleton Nissan's books and records in order to verify, among other things, that it was promptly paying NMAC upon the retail sale of each Nissan vehicle.

17.     Defendants, Hazleton Hyundai, Hazleton Kia, Owners and certain entities/affiliates which were owned and/or controlled by Owners, including All Pro Airport Rd. K/H Y 2, LLC. (the "Hyundai/Kia Financing Entity), also sought and subsequently received financing from Hyundai Capital America ("HCA"), an entity which is closely affiliated with Defendants, Hyundai and Kia and which provides floorplan financing to authorized Hyundai and Kia dealers. As a condition to HCA's agreement to extend such floorplan financing, Hazleton Hyundai and Hazleton Kia executed separate Inventory Loan and Security Agreements (the "Hyundai ILSA's"), dated June

6

10. 2015, pursuant to which Hazleton Hyundai and Hazleton Kia agreed to promptly repay to HCA, upon the retail sale of each Hyundai and Kia vehicle, the monies advanced by HCA when Hazleton Hyundai and Hazleton Kia purchased that vehicle at wholesale. Under the terms of the ILSA's, Hazleton Hyundai's and Hazleton Kia's failure to pay HCA upon the retail sale of a Hyundai or Kia vehicle constituted a default thereunder. HCA further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Hyundai, Hazleton Kia, Owners and the Hyundai/Kia Financing Entity. Finally, and pursuant to the terms of the ILSA's, Hazleton Hyundai, Hazleton Kia and the Hyundai/Kia Financing Entity granted permission to HCA to conduct periodic audits of Hazleton Hyundai's and Hazleton Kia's books and records in order to verify, among other things, that they were promptly paying HCA upon the retail sale of each Hyundai and Kia vehicle.

18.     Upon information and belief, Dealerships also entered into certain dealership agreements (hereafter, the "Dealership Agreements") with the Manufacturers pursuant to which, *inter alia*, the Dealerships agreed to (a) actively and vigorously market the Manufacturers' new vehicles; (b) use their best efforts to attain certain sales targets set forth by the Manufacturers; (c) conspicuously display at Dealerships' facilities the Manufacturers' approved sales, service and parts signs and (d) send Dealerships' sales persons to any/all of Manufacturers' regularly scheduled sales and service meetings for the purpose of obtaining current Manufacturers' information and policies.

19.     Pursuant to the terms of the Dealership Agreements, the Manufacturers agreed, upon information and belief, to market their vehicles nationwide and locally within Northeastern Pennsylvania. The Manufacturers further granted authority to Dealerships to (a) sell and/or lease the Manufacturers' vehicles to consumers; (b) identify themselves as the Manufacturers' authorized dealerships; and (c) use the Manufacturers' logos/marks in the advertising, promotion,

7

sale and servicing of the Manufacturers' vehicles and other products. Moreover, and upon information and belief, Manufacturers also granted authority to the Dealerships to engage in their own independent advertising and promotion of the Manufacturers' vehicles, goods and services, subject to the Manufacturers' prior approval. Upon information and belief, the Dealership Agreements provided the Manufacturers with the right to revoke the Dealerships' status as authorized dealers of Manufacturers' vehicles if the Dealerships breached the provisions contained therein. Plaintiffs are currently not in possession of these Dealership Agreements and intend to obtain same through discovery.

20.     The Hazleton Auto Mall opened in or about November 2016. The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, used and advertised a uniform set of marketing tactics and aggressive sales pitches to induce consumers into purchasing and leasing new vehicles. Specifically, the Dealerships, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, advertised a "Set for Life Program" pursuant to which the Dealerships represented that all purchasers would receive powertrain/engine/transmission warranties, free oil and filter changes, free car washes, free loaner vehicles and free state inspections for as long as they owned their vehicles (hereinafter, the "Set for Life Program").

21.     The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, created brochures and signage advertising the Set for Life Program, which were emblazoned with the Manufacturers' internationally recognizable, trademarked logos. Dealerships and Owners, with the Manufacturers' prior knowledge, approval and/or ratification, also advertised the Set for Life Program on local radio and television and through social media. In so doing, Dealerships, Owners and Manufacturers intended to create the

8

expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

22. The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, also prominently displayed and strategically placed the brochures and signage detailing the Set for Life Program throughout the Dealerships' facilities in close physical proximity to the Manufacturers' internationally recognizable, trademarked logos. In so doing, Dealerships, Owners and Manufacturers intended to create the expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

23. Defendants, Pierce and Armstead are well-known, retired professional football players. Pierce and Armstead, with the Manufacturers', Dealerships' and Defendant, Saporito's prior knowledge, approval and/or ratification, utilized their public notoriety by participating in several "meet and greet" appearances at the Dealerships' facilities. These "meet and greet" appearances were advertised in advance in local newspapers and on social media. During these appearances, Defendants, Pierce and Armstead extolled the virtues of the Manufacturers' vehicles in general and the benefits of the Set for Life Program in particular, for the intended purpose of inducing consumers to purchase and/or lease new vehicles from the Manufacturers through their authorized Dealerships.

24. Soon after opening for business in or about November 2016, Dealerships, upon information and belief, began to experience financial difficulties. Specifically, Dealerships, with Owners' knowledge and consent, sold numerous Nissan, Hyundai and Kia vehicles SOT, and without paying NMAC or HCA for same. At all times material hereto, Manufacturers were aware of or, through the exercise of rudimentary due diligence should have been aware of Dealerships' deteriorating financial condition. Nevertheless, Manufacturers continued to expressly and/or

9

impliedly authorize and/or ratify Dealerships' decision to advertise the Set for Life Program in the hope that it would generate additional sales of Manufacturers' vehicles and thereby enable Dealerships to escape the financial hole which they had dug. At all times material hereto, Manufacturers knew or should have known that Dealerships, as a result of their deteriorating financial condition, could not possibly continue to represent that the Set for Life Program's benefits would be available to consumers for as long as they owned their vehicles.

25. Hazleton Hyundai and Hazleton Kia went out of business in or about late September 2018, less than two years after opening. Hazleton Nissan went out of business in or about November 2018. Despite repeated demands from defrauded consumers, Manufacturers have refused and continue to refuse to provide the benefits specified in the Set for Life Program.

26. Defendant, Manufacturers had intimate knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners due to the financial relationship between the parties, information that was not otherwise available to Plaintiffs and/or to the general public.

27. Notwithstanding Defendant, Manufacturers' knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners, Defendant, Manufacturers permitted the Set for Life Program to continue.

## PLAINTIFFS' EXPERIENCES

### THE HAGENBAUGHS

28. The Hagenbaughs purchased a new 2017 model year Nissan Rogue, VIN # KNMAT2MT4HP500743 from Defendant, Hazleton Nissan on or about May 4, 2017. Defendant, Hazleton Nissan and the Hagenbaughs signed an agreement which specified several of the benefits which were part of the Set for Life Program (hereinafter, the "Set for Life Agreement"). Defendant, Hazleton Nissan further provided brochures to the Hagenbaughs and represented that said

10

brochures contained the full list of benefits under the Set for Life Program. Both the Set for Life Agreement and the related brochures stated that the benefits specified therein would be available for as long as the Hagenbaughs owned their Nissan vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with Defendant, Nissan's internationally known, trademarked logo. Copies of the Hagenbaughs' Retail Sale Installment Contract, the signed Set for Life Agreement between the Hagenbaughs and Hazelton Nissan and the related Set for Life Program brochures are collectively attached hereto as Exhibit "A" and are incorporated herein.

29.    The Hagenbaughs reasonably relied upon Defendant, Nissan's conduct, actions and manifestations to the general public that Defendant, Nissan had granted Defendant, Hazleton Nissan the actual and/or apparent authority to obligate Defendant, Nissan to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Nissan was unable to do so.

30.    Defendant, Nissan's conduct, actions and manifestations in this regard include but are not limited to, the following: publicly advertising the Nissan brand on local radio stations, local television and on social media; representing Hazleton Nissan as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Nissan for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

31.    When Hazleton Nissan ceased operations at the Hazleton Auto Mall in November 2018, the Hagenbaughs subsequently demanded that Defendant, Nissan provide the benefits specified in the Set for Life Program. However, Defendant, Nissan refused, and continues to refuse to do so.

11

### THE LUBRECHTS

32.    The Lubrechts purchased a new 2018 model year Hyundai Tucson wagon, VIN #
KM8J3CA48JU741730 from Defendant, Hazleton Hyundai o nor about June 28, 2018. Defendant,
Hazleton Hyundai and the Lubrechts signed a Set for Life Agreement which specified several of
the benefits contained in the Set for Life Program. Defendant, Hazleton Hyundai further provided
brochures to the Lubrechts and represented that said brochures contained the full list of benefits
under the Set for Life Program. The Set for Life Agreement and related brochures both stated that
the benefits specified therein would be available for as long as the Lubrechts owned their Hyundai
vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with
Defendant, Hyundai's internationally known, trademarked logo.

33.    Hazleton Hyundai and the Lubrechts also executed a document, dated June 28,
2018, entitled "WE OWE", which included the following representation:

### "LIFETIME WARRANTY, LIFETIME INSPECTION, LIFETIME LOANER VEHICLES, LIFETIME OIL CHANGES AT FACTORY RECOMMENDED INTERVALS AND LIFETIME CAR WASHES."

The Set for Life Agreement, the related Set for Life Program Brochures, the document
entitled "WE OWE" and other sales materials reflecting the Lubrechts' purchase are collectively
attached hereto as Exhibit "B" and are incorporated herein.

34.    The Lubrechts reasonably relied upon Defendant, Hyundai's conduct, actions and
manifestations to the general public that Defendant, Hyundai had granted Defendant, Hazleton
Nissan the actual and/or apparent authority to obligate Defendant, Hyundai to continue to provide
the benefits specified in the Set for Life Program in the event that Hazleton Hyundai was unable
to do so.

35.    Defendant, Hyundai's manifestations in this regard include but are not limited to,
the following: publicly advertising the Hyundai brand on local radio stations, local television and

12

on social media; representing Hazleton Hyundai as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Hyundai for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

36.    When Hazleton Hyundai ceased operations at the Hazleton Auto Mall in late September 2018, the Lubrechts subsequently demanded that Defendant, Hyundai provide the benefits specified in the Set for Life Program. However, Defendant, Hyundai wrongfully refused, and continues to refuse to do so.

## THE HOMANKOS

37.    The Homankos purchased a new 2017 model year Kia Sorento, VIN # 5XYPKDA50HG337817 from Defendant, Hazleton Kia on or about August 21, 2017. Defendant, Hazleton Kia provided brochures to the Hagenbaughs and represented that said brochures contained the full list of benefits under the Set for Life Program. The Set for Life Program brochures specifically stated that the benefits specified therein would be available for as long as the Homankos owned their Kia vehicle. Moreover, the Set for Life Program brochures were emblazoned with Defendant, Kia's internationally known, trademarked logo. A true and correct copy of the Homankos Retail Installment Sale Contract and the Set for Life Program brochures are collectively attached hereto as Exhibit "C" and are incorporated herein.

38.    The Homankos reasonably relied upon Defendant, Kia's conduct, actions and manifestations to the general public that Defendant, Kia had granted Defendant, Hazleton Kia the actual and/or apparent authority to obligate Defendant, Kia to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Kia was unable to do so.

13

39. Defendant, Kia's conduct, actions and manifestations in this regard include but are not limited to the following: publicly advertising the Kia brand on local radio stations, local television and on social media; representing Hazleton Kia as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Kia for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on signage and brochures advertising the Set for Life Program.

40. When Hazleton Kia ceased operations at the Hazleton Auto Mall in late September 2018, the Homankos subsequently demanded that Defendant, Kia provide the benefits specified in the "Set for Life" program. However, Defendant, Kia wrongfully refused, and continues to refuse to do so.

## CLASS ALLEGATIONS

41. This action is being brought by Plaintiffs as a Class Action pursuant to Pennsylvania Rules of Civil Procedure 1701 et seq., on Plaintiffs' own behalf and on behalf of a class of persons to which Plaintiffs belong as defined below:

42. Members of Plaintiffs' Class are defined as follows:

a. All individuals located within and/or residents of the Commonwealth of Pennsylvania, who purchased or leased automobiles at the Hazleton Auto Mall in Hazle Township, Pennsylvania from the Hazleton Nissan, Hazleton Hyundai and/or Hazleton Kia dealerships during the period of November 1, 2016 through November 30, 2018.

43. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) the Manufacturers and Dealerships and their subsidiaries, parents, successors, predecessors, and any entity in which the Manufacturers and Dealerships have a controlling interest and Manufacturers' and/or Dealerships' current or

14

former employees, officers and directors; (3) the Owners and their families; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims have been finally adjudicated on the merits or otherwise released; (6) Plaintiffs' counsel and Defendants' counsel; and (7) the legal representatives, successors and assigns of any such excluded persons.

44.     The exact number of Class members is currently unknown and unavailable to Plaintiffs, but individual joinder in this case is impracticable. The Class likely consists of at least two thousand individuals. Members of the Class can easily be identified through Dealerships' and/or Manufacturers' records.

45.     The claims of Plaintiffs as representative parties are typical of the claims of the Class, including, but not limited to the following:

    a.     As with all members of the Class, Plaintiffs were subject to and relied upon the misrepresentations, deceptive sales practices, advertising practices and policies of the Manufacturers, Dealerships and/or Owners in connection with the Set for Life Program;

    b.     As with all members of the Class, Plaintiffs were induced to purchase vehicles at the Hazleton Auto Mall by the benefits specified in the Set for Life Program;

    c.     As with all members of the Class, Plaintiffs have been harmed by similar or identical misconduct by the Manufacturers, Dealerships and/or Owners in that they were denied the benefits specified in the Set for Life Program;

    d.     Plaintiffs' injuries and/or damages are typical of other members of the Class.

46.     There are questions of law and fact common to the Class, including, but not limited to the following:

15

a. Whether Plaintiffs and all members of the Class were offered the benefits specified in the Set for Life Program as an inducement upon which they relied, to their detriment, when they purchased and/or leased their vehicles from Dealerships;

b. Whether Plaintiffs and all members of the Class reasonably relied upon the actions, conduct and/or manifestations of the Manufacturers that the Dealerships possessed the actual or apparent authority to represent and guarantee that the Manufacturers would provide the benefits specified in the Set for Life Program in the event the Dealerships were unable to do so;

c. Whether Plaintiffs and all members of the Class have been refused the benefits specified in the Set for Life Program by the Manufacturers;

d. Whether Manufacturers', Dealerships' and Owners' advertising and sales practices in connection with the Set for Life Program were deceptive, thereby violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, et seq; and

e. Whether Manufacturers', Dealerships' and Owners' outrageous and/or unconscionable acts in connection with the Set for Life Program, as aforedescribed, warrants the award of punitive damages.

47. The interests of the Class will be fairly and adequately asserted and protected by the representative parties and their counsel. First, Plaintiffs have no conflict of interest in the maintenance of the Class Action. Second, Plaintiffs' attorneys are experienced in handling and litigating fraud and consumer protection claims. Third, sufficient financial resources are available to assure that the interest of the Class will be protected.

48. Adjudicating this controversy as a Class Action would be the fairest and most efficient means of resolution:

16

a.     Common questions of law and fact predominate over any issues involving only individual Class members.

b.     the size of the Class is not so great as to cause difficulties in the management of this action as a Class Action;

c.     prosecution of separate claims by individual members of the Class would most likely would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the Class which would confront the party opposing the Class with incompatible standards of conduct; (ii) adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

d.     to the undersigned's knowledge, there is currently no litigation which has been commenced by any members of the Class involving any of the same issues raised herein;

e.     this forum is appropriate for the litigation of the claims of the entire Class since Plaintiffs and the vast majority of the Class members reside in Luzerne County and since the causes of action and/or the transactions or occurrences giving rise to the causes of action raised herein occurred in Luzerne County;

f.     given the complexities of the issues raised and/or the expenses of litigation, the separate claims of individual Class members may be insufficient in amount to support separate actions; and

g.     it is likely that the amount which may be recovered by individual Class members may be so small in relation to the expense and effort of administering the action as not to justify a Class Action.

17

49.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class Action.

## COUNT I

### (Unfair Trade Practices and Consumer Protection Law)
### 73 P.S. §§ 201-1, *et seq.*)
### (vs. All Defendants)

50.     Plaintiffs incorporate herein by reference Paragraphs 1 through 49 inclusive, of this Complaint as if the same were more fully set forth herein at length.

51.     At all relevant times hereto, there was in effect the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, et seq. ("UTPCPL")

52.     The vehicles purchased by Plaintiffs and the other Class members purchased vehicles from Defendants "primarily for personal, family or household purposes" within the meaning of Section 201-9.2 of the UTPCPL.

53.     Section 201-2(4) of the UTPCPL defines "UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS OR PRACTICES" in pertinent part, as follows:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

18

(vii) Representing that goods or services are of a particular standard, quality or grade, or
that goods are of a particular style or model, if they are of another.

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public
demand, unless the advertisement discloses a limitation of quantity;

(xiv) Failing to comply with the terms or any written guarantee or warranty given to the
buyer at, prior to or after a contract for the purchase of goods or services is made.

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of
confusion or of misunderstanding.

See, 73 P.S. Section 201-2(4)(i), (ii), (iii), (v), (vii), (ix), (x), (xiv) and (xxi).

54.    Defendants have violated each of the UTPCPL's provisions referenced in
Paragraph 51 by making the false and misleading representations described herein in connection
with the Set for Life Program. As a result of Defendants' false and misleading representations,
Plaintiffs and members of the Class have suffered "ascertainable losses" as defined by the
UTPCPL in that they have been denied the benefits specified and promised in the Set for Life
Program.

55.    At all relevant times hereto, there was in effect Chapter 301 of the Pennsylvania
Code, entitled "AUTOMOTIVE INDUSTRY TRADE PRACTICES" ("AITP"). The
provisions of Chapter 301 of the AITP are issued under Section 3.1, 73 P.S. Section 201.3.1, of
the UTPCPL.

56.    Sections 301.1 and 301.2 of the AITP provide in relevant part, as follows:

The following words and terms, when used in this chapter, have the
following meanings, unless the context clearly indicates otherwise:

19

*Advertisement*—An oral, written or graphic statement which offers for sale a particular motor vehicle or motor vehicle goods and services or which indicates the availability of a motor vehicle or motor vehicle goods and services, including a statement or representations made in a newspaper, periodical, pamphlet, circular, other publication or on radio or television; contained in a notice, handbill, sign, billboard, poster, bill, catalog or letter; or printed on or contained in a tag or label which is attached to merchandise.

**********************************************

With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

(3)    The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:

(i)    Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.

(vi)    Failing to make delivery of the advertised goods and services within the promised delivery period unless the failure is caused by reasons beyond the control of the advertiser.

(4)    The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

(5)    The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another

(6)    The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

(18)    The advertising by a motor vehicle manufacturer, dealer or repair shop of a sale or promotion in connection with the sale of a motor vehicle or motor vehicle maintenance or repair services unless the advertisement clearly and conspicuously discloses the expiration date, if any, and other conditions of the sale or promotion,

including but not limited to whether the supply of vehicles or other sale goods is limited and, if so, in what manner.

57.     Defendants have violated each of the AITP's provisions referenced in Paragraphs 54-55 inclusive, by making the false and misleading representations described herein in connection with the Set for Life Program.

58.     Plaintiff and Class members have suffered injuries caused by Defendants' false and misleading representations because they would not have purchased the vehicles if they knew the truth and/or would have purchased them on different terms.

## COUNT II

### (Breach of Contract)
### vs. All Defendants

59.     Plaintiffs incorporate herein by reference Paragraphs 1 through 58 inclusive, of this Complaint as if the same were more fully set forth herein at length.

60.     Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships Defendants further represented that the specified benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Plaintiffs and Class members relied upon said representations as an inducement for their agreement to purchase vehicles from Defendant, Dealerships.

61.     Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were unable to do so.

62.    Defendants, Manufacturers, Dealerships and Owners were and remain contractually bound to provide the benefits specified in the Set for Life Program to Plaintiffs and Class members. Defendants, Manufacturers and Owners were and remain contractually bound to continue to provide these benefits now that Dealerships have ceased business operations.

63.    Despite Plaintiffs' and Class members' repeated demands, Defendants, Manufacturers and Owners have wrongfully refused to provide the benefits specified in the Set for Life Program. As a result, Plaintiffs and Class members have been denied the benefit of their bargain.

64.    Defendants' refusal, as described above, constitutes a breach of their contracts with Plaintiffs and Class members.

65.    As a direct and proximate result of said breach, Plaintiffs and Class members have suffered and continue to suffer damages, for which they are legally entitled to recover.

## COUNT III

### (Unjust Enrichment)
### vs. All Defendants

66.    Plaintiffs incorporate herein by reference Paragraphs 1 through 65 inclusive, of this Complaint as if the same were more fully set forth herein at length.

67.    This Count is being plead in the alternative to the preceding Count II for breach of contract.

68.    Defendants, through their wrongful and unlawful conduct as described above, have reaped enonnous, ill-gotten profits from the sale of the Manufacturers' vehicles to Plaintiffs and Class members. Defendants' profits would have been reduced, but for their wrongful and unlawful refusal to provide Plaintiffs and Class members with the benefits specified in the Set for Life Program.

22

69.     Accordingly, Defendants have been unjustly enriched by their wrongful and unlawful conduct. Defendants should not be allowed to retain the proceeds from the benefits conferred upon them by Plaintiffs and Class members.

70.     In equity and good conscience, it would be unjust and inequitable to permit Defendants to enrich themselves at Plaintiffs' and Class members' expense.

71.     Defendants must therefore disgorge their unjustly acquired profits and other monetary benefits resulting from their unlawful conduct and provide restitution to Plaintiffs and Class members.

### COUNT IV

#### (Fraud)
#### vs. All Defendants

72.     Plaintiffs incorporate herein by reference Paragraphs 1 through 71 inclusive, of this Complaint as if the same were more fully set forth herein at length.

73.     Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships. Defendants further represented that the benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

74.     Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were

23

unable to do so. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

75.    Defendants knew, or should have known, that their representations were false when made. Plaintiffs and Class members relied upon Defendants' material, false representations to their great detriment when they decided to purchase vehicles from Defendant, Dealerships.

76.    In addition to their affirmative misrepresentations as afore-described, Defendant, Manufacturers had access to information concerning the dire financial condition of Defendants, Dealerships and Owners which Defendant, Manufacturers concealed from Plaintiffs and the general public.

77.    Due to their knowledge of the failing financial condition of the Dealerships and Owners, Defendant, Manufacturers knew that the promises made to Plaintiffs and to the general public in the Set for Life Program would not be honored.

78.    Despite the foregoing, Defendant, Manufacturers allowed Defendants, Dealerships and Owners to continue to make the promises in the Set for Life Program after it was apparent to Defendant, Manufacturers that said promises would not be honored.

79.    As a direct and proximate result of Defendants' material, fraudulent representations, Plaintiffs and Class members have suffered and will continue to suffer damages, for which they are legally entitled to recover.

80.    Defendants' conduct, as described above, was wanton, willful, malicious and/or grossly reckless, thereby justifying the imposition of punitive damages against Defendants.

24

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and all on behalf of all others similarly situated, seek judgment against the Defendants as follows:

a.   An order certifying the Class under Rule 1707 of the Pennsylvania Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b.   An award of three times the actual and monetary damages sustained by Plaintiffs and the Class members, pursuant to the provisions of the UTPCPL and as set forth in Count I of this Complaint;

c.   An award of actual and compensatory damages, pursuant to Count II of this Complaint;

d.   An award of restitution in the amount of actual and compensatory damages, pursuant to Count III of this Complaint;

e.   An award of punitive damages, pursuant to Count IV of this Complaint;

f.   An award of prejudgment and post-judgment interest on all amounts awarded;

g.   An award of attorneys' fees, pursuant to Counts I and III of this Complaint

h.   An award of expenses and costs of suit; and

i.   An award of such other relief as the Court may deem just and proper.

**The damages sought by Plaintiffs, individually and on behalf of all others similarly situated, exceed the jurisdictional arbitration limits to be proven at trial.**

*Signatures submitted on following page.*

25

Respectfully submitted,

THE SLUSSER LAW FIRM
I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

By: _____
    CHRISTOPHER B. SLUSSER, ESQUIRE
    Supr. ID #78609

By: _____
    JOHN M. SOLT, ESQUIRE
    Supr. ID #89146

By: _____
    JOSEPH R. BARANKO, JR., ESQUIRE
    Supr. ID # 39124

By: _____
    JEFFREY A. ROCKMAN, ESQUIRE
    Supr. ID # 47463

By: _____
    JOHN LUCAS, ESQUIRE
    Supr. ID # 53503
    1620 N. Church St., Ste. 1
    Hazleton, PA 18202
    Telephone: 570-453-0463

Attorneys for Plaintiffs

26

THE SLUSSER LAW FIRM

BY:   **CHRISTOPHER B. SLUSSER, ESQUIRE**                  ATTORNEYS FOR PLAINTIFFS
     **IDENTIFICATION NO. 78609**

     **JOHN M. SOLT, ESQUIRE**
     **IDENTIFICATION NO. 89146**

     **JOSEPH R. BARANKO, JR., ESQUIRE**
     **IDENTIFICATION NO. 39124**

     **JEFFREY A. ROCKMAN, ESQUIRE**
     **IDENTIFICATION NO. 47463**

     **JOHN LUCAS, ESQUIRE**
     **IDENTIFICATION NO. 53503**

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | | |
|---|---|---|
| DAVID HAGENBAUGH and | : | IN THE COURT OF COMMON PLEAS |
| HEATHER HAGENBAUGH, his wife | : | |
| 309 Plymouth Avenue | : | OF LUZERNE COUNTY |
| Wilkes-Barre, PA 18702; on behalf of themselves | : | |
| and all others similarly situated | : | |
| | : | |
| MICHAEL P. HOMANKO, JR. | : | CLASS ACTION COMPLAINT |
| 349 West 30th Street | : | |
| Hazle Township, PA 18202; on behalf of himself | : | |
| and all others similarly situated | : | JURY TRIAL DEMANDED |
| | : | |
| SHERRI A. HOMANKO | : | |
| 349 West 30th Street | : | |
| Hazle Township, PA 18202; on behalf of herself | : | CIVIL ACTION NO. ____ 2020-07988 |
| and all others similarly situated | : | |
| | : | |
| and | : | |
| | : | |
| FREDERICK L. LUBRECHT and | : | |
| MARIANNE P. LUBRECHT, his wife | : | |
| 269 Turnberry Lane | : | |
| Hazle Township, PA 18202; on behalf of | : | |
| themselves and all others similarly situated | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| NISSAN NORTH AMERICA d/b/a | : | |
| NISSAN USA | : | |
| One Nissan Way | : | |
| Franklin, TN 37067; | : | |
| | : | |

| | |
|---|---|
| HYUNDAI MOTOR COMPANY<br>10550 Talbert Avenue<br>Fountain Valley, CA 92708; | : |
| | : |
| KIA MOTORS AMERICA<br>111 Peters Canyon Road<br>Irvine, CA 92606; | : |
| | : |
| AIRPORT ROAD MOTORS N., LLC.<br>d/b/a HAZLETON NISSAN<br>661 Airport Road,<br>Hazle Township, PA 18202; | : |
| | : |
| AIRPORT ROAD MOTORS HY., LLC.<br>d/b/a HAZLETON HYUNDAI<br>703 Airport Road<br>Hazle Township, PA 18202; | : |
| | : |
| AIRPORT ROAD MOTORS K, LLC<br>d/b/a HAZLETON KIA<br>701 Airport Road,<br>Hazle Township, PA 18202; | : |
| | : |
| MICHAEL S. SAPORITO<br>382 Old York Road<br>Hamilton, NJ 08620; | : |
| | : |
| ANTONIO D. PIERCE<br>1376 Via Romero<br>Palos Verdes Estates, CA 90274; | : |
| | : |
| and | : |
| | : |
| JESSIE W. ARMSTEAD<br>2300 Top Rail Lane<br>Southlake, TX 76092 | : |
| | : |
| Defendants | : |

**NOTICE**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH

**AVISO**

A USTED SE LE HA DEMANDADO EN LA CORTE. Si usted quiere defenderse contra la demanda expuesta en las siguientes páginas, tiene que tomar acción en un plazo de los viente (20) días después que reciba esta demanda y aviso, por presentar una notificación de comparecencia escrita personalmente o por un abogado y radicar por escrito en law Corte sus defensas u objeciones a las demandas presentadas en su contra. Se le advierte que si falla en hacerlo, el caso podría seguir adelante sin usted y un fallo podria ser dictado en su contra por law Corte sin previo aviso por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio pedido por el/la demandante. Puede que usted pierda dinero o propiedad u otros derechos importantes para usted. USTED

INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PEOPLE AT A REDUCED RATE OR NO FEE.

North Penn Legal Services, Inc.
33 North Main Street
Suite 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Toll Free
(570) 824-0001 Fax


101 West Broad Street
Suite 713
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Toll Free
(570) 455-3625 Fax

**DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO, DIRÍJASE O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ABAJO. ESTA OFICINA PUEDE PROVEERLE CON INFORMACIÓN SOBRE COMO CONTRATAR UN ABOGADO. SI NO TIENE LOS FONDOS SUFICIENTES PARA CONTRATAR UN ABOGADO, ESTA OFICINA PODRÍA PROPORCIONARLE INFORMATCIÓN ACERCA DE AGENCIAS QUE PUEDAN OFRECERLES SERVICIOS LEGALES A PERSONAS QUE REÚNAN LOS REQEQUISTOS A UN HONORARIO REDUCIDO O GRATIS.**

Servicious Legales de North Penn, Inc.
33 la Calle Main del Norte
Oficina 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Llamada gratuita
(570) 824-0001 Fax


101 la Calle Brod del Oeste
Oficina 513
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Llamada gratuita
(570) 455-3625 Fax

# SHERIFF'S OFFICE OF LUZERNE COUNTY

**Brian M. Szumski**
*Sheriff*



**C. David Pedri**
*County Manager*

**Joan Hoggarth**
*Director of Judicial Services & Records*

---

DAVID HAGENBAUGH (et al.)
vs.
NISSAN NORTH AMERICA DBA NISSAN USA (et al.)

**Case Number**
7988-2020

## SHERIFF'S RETURN OF SERVICE

09/10/2020   10:16 AM - DEPUTY WANDA J. BABULA, BEING DULY SWORN ACCORDING TO LAW, DEPOSES AND SAYS, AN ATTEMPT TO SERVE THE COMPLAINT & NOTICE UPON AIRPORT ROAD MOTORS N LLC DBA HAZLETON NISSAN, AT 661 AIRPORT RD, HAZLE TWP, PA 18202, WAS UNSUCCESSFUL. COMPLAINT & NOTICE RETURNED AS NOT FOUND.

UNDER NEW OWNERSHIP. LITHIA HAZLETON H LLC HAZLETON HONDA. JERI NACE - RECEPTIONIST, DAVID LEWIS - MANAGER.

WANDA J. BABULA, DEPUTY

09/10/2020   10:16 AM - DEPUTY WANDA J. BABULA, BEING DULY SWORN ACCORDING TO LAW, DEPOSES AND SAYS, AN ATTEMPT TO SERVE THE COMPLAINT & NOTICE UPON AIRPORT ROAD MOTORS HY LLC DBA HAZLETON HYUNDAI, AT 703 AIRPORT RD, HAZLE TWP, PA 18202, WAS UNSUCCESSFUL. COMPLAINT & NOTICE RETURNED AS NOT FOUND.

UNDER NEW OWNERSHIP. LITHIA HAZLETON H LLC HAZLETON HONDA. JERI NACE - RECEPTIONIST, DAVID LEWIS - MANAGER.

WANDA J. BABULA, DEPUTY

09/10/2020   10:16 AM - DEPUTY WANDA J. BABULA, BEING DULY SWORN ACCORDING TO LAW, DEPOSES AND SAYS, AN ATTEMPT TO SERVE THE COMPLAINT & NOTICE UPON AIRPORT ROAD MOTORS K LLC DBA HAZLETON KIA, AT 701 AIRPORT RD, HAZLE TWP, PA 18202, WAS UNSUCCESSFUL. COMPLAINT & NOTICE RETURNED AS NOT FOUND.

UNDER NEW OWNERSHIP. LITHIA HAZLETON H LLC HAZLETON HONDA. JERI NACE - RECEPTIONIST, DAVID LEWIS - MANAGER.

WANDA J. BABULA, DEPUTY

SO ANSWERS,

BRIAN M. SZUMSKI, SHERIFF

September 14, 2020

PROTHONOTARYLUZERNECOUNTY
FILEDSEP15'20PM1:33

(c) CountySuite Sheriff, Teleosoft, Inc.

THE SLUSSER LAW FIRM

BY:   CHRISTOPHER B. SLUSSER, ESQUIRE          ATTORNEYS FOR PLAINTIFFS
      IDENTIFICATION NO. 78609

      JOHN M. SOLT, ESQUIRE
      IDENTIFICATION NO. 89146

      JOSEPH R. BARANKO, JR., ESQUIRE
      IDENTIFICATION NO. 39124

      JEFFREY A. ROCKMAN, ESQUIRE
      IDENTIFICATION NO. 47463

      JOHN LUCAS, ESQUIRE
      IDENTIFICATION NO. 53503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and HEATHER HAGENBAUGH, his wife on behalf of themselves and all others similarly situated; MICHAEL P. HOMANKO, JR. on behalf of himself and all others similarly situated; SHERRI A. HOMANKO on behalf of herself and all others similarly situated; and FREDERICK L. LUBRECHT and MARIANNE P. LUBRECHT, his wife on behalf of themselves and all others similarly situated, <br><br> Plaintiffs <br><br> vs. <br><br> NISSAN NORTH AMERICA d/b/a NISSAN USA; HYUNDAI MOTOR COMPANY; KIA MOTORS AMERICA; AIRPORT ROAD MOTORS N., LLC. d/b/a HAZLETON NISSAN; AIRPORT ROAD MOTORS HY., LLC. d/b/a HAZLETON HYUNDAI; AIRPORT ROAD MOTORS K, LLC d/b/a HAZLETON KIA; MICHAEL S. SAPORITO; ANTONIO D. PIERCE; AND JESSIE W. ARMSTEAD, <br><br> Defendants | IN THE COURT OF COMMON PLEAS <br><br> OF LUZERNE COUNTY <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> CIVIL ACTION NO. 2020-07988 |

## <u>AFFIDAVIT OF SERVICE</u>

I, Christopher B. Slusser, Esquire, counsel for the Plaintiffs hereby certify that a true and correct copy of the *Complaint* in the above captioned matter has been served upon the Defendant, Nissan North America d/b/a Nissan USA, by certified mail, return receipt requested, as evidenced by the return receipt attached hereto as Exhibit "A", addressed as follows:

<div align="center">

Nissan North America
d/b/a Nissan USA
One Nissan Way
Franklin, TN 37067

</div>

Respectfully submitted,

THE SLUSSER LAW FIRM

By _____
    CHRISTOPHER B. SLUSSER, ESQUIRE
    Attorney ID 78609

SWORN TO and SUBSCRIBED before

me this _18_ day of _September_, 2020.

_____
Notary Public

| Commonwealth of Pennsylvania - Notary Seal |
| --- |
| Mary Kay Davis, Notary Public |
| Luzerne County |
| My commission expires December 1, 2021 |
| Commission number 1253162 |
| MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES |

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nissan North America
d/b/a Nissan USA
One Nissan Way
Franklin, TN  37067

9590 9402 6000 0069 2359 86

7020 1290 0001 1979 3818

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

B. Received by (Printed Name)

Alison S. Rice

☐ Agent
☐ Addressee

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

# Exhibit "A"

THE SLUSSER LAW FIRM

BY:   **CHRISTOPHER B. SLUSSER, ESQUIRE**              **ATTORNEYS FOR PLAINTIFFS**
        **IDENTIFICATION NO. 78609**

        **JOHN M. SOLT, ESQUIRE**
        **IDENTIFICATION NO. 89146**

        **JOSEPH R. BARANKO, JR., ESQUIRE**
        **IDENTIFICATION NO. 39124**

        **JEFFREY A. ROCKMAN, ESQUIRE**
        **IDENTIFICATION NO. 47463**

        **JOHN LUCAS, ESQUIRE**
        **IDENTIFICATION NO. 53503**

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and HEATHER HAGENBAUGH, his wife on behalf of themselves and all others similarly situated; MICHAEL P. HOMANKO, JR. on behalf of himself and all others similarly situated; SHERRI A. HOMANKO on behalf of herself and all others similarly situated; and FREDERICK L. LUBRECHT and MARIANNE P. LUBRECHT, his wife on behalf of themselves and all others similarly situated, <br><br>       Plaintiffs<br><br>       vs.<br><br>NISSAN NORTH AMERICA d/b/a NISSAN USA; HYUNDAI MOTOR COMPANY; KIA MOTORS AMERICA; AIRPORT ROAD MOTORS N., LLC. d/b/a HAZLETON NISSAN; AIRPORT ROAD MOTORS HY., LLC. d/b/a HAZLETON HYUNDAI; AIRPORT ROAD MOTORS K, LLC d/b/a HAZLETON KIA; MICHAEL S. SAPORITO; ANTONIO D. PIERCE; AND JESSIE W. ARMSTEAD, <br><br>       Defendants | IN THE COURT OF COMMON PLEAS<br><br>OF LUZERNE COUNTY<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>CIVIL ACTION NO. 2020-07988 |

## AFFIDAVIT OF SERVICE

I, Christopher B. Slusser, Esquire, counsel for the Plaintiffs hereby certify that a true and correct copy of the *Complaint* in the above captioned matter has been served upon the Defendant, Kia Motors America, by certified mail, return receipt requested, as evidenced by the return receipt attached hereto as Exhibit "A", addressed as follows:

<div align="center">

Kia Motors America
111 Peters Canyon Road
Irvine, CA  92606

</div>

Respectfully submitted,

THE SLUSSER LAW FIRM

By _____

      CHRISTOPHER B. SLUSSER, ESQUIRE
      Attorney ID 78609

SWORN TO and SUBSCRIBED before

me this _18_ day of _September_ 2020.

_MaryKay Davis_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Mary Kay Davis, Notary Public
Luzerne County
My commission expires December 1, 2021
Commission number 1253162
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kia Motors America
111 Peters Canyon Road
Irvine, CA 92606

9590 9402 6000 0069 2359 93

2. Article Number (Transfer from service label)

7020 1290 0001 1979 3832

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

Mailroom:
**Kia Motors America**
**111 Peters Canyon Rd**
**Irvine, CA 92606**

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# Exhibit "A"

THE SLUSSER LAW FIRM

BY:    **CHRISTOPHER B. SLUSSER, ESQUIRE**        **ATTORNEYS FOR PLAINTIFFS**
       **IDENTIFICATION NO. 78609**

       **JOHN M. SOLT, ESQUIRE**
       **IDENTIFICATION NO. 89146**

       **JOSEPH R. BARANKO, JR., ESQUIRE**
       **IDENTIFICATION NO. 39124**

       **JEFFREY A. ROCKMAN, ESQUIRE**
       **IDENTIFICATION NO. 47463**

       **JOHN LUCAS, ESQUIRE**
       **IDENTIFICATION NO. 53503**

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and HEATHER HAGENBAUGH, his wife<br>on behalf of themselves and all others similarly situated;<br>MICHAEL P. HOMANKO, JR.<br>on behalf of himself and all others similarly situated;<br>SHERRI A. HOMANKO<br>on behalf of herself and all others similarly situated;<br>and<br>FREDERICK L. LUBRECHT and MARIANNE P. LUBRECHT, his wife<br>on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs<br><br>        vs.<br><br>NISSAN NORTH AMERICA d/b/a NISSAN USA;<br>HYUNDAI MOTOR COMPANY;<br>KIA MOTORS AMERICA;<br>AIRPORT ROAD MOTORS N., LLC. d/b/a HAZLETON NISSAN;<br>AIRPORT ROAD MOTORS HY., LLC. d/b/a HAZLETON HYUNDAI;<br>AIRPORT ROAD MOTORS K, LLC d/b/a HAZLETON KIA;<br>MICHAEL S. SAPORITO;<br>ANTONIO D. PIERCE; AND<br>JESSIE W. ARMSTEAD,<br><br>        Defendants | IN THE COURT OF COMMON PLEAS<br><br>OF LUZERNE COUNTY<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>CIVIL ACTION NO. 2020-07988 |

## **AFFIDAVIT OF SERVICE**

I, Christopher B. Slusser, Esquire, counsel for the Plaintiffs hereby certify that a true and correct copy of the *Complaint* in the above captioned matter has been served upon the Defendant, Hyundai Motor Company, by certified mail, return receipt requested, as evidenced by the return receipt attached hereto as Exhibit "A", addressed as follows:

<div style="text-align:center">

Hyundai Motor Company
10550 Talbert Avenue
Fountain Valley, CA  92708

</div>

Respectfully submitted,

THE SLUSSER LAW FIRM

By _____

      CHRISTOPHER B. SLUSSER, ESQUIRE
      Attorney ID 78609

SWORN TO and SUBSCRIBED before

me this _18_ day of _September_, 2020.

_Mary Kay Davis_
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Mary Kay Davis, Notary Public
Luzerne County
My commission expires December 1, 2021
Commission number 1253162
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Hyundai Motor Company
10550 Talbert Avenue
Fountain Valley, CA  92708

9590 9402 6000 0069 2359 79

7020 1290 0001 1979 3825

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☑ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

FOUNTAIN VALLEY CA 92708
SEP 8 2020
USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053           Domestic Return Receipt

# Exhibit "A"

THE SLUSSER LAW FIRM

BY:   CHRISTOPHER B. SLUSSER, ESQUIRE          ATTORNEYS FOR PLAINTIFFS
      IDENTIFICATION NO. 78609

      JOHN M. SOLT, ESQUIRE
      IDENTIFICATION NO. 89146

      JOSEPH R. BARANKO, JR., ESQUIRE
      IDENTIFICATION NO. 39124

      JEFFREY A. ROCKMAN, ESQUIRE
      IDENTIFICATION NO. 47463

      JOHN LUCAS, ESQUIRE
      IDENTIFICATION NO. 53503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and<br>HEATHER HAGENBAUGH, his wife<br>on behalf of themselves and all others<br>similarly situated;<br>MICHAEL P. HOMANKO, JR.<br>on behalf of himself and all others similarly<br>situated;<br>SHERRI A. HOMANKO<br>on behalf of herself and all others similarly<br>situated;<br>and<br>FREDERICK L. LUBRECHT and<br>MARIANNE P. LUBRECHT, his wife<br>on behalf of themselves and all others<br>similarly situated, | IN THE COURT OF COMMON PLEAS<br>OF LUZERNE COUNTY<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>CIVIL ACTION NO. 2020-07988 |
| Plaintiffs | |
| vs. | |
| NISSAN NORTH AMERICA d/b/a<br>NISSAN USA;<br>HYUNDAI MOTOR COMPANY;<br>KIA MOTORS AMERICA;<br>AIRPORT ROAD MOTORS N., LLC. d/b/a<br>HAZLETON NISSAN;<br>AIRPORT ROAD MOTORS HY., LLC.<br>d/b/a HAZLETON HYUNDAI;<br>AIRPORT ROAD MOTORS K, LLC d/b/a<br>HAZLETON KIA;<br>MICHAEL S. SAPORITO;<br>ANTONIO D. PIERCE; AND<br>JESSIE W. ARMSTEAD, | |
| Defendants | |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY OF LUZERNE COUNTY:

Please REINSTATE the COMPLAINT in the above-referenced matter. Service attempts

have been made, but service of the aforesaid Complaint was not effectuated upon the above-named

Defendants.

Respectfully submitted,

THE SLUSSER LAW FIRM
I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

By: _____
    CHRISTOPHER B. SLUSSER, ESQUIRE
    Supr. ID #78609
    1620 N. Church St., Ste. 1
    Hazleton, PA 18202
    Telephone: 570-453-0463

    Attorneys for Plaintiffs

THE SLUSSER LAW FIRM

BY:   CHRISTOPHER B. SLUSSER, ESQUIRE           ATTORNEYS FOR PLAINTIFFS
      IDENTIFICATION NO. 78609

      JOHN M. SOLT, ESQUIRE
      IDENTIFICATION NO. 89146

      JOSEPH R. BARANKO, JR., ESQUIRE
      IDENTIFICATION NO. 39124

      JEFFREY A. ROCKMAN, ESQUIRE
      IDENTIFICATION NO. 47463

      JOHN LUCAS, ESQUIRE
      IDENTIFICATION NO. 53503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and HEATHER HAGENBAUGH, his wife<br>309 Plymouth Avenue<br>Wilkes-Barre, PA 18702; on behalf of themselves and all others similarly situated | IN THE COURT OF COMMON PLEAS<br><br>OF LUZERNE COUNTY |
| MICHAEL P. HOMANKO, JR.<br>349 West 30th Street<br>Hazle Township, PA 18202; on behalf of himself and all others similarly situated | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |
| SHERRI A. HOMANKO<br>349 West 30th Street<br>Hazle Township, PA 18202; on behalf of herself and all others similarly situated | CIVIL ACTION NO. 2020- 07988 |
| and | |
| FREDERICK L. LUBRECHT and MARIANNE P. LUBRECHT, his wife<br>269 Turnberry Lane<br>Hazle Township, PA 18202; on behalf of themselves and all others similarly situated | |
| Plaintiffs | |
| vs. | |
| NISSAN NORTH AMERICA d/b/a NISSAN USA<br>One Nissan Way<br>Franklin, TN 37067; | |

HYUNDAI MOTOR COMPANY
10550 Talbert Avenue
Fountain Valley, CA 92708;

KIA MOTORS AMERICA
111 Peters Canyon Road
Irvine, CA 92606;

AIRPORT ROAD MOTORS N., LLC.
d/b/a HAZLETON NISSAN
661 Airport Road,
Hazle Township, PA 18202;

AIRPORT ROAD MOTORS HY., LLC.
d/b/a HAZLETON HYUNDAI
703 Airport Road
Hazle Township, PA 18202;

AIRPORT ROAD MOTORS K, LLC
d/b/a HAZLETON KIA
701 Airport Road,
Hazle Township, PA 18202;

MICHAEL S. SAPORITO
382 Old York Road
Hamilton, NJ 08620;

ANTONIO D. PIERCE
1376 Vía Romero
Palos Verdes Estates, CA 90274;

and

JESSIE W. ARMSTEAD
2300 Top Rail Lane
Southlake, TX 76092

Defendants

## NOTICE

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objection to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.   THIS   OFFICE   CAN   PROVIDE   YOU   WITH

## AVISO

A USTED SE LE HA DEMANDADO EN LA CORTE. Si usted quiere defenderse contra la demanda expuesta en las siguientes páginas, tiene que tomar acción en un plazo de los viente (20) días después que reciba esta demanda y aviso, por presentar una notificación de comparecencia escrita personalmente o por un abogado y radicar por escrito en law Corte sus defensas u objeciones a las demandas presentadas en su contra.  Se le advierte que si falla en hacerlo, el caso podría seguir adelante sin usted y un fallo podría ser dictado en su contra por law Corte sin previo aviso por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio pedido por el/la demandante.  Puede que usted pierda dinero o propiedad u otros derechos importantes para usted.  USTED

INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PEOPLE AT A REDUCED RATE OR NO FEE.

North Penn Legal Services, Inc.
33 North Main Street
Suite 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Toll Free
(570) 824-0001 Fax

101 West Broad Street
Suite 713
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Toll Free
(570) 455-3625 Fax

DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO, DIRÍJASE O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ABAJO. ESTA OFICINA PUEDE PROVEERLE CON INFORMACIÓN SOBRE COMO CONTRATAR UN ABOGADO. SI NO TIENE LOS FONDOS SUFICIENTES PARA CONTRATAR UN ABOGADO, ESTA OFICINA PODRÍA PROPORCIONARLE INFORMATCIÓN ACERCA DE AGENCIAS QUE PUEDAN OFRECERLES SERVICIOS LEGALES A PERSONAS QUE REÚNAN LOS REQEQUISTOS A UN HONORARIO REDUCIDO O GRATIS.

Servicious Legales de North Penn, Inc.
33 la Calle Main del Norte
Oficina 200
Pittston, PA 18640
(570) 299-4100
(855) 236-6405 Llamada gratuita
(570) 824-0001 Fax

101 la Calle Brod del Oeste
Oficina 513
Hazleton, PA 18201
(570) 455-9512
(877) 953-4250 Llamada gratuita
(570) 455-3625 Fax

THE SLUSSER LAW FIRM

BY:   CHRISTOPHER B. SLUSSER, ESQUIRE         ATTORNEYS FOR PLAINTIFFS
       IDENTIFICATION NO. 78609

       JOHN M. SOLT, ESQUIRE
       IDENTIFICATION NO. 89146

       JOSEPH R. BARANKO, JR., ESQUIRE
       IDENTIFICATION NO. 39124

       JEFFREY A. ROCKMAN, ESQUIRE
       IDENTIFICATION NO. 47463

       JOHN LUCAS, ESQUIRE
       IDENTIFICATION NO. 53503

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | |
|---|---|
| DAVID HAGENBAUGH and HEATHER HAGENBAUGH, his wife 309 Plymouth Avenue Wilkes-Barre, PA 18702; on behalf of themselves and all others similarly situated | IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY |
| MICHAEL P. HOMANKO, JR. 349 West 30th Street Hazle Township, PA 18202; on behalf of himself and all others similarly situated | CLASS ACTION COMPLAINT |
| SHERRI A. HOMANKO 349 West 30th Street Hazle Township, PA 18202; on behalf of herself and all others similarly situated | JURY TRIAL DEMANDED |
| and | |
| FREDERICK L. LUBRECHT and MARIANNE P. LUBRECHT, his wife 269 Turnberry Lane Hazle Township, PA 18202; on behalf of themselves and all others similarly situated | CIVIL ACTION NO. 2020 -07988 |
| Plaintiffs | |
| vs. | Reinstate Complaint The Within Complaint is Hereby Reinstated Civil Records Office Per: 9/24/2020 aw |
| NISSAN NORTH AMERICA d/b/a NISSAN USA One Nissan Way Franklin, TN 37067; | |
| HYUNDAI MOTOR COMPANY 10550 Talbert Avenue | |

1

Fountain Valley, CA 92708;

KIA MOTORS AMERICA
111 Peters Canyon Road
Irvine, CA 92606;

AIRPORT ROAD MOTORS N., LLC.
d/b/a HAZLETON NISSAN
661 Airport Road,
Hazle Township, PA 18202;

AIRPORT ROAD MOTORS HY., LLC.
d/b/a HAZLETON HYUNDAI
703 Airport Road
Hazle Township, PA 18202;

AIRPORT ROAD MOTORS K, LLC
d/b/a HAZLETON KIA
701 Airport Road,
Hazle Township, PA 18202;

MICHAEL S. SAPORITO
382 Old York Road
Hamilton, NJ 08620;

ANTONIO D. PIERCE
1376 Via Romero
Palos Verdes Estates, CA 90274;

and

JESSIE W. ARMSTEAD
2300 Top Rail Lane
Southlake, TX 76092

                    Defendants

## CLASS ACTION COMPLAINT

Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife, Michael P. Homanko,

Jr. and Sherri A. Homanko, and Frederick L. Lubrecht and Marianne P. Lubrecht, his wife, hereby

bring this action individually and behalf of all others similarly situated (hereafter, the "Class")

pursuant to Pennsylvania Rules of Civil Procedure 1701 et. seq. against Defendants herein named

2

for fraudulently inducing consumers into purchasing and/or leasing new vehicles by offering free services under a certain "Set for Life Program", which is more fully described herein. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## THE PARTIES

1.     Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife (collectively referred to herein as the "Hagenbaughs"), are adult individuals residing at 308 Plymouth Avenue, Wilkes-Barre, Luzerne County, Pennsylvania 18702.

2.     Plaintiffs, Michael P. Homanko, Jr. and Sherri A. Homanko (collectively referred to herein as the "Homankos"), are adult individuals residing at 349 West 30th Street, Hazle Township, Luzerne County, Pennsylvania 18202. Michael P. Homanko, Jr. is the father of Sherri A. Homanko.

3.     Plaintiff, Frederick L. Lubrecht and Marianne P. Lubrecht his wife (collectively referred to herein as the "Lubrechts"), are adult individuals residing at 269 Turnberry Lane, Hazle Township, Luzerne County, Pennsylvania 18202.

4.     Defendant, Nissan North America d/b/a Nissan USA ("Nissan") is, upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at One Nissan Way, Franklin, Tennessee 37067.

5.     Defendant, Hyundai Motor Company ("Hyundai") is, upon information and belief, a corporation organized under the laws of the State of California, with its corporate headquarters located at 10550 Talbert Ave., Fountain Valley, California 92708.

3

6.     Defendant, Kia Motors America ("Kia") is, upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California 92606. At all times material hereto, Defendant, Kia was/is a subsidiary of Defendant, Hyundai, which owns approximately one-third of Kia's stock and is Kia's largest stakeholder. (Defendants, Hyundai, Nissan and Kia are hereinafter sometimes collectively referred to as the "Manufacturers.")

7.     Defendant, Airport Road Motors N., LLC. d/b/a Hazleton Nissan ("Hazleton Nissan"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 661 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Nissan was an authorized Nissan dealer.

8.     Defendant, Airport Road Motors Hy., LLC. d/b/a Hazleton Hyundai ("Hazleton Hyundai"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 703 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Hyundai was an authorized Hyundai dealer.

9.     Defendant, Airport Road Motors K, LLC. d/b/a Hazleton Kia ("Hazleton Kia"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 701 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Defendant, Hazleton Kia was an authorized Kia dealer. (Defendants, Hazleton Nissan, Hazleton Hyundai and Hazleton Kia are hereinafter sometimes collectively referred to as the "Dealerships.")

10.    Defendant, Michael S. Saporito ("Saporito"), is an adult individual residing at 382 Old York Road, Hamilton, New Jersey 08620.

4

11.     Defendant, Antonio D. Pierce ("Pierce"), is an adult individual residing at 1376 Via Romero, Palos Verdes Estates, California 90274.

12.     Defendant, Jessie W. Armstead ("Armstead"), is an adult individual residing at 2300 Top Rail Lane, Southlake, Texas 76092. (Defendants, Saporito, Pierce and Armistead are hereinafter sometimes collectively referred to as the "Owners.")

13.     At all times material hereto, Dealerships were owned and/or controlled by the Owners. At all times material hereto, Owners personally directed, participated or cooperated in the misfeasance that forms the basis of this Complaint and as such, can be held personally liable therefore under Pennsylvania case precedent.

14.     Whenever any reference is made in this Complaint to any representation, act or transaction of the Dealerships, or any principals, officers, directors, employees, agents, or representatives thereof, including but not limited to the Owners, such allegations shall be deemed to mean that such principals, officers, directors, employees, agents or representatives of the Dealerships, whether they were acting on their own behalf or for their own benefit, did or authorized such representations, acts or transactions on behalf of the Manufacturers and, based upon the Manufacturers' actions and/or conduct, possessed the actual or apparent authority to do so.

## FACTUAL HISTORY

15.     Sometime in or about 2014, Owners agreed to open a retail auto mall in Hazle Township, Luzerne County, Pennsylvania known as the Hazleton Auto Mall, which was to consist of separate Nissan, Hyundai, Kia and Honda dealerships. In or about February 2015, Defendants, Hazleton Nissan, Owners and certain entities which were owned and/or controlled by Owners, including All Pro Airport Rd., N 4, LLC., All Pro Airport Rd. Detail-3, LLC., and Airport Road

5

Motors Detail (collectively, the "Nissan Financing Entities"), sought and subsequently received financing from Nissan Motor Acceptance Corporation ("NMAC"), an entity which is closely affiliated with Defendant, Nissan and which provides wholesale credit to authorized Nissan dealers to purchase vehicle inventory for retail sale to the public and for working capital and real estate loans. Wholesale credit lines are commonly referred to as "floorplan financing."

16.     As a condition to its agreement to extend such floorplan financing, NMAC required, among other things, that Hazleton Nissan enter into an Automotive Wholesale Finance and Security Agreement ("WSA") pursuant to which Hazleton Nissan agreed to promptly repay to NMAC, upon the retail sale of each Nissan vehicle, the monies advanced by NMAC when Hazleton Nissan purchased that vehicle at wholesale. Under the terms of the WSA, Hazleton Nissan's failure to pay NMAC upon the retail sale of a Nissan vehicle constituted a default thereunder and is commonly referred to as a "sale out of trust" or "SOT". NMAC further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Nissan, Owners and the Nissan Financing Entities. Finally, and pursuant to the terms of the WSA, Hazleton Nissan, Owners and the Nissan Financing Entities granted permission to NMAC to conduct periodic audits of Hazleton Nissan's books and records in order to verify, among other things, that it was promptly paying NMAC upon the retail sale of each Nissan vehicle.

17.     Defendants, Hazleton Hyundai, Hazleton Kia, Owners and certain entities/affiliates which were owned and/or controlled by Owners, including All Pro Airport Rd. K/HY 2, LLC. (the "Hyundai/Kia Financing Entity), also sought and subsequently received financing from Hyundai Capital America ("HCA"), an entity which is closely affiliated with Defendants, Hyundai and Kia and which provides floorplan financing to authorized Hyundai and Kia dealers. As a condition to HCA's agreement to extend such floorplan financing, Hazleton Hyundai and Hazleton Kia executed separate Inventory Loan and Security Agreements (the "Hyundai ILSA's"), dated June

6

10, 2015, pursuant to which Hazleton Hyundai and Hazleton Kia agreed to promptly repay to HCA, upon the retail sale of each Hyundai and Kia vehicle, the monies advanced by HCA when Hazleton Hyundai and Hazleton Kia purchased that vehicle at wholesale. Under the terms of the ILSA's, Hazleton Hyundai's and Hazleton Kia's failure to pay HCA upon the retail sale of a Hyundai or Kia vehicle constituted a default thereunder. HCA further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Hyundai, Hazleton Kia, Owners and the Hyundai/Kia Financing Entity.  Finally, and pursuant to the terms of the ILSA's, Hazleton Hyundai, Hazleton Kia and the Hyundai/Kia Financing Entity granted permission to HCA to conduct periodic audits of Hazleton Hyundai's and Hazleton Kia's books and records in order to verify, among other things, that they were promptly paying HCA upon the retail sale of each Hyundai and Kia vehicle.

18.    Upon information and belief, Dealerships also entered into certain dealership agreements (hereafter, the "Dealership Agreements") with the Manufacturers pursuant to which, *inter alia*, the Dealerships agreed to (a) actively and vigorously market the Manufacturers' new vehicles; (b) use their best efforts to attain certain sales targets set forth by the Manufacturers; (c) conspicuously display at Dealership' facilities the Manufacturers' approved sales, service and parts signs and (d) send Dealerships' sales persons to any/all of Manufacturers' regularly scheduled sales and service meetings for the purpose of obtaining current Manufacturers' information and policies.

19.    Pursuant to the terms of the Dealership Agreements, the Manufacturers agreed, upon information and belief, to market their vehicles nationwide and locally within Northeastern Pennsylvania. The Manufacturers further granted authority to Dealerships to (a) sell and/or lease the Manufacturers' vehicles to consumers; (b) identify themselves as the Manufacturers' authorized dealerships; and (c) use the Manufacturers' logos/marks in the advertising, promotion,

7

sale and servicing of the Manufacturers' vehicles and other products. Moreover, and upon information and belief, Manufacturers also granted authority to the Dealerships to engage in their own independent advertising and promotion of the Manufacturers' vehicles, goods and services, subject to the Manufacturers' prior approval. Upon information and belief, the Dealership Agreements provided the Manufacturers with the right to revoke the Dealerships' status as authorized dealers of Manufacturers' vehicles if the Dealerships breached the provisions contained therein. Plaintiffs are currently not in possession of these Dealership Agreements and intend to obtain same through discovery.

20.     The Hazleton Auto Mall opened in or about November 2016. The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, used and advertised a uniform set of marketing tactics and aggressive sales pitches to induce consumers into purchasing and leasing new vehicles. Specifically, the Dealerships, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, advertised a "Set for Life Program" pursuant to which the Dealerships represented that all purchasers would receive powertrain/engine/transmission warranties, free oil and filter changes, free car washes, free loaner vehicles and free state inspections for as long as they owned their vehicles (hereinafter, the "Set for Life Program").

21.     The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, created brochures and signage advertising the Set for Life Program, which were emblazoned with the Manufacturers' internationally recognizable, trademarked logos. Dealerships and Owners, with the Manufacturers' prior knowledge, approval and/or ratification, also advertised the Set for Life Program on local radio and television and through social media. In so doing, Dealerships, Owners and Manufacturers intended to create the

8

expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

22.     The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, also prominently displayed and strategically placed the brochures and signage detailing the Set for Life Program throughout the Dealerships' facilities in close physical proximity to the Manufacturers' internationally recognizable, trademarked logos. In so doing, Dealerships, Owners and Manufacturers intended to create the expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

23.     Defendants, Pierce and Armstead are well-known, retired professional football players. Pierce and Armstead, with the Manufacturers', Dealerships' and Defendant, Saporito's prior knowledge, approval and/or ratification, utilized their public notoriety by participating in several "meet and greet" appearances at the Dealerships' facilities. These "meet and greet" appearances were advertised in advance in local newspapers and on social media.  During these appearances, Defendants, Pierce and Armstead extolled the virtues of the Manufacturers' vehicles in general and the benefits of the Set for Life Program in particular, for the intended purpose of inducing consumers to purchase and/or lease new vehicles from the Manufacturers through their authorized Dealerships.

24.     Soon after opening for business in or about November 2016, Dealerships, upon information and belief, began to experience financial difficulties. Specifically, Dealerships, with Owners' knowledge and consent, sold numerous Nissan, Hyundai and Kia vehicles SOT, and without paying NMAC or HCA for same. At all times material hereto, Manufacturers were aware of or, through the exercise of rudimentary due diligence should have been aware of Dealerships' deteriorating financial condition. Nevertheless, Manufacturers continued to expressly and/or

9

impliedly authorize and/or ratify Dealerships' decision to advertise the Set for Life Program in the hope that it would generate additional sales of Manufacturers' vehicles and thereby enable Dealerships to escape the financial hole which they had dug. At all times material hereto, Manufacturers knew or should have known that Dealerships, as a result of their deteriorating financial condition, could not possibly continue to represent that the Set for Life Program's benefits would be available to consumers for as long as they owned their vehicles.

25.     Hazleton Hyundai and Hazleton Kia went out of business in or about late September · 2018, less than two years after opening. Hazleton Nissan went out of business in or about November 2018. Despite repeated demands from defrauded consumers, Manufacturers have refused and continue to refuse to provide the benefits specified in the Set for Life Program.

26.     Defendant, Manufacturers had intimate knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners due to the financial relationship between the parties, information that was not otherwise available to Plaintiffs and/or to the general public.

27.     Notwithstanding Defendant, Manufacturers' knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners, Defendant, Manufacturers permitted the Set for Life Program to continue.

## PLAINTIFFS' EXPERIENCES

### THE HAGENBAUGHS

28.     The Hagenbaughs purchased a new 2017 model year Nissan Rogue, VIN # KNMAT2MT4HP500743 from Defendant, Hazleton Nissan on or about May 4, 2017. Defendant, Hazleton Nissan and the Hagenbaughs signed an agreement which specified several of the benefits which were part of the Set for Life Program (hereinafter, the "Set for Life Agreement"). Defendant, Hazleton Nissan further provided brochures to the Hagenbaughs and represented that said

10

brochures contained the full list of benefits under the Set for Life Program. Both the Set for Life Agreement and the related brochures stated that the benefits specified therein would be available for as long as the Hagenbaughs owned their Nissan vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with Defendant, Nissan's internationally known, trademarked logo. Copies of the Hagenbaughs' Retail Sale Installment Contract, the signed Set for Life Agreement between the Hagenbaughs and Hazelton Nissan and the related Set for Life Program brochures are collectively attached hereto as Exhibit "A" and are incorporated herein.

29.     The Hagenbaughs reasonably relied upon Defendant, Nissan's conduct, actions and manifestations to the general public that Defendant, Nissan had granted Defendant, Hazleton Nissan the actual and/or apparent authority to obligate Defendant, Nissan to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Nissan was unable to do so.

30.     Defendant, Nissan's conduct, actions and manifestations in this regard include but are not limited to, the following: publicly advertising the Nissan brand on local radio stations, local television and on social media; representing Hazleton Nissan as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Nissan for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

31.     When Hazleton Nissan ceased operations at the Hazleton Auto Mall in November 2018, the Hagenbaughs subsequently demanded that Defendant, Nissan provide the benefits specified in the Set for Life Program. However, Defendant, Nissan refused, and continues to refuse to do so.

11

## THE LUBRECHTS

32.     The Lubrechts purchased a new 2018 model year Hyundai Tucson wagon, VIN #
KM8J3CA48JU741730 from Defendant, Hazleton Hyundai on or about June 28, 2018. Defendant,
Hazleton Hyundai and the Lubrechts signed a Set for Life Agreement which specified several of
the benefits contained in the Set for Life Program. Defendant, Hazleton Hyundai further provided
brochures to the Lubrechts and represented that said brochures contained the full list of benefits
under the Set for Life Program. The Set for Life Agreement and related brochures both stated that
the benefits specified therein would be available for as long as the Lubrechts owned their Hyundai
vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with
Defendant, Hyundai's internationally known, trademarked logo.

33.     Hazleton Hyundai and the Lubrechts also executed a document, dated June 28,
2018, entitled **"WE OWE"**, which included the following representation:

**"LIFETIME WARRANTY, LIFETIME INSPECTION, LIFETIME LOANER
VEHICLES, LIFETIME OIL CHANGES AT FACTORY RECOMMENDED
INTERVALS AND LIFETIME CAR WASHES."**

The Set for Life Agreement, the related Set for Life Program Brochures, the document
entitled **"WE OWE"** and other sales materials reflecting the Lubrechts' purchase are collectively
attached hereto as Exhibit "B" and are incorporated herein.

34.     The Lubrechts reasonably relied upon Defendant, Hyundai's conduct, actions and
manifestations to the general public that Defendant, Hyundai had granted Defendant, Hazleton
Nissan the actual and/or apparent authority to obligate Defendant, Hyundai to continue to provide
the benefits specified in the Set for Life Program in the event that Hazleton Hyundai was unable
to do so.

35.     Defendant, Hyundai's manifestations in this regard include but are not limited to,
the following: publicly advertising the Hyundai brand on local radio stations, local television and

12

on social media; representing Hazleton Hyundai as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Hyundai for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

36.     When Hazleton Hyundai ceased operations at the Hazleton Auto Mall in late September 2018, the Lubrechts subsequently demanded that Defendant, Hyundai provide the benefits specified in the Set for Life Program. However, Defendant, Hyundai wrongfully refused, and continues to refuse to do so.

## THE HOMANKOS

37.     The Homankos purchased a new 2017 model year Kia Sorento, VIN # 5XYPKDA50HG337817 from Defendant, Hazleton Kia on or about August 21, 2017. Defendant, Hazleton Kia provided brochures to the Hagenbaughs and represented that said brochures contained the full list of benefits under the Set for Life Program. The Set for Life Program brochures specifically stated that the benefits specified therein would be available for as long as the Homankos owned their Kia vehicle. Moreover, the Set for Life Program brochures were emblazoned with Defendant, Kia's internationally known, trademarked logo. A true and correct copy of the Homankos Retail Installment Sale Contract and the Set for Life Program brochures are collectively attached hereto as Exhibit "C" and are incorporated herein.

38.     The Homankos reasonably relied upon Defendant, Kia's conduct, actions and manifestations to the general public that Defendant, Kia had granted Defendant, Hazleton Kia the actual and/or apparent authority to obligate Defendant, Kia to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Kia was unable to do so.

13

39.    Defendant, Kia's conduct, actions and manifestations in this regard include but are not limited to the following: publicly advertising the Kia brand on local radio stations, local television and on social media; representing Hazleton Kia as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Kia for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on signage and brochures advertising the Set for Life Program.

40.    When Hazleton Kia ceased operations at the Hazleton Auto Mall in late September 2018, the Homankos subsequently demanded that Defendant, Kia provide the benefits specified in the "Set for Life" program. However, Defendant, Kia wrongfully refused, and continues to refuse to do so.

## CLASS ALLEGATIONS

41.    This action is being brought by Plaintiffs as a Class Action pursuant to Pennsylvania Rules of Civil Procedure 1701 et seq., on Plaintiffs' own behalf and on behalf of a class of persons to which Plaintiffs belong as defined below:

42.    Members of Plaintiffs' Class are defined as follows:

a.    All individuals located within and/or residents of the Commonwealth of Pennsylvania, who purchased or leased automobiles at the Hazleton Auto Mall in Hazle Township, Pennsylvania from the Hazleton Nissan, Hazleton Hyundai and/or Hazleton Kia dealerships during the period of November 1, 2016 through November 30, 2018.

43.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) the Manufacturers and Dealerships and their subsidiaries, parents, successors, predecessors, and any entity in which the Manufacturers and Dealerships have a controlling interest and Manufacturers' and/or Dealerships' current or

14

former employees, officers and directors; (3) the Owners and their families; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims have been finally adjudicated on the merits or otherwise released; (6) Plaintiffs' counsel and Defendants' counsel; and (7) the legal representatives, successors and assigns of any such excluded persons.

44.     The exact number of Class members is currently unknown and unavailable to Plaintiffs, but individual joinder in this case is impracticable. The Class likely consists of at least two thousand individuals. Members of the Class can easily be identified through Dealerships' and/or Manufacturers' records.

45.     The claims of Plaintiffs as representative parties are typical of the claims of the Class, including, but not limited to the following:

        a.     As with all members of the Class, Plaintiffs were subject to and relied upon the misrepresentations, deceptive sales practices, advertising practices and policies of the Manufacturers, Dealerships and/or Owners in connection with the Set for Life Program;

        b.     As with all members of the Class, Plaintiffs were induced to purchase vehicles at the Hazleton Auto Mall by the benefits specified in the Set for Life Program;

        c.     As with all members of the Class, Plaintiffs have been harmed by similar or identical misconduct by the Manufacturers, Dealerships and/or Owners in that they were denied the benefits specified in the Set for Life Program;

        d.     Plaintiffs' injuries and/or damages are typical of other members of the Class.

46.     There are questions of law and fact common to the Class, including, but not limited to the following:

15

a.      Whether Plaintiffs and all members of the Class were offered the benefits specified in the Set for Life Program as an inducement upon which they relied, to their detriment, when they purchased and/or leased their vehicles from Dealerships;

b.      Whether Plaintiffs and all members of the Class reasonably relied upon the actions, conduct and/or manifestations of the Manufacturers that the Dealerships possessed the actual or apparent authority to represent and guarantee that the Manufacturers would provide the benefits specified in the Set for Life Program in the event the Dealerships were unable to do so;

c.      Whether Plaintiffs and all members of the Class have been refused the benefits specified in the Set for Life Program by the Manufacturers;

d.      Whether Manufacturers', Dealerships' and Owners' advertising and sales practices in connection with the Set for Life Program were deceptive, thereby violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, et seq; and

e.      Whether Manufacturers', Dealerships' and Owners' outrageous and/or unconscionable acts in connection with the Set for Life Program, as aforedescribed, warrants the award of punitive damages.

47.     The interests of the Class will be fairly and adequately asserted and protected by the representative parties and their counsel. First, Plaintiffs have no conflict of interest in the maintenance of the Class Action. Second, Plaintiffs' attorneys are experienced in handling and litigating fraud and consumer protection claims. Third, sufficient financial resources are available to assure that the interest of the Class will be protected.

48.     Adjudicating this controversy as a Class Action would be the fairest and most efficient means of resolution:

16

a.      Common questions of law and fact predominate over any issues involving only individual Class members.

b.      the size of the Class is not so great as to cause difficulties in the management of this action as a Class Action;

c.      prosecution of separate claims by individual members of the Class would most likely would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the Class which would confront the party opposing the Class with incompatible standards of conduct; (ii) adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

d.      to the undersigned's knowledge, there is currently no litigation which has been commenced by any members of the Class involving any of the same issues raised herein;

e.      this forum is appropriate for the litigation of the claims of the entire Class since Plaintiffs and the vast majority of the Class members reside in Luzerne County and since the causes of action and/or the transactions or occurrences giving rise to the causes of action raised herein occurred in Luzerne County;

f.      given the complexities of the issues raised and/or the expenses of litigation, the separate claims of individual Class members may be insufficient in amount to support separate actions; and

g.      it is likely that the amount which may be recovered by individual Class members may be so small in relation to the expense and effort of administering the action as not to justify a Class Action.

49.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class Action.

## COUNT I

### (Unfair Trade Practices and Consumer Protection Law)
### 73 P.S. §§ 201-1, *et seq.*)
### (vs. All Defendants)

50.     Plaintiffs incorporate herein by reference Paragraphs 1 through 49 inclusive, of this Complaint as if the same were more fully set forth herein at length.

51.     At all relevant times hereto, there was in effect the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, et seq. ("UTPCPL")

52.     The vehicles purchased by Plaintiffs and the other Class members purchased vehicles from Defendants "primarily for personal, family or household purposes" within the meaning of Section 201-9.2 of the UTPCPL.

53.     Section 201-2(4) of the UTPCPL defines "UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS OR PRACTICES" in pertinent part, as follows:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

18

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xiv) Failing to comply with the terms or any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

See, 73 P.S. Section 201-2(4)(i), (ii), (iii), (v), (vii), (ix), (x), (xiv) and (xxi).

54.     Defendants have violated each of the UTPCPL's provisions referenced in Paragraph 51 by making the false and misleading representations described herein in connection with the Set for Life Program. As a result of Defendants' false and misleading representations, Plaintiffs and members of the Class have suffered "ascertainable losses" as defined by the UTPCPL in that they have been denied the benefits specified and promised in the Set for Life Program.

55.     At all relevant times hereto, there was in effect Chapter 301 of the Pennsylvania Code, entitled "AUTOMOTIVE INDUSTRY TRADE PRACTICES" ("AITP"). The provisions of Chapter 301 of the AITP are issued under Section 3.1, 73 P.S. Section 201.3.1, of the UTPCPL.

56.     Sections 301.1 and 301.2 of the AITP provide in relevant part, as follows:

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

19

*Advertisement*—An oral, written or graphic statement which offers for sale a particular motor vehicle or motor vehicle goods and services or which indicates the availability of a motor vehicle or motor vehicle goods and services, including a statement or representations made in a newspaper, periodical, pamphlet, circular, other publication or on radio or television; contained in a notice, handbill, sign, billboard, poster, bill, catalog or letter; or printed on or contained in a tag or label which is attached to merchandise.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

(3)     The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:

(i)     Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.

(vi)     Failing to make delivery of the advertised goods and services within the promised delivery period unless the failure is caused by reasons beyond the control of the advertiser.

(4)     The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

(5)     The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another

(6)     The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

(18)     The advertising by a motor vehicle manufacturer, dealer or repair shop of a sale or promotion in connection with the sale of a motor vehicle or motor vehicle maintenance or repair services unless the advertisement clearly and conspicuously discloses the expiration date, if any, and other conditions of the sale or promotion,

20

including but not limited to whether the supply of vehicles or other sale goods is limited and, if so, in what manner.

57. Defendants have violated each of the **AITP's** provisions referenced in Paragraphs 54-55 inclusive, by making the false and misleading representations described herein in connection with the Set for Life Program.

58. Plaintiff and Class members have suffered injuries caused by Defendants' false and misleading representations because they would not have purchased the vehicles if they knew the truth and/or would have purchased them on different terms.

## COUNT II

### (Breach of Contract)
### vs. All Defendants

59. Plaintiffs incorporate herein by reference Paragraphs 1 through 58 inclusive, of this Complaint as if the same were more fully set forth herein at length.

60. Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships. Defendants further represented that the specified benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Plaintiffs and Class members relied upon said representations as an inducement for their agreement to purchase vehicles from Defendant, Dealerships.

61. Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were unable to do so.

21

62. Defendants, Manufacturers, Dealerships and Owners were and remain contractually bound to provide the benefits specified in the Set for Life Program to Plaintiffs and Class members. Defendants, Manufacturers and Owners were and remain contractually bound to continue to provide these benefits now that Dealerships have ceased business operations.

63. Despite Plaintiffs' and Class members' repeated demands, Defendants, Manufacturers and Owners have wrongfully refused to provide the benefits specified in the Set for Life Program. As a result, Plaintiffs and Class members have been denied the benefit of their bargain.

64. Defendants' refusal, as described above, constitutes a breach of their contracts with Plaintiffs and Class members.

65. As a direct and proximate result of said breach, Plaintiffs and Class members have suffered and continue to suffer damages, for which they are legally entitled to recover.

## COUNT III

### (Unjust Enrichment)
### vs. All Defendants

66. Plaintiffs incorporate herein by reference Paragraphs 1 through 65 inclusive, of this Complaint as if the same were more fully set forth herein at length.

67. This Count is being plead in the alternative to the preceding Count II for breach of contract.

68. Defendants, through their wrongful and unlawful conduct as described above, have reaped enormous, ill-gotten profits from the sale of the Manufacturers' vehicles to Plaintiffs and Class members. Defendants' profits would have been reduced, but for their wrongful and unlawful refusal to provide Plaintiffs and Class members with the benefits specified in the Set for Life Program.

22

69.     Accordingly, Defendants have been unjustly enriched by their wrongful and unlawful conduct. Defendants should not be allowed to retain the proceeds from the benefits conferred upon them by Plaintiffs and Class members.

70.     In equity and good conscience, it would be unjust and inequitable to permit Defendants to enrich themselves at Plaintiffs' and Class members' expense.

71.     Defendants must therefore disgorge their unjustly acquired profits and other monetary benefits resulting from their unlawful conduct and provide restitution to Plaintiffs and Class members.

## COUNT IV

### (Fraud)
### vs. All Defendants

72.     Plaintiffs incorporate herein by reference Paragraphs 1 through 71 inclusive, of this Complaint as if the same were more fully set forth herein at length.

73.     Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships. Defendants further represented that the benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

74.     Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were

23

unable to do so. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

75. Defendants knew, or should have known, that their representations were false when made. Plaintiffs and Class members relied upon Defendants' material, false representations to their great detriment when they decided to purchase vehicles from Defendant, Dealerships.

76. In addition to their affirmative misrepresentations as afore-described, Defendant, Manufacturers had access to information concerning the dire financial condition of Defendants, Dealerships and Owners which Defendant, Manufacturers concealed from Plaintiffs and the general public.

77. Due to their knowledge of the failing financial condition of the Dealerships and Owners, Defendant, Manufacturers knew that the promises made to Plaintiffs and to the general public in the Set for Life Program would not be honored.

78. Despite the foregoing, Defendant, Manufacturers allowed Defendants, Dealerships and Owners to continue to make the promises in the Set for Life Program after it was apparent to Defendant, Manufacturers that said promises would not be honored.

79. As a direct and proximate result of Defendants' material, fraudulent representations, Plaintiffs and Class members have suffered and will continue to suffer damages, for which they are legally entitled to recover.

80. Defendants' conduct, as described above, was wanton, willful, malicious and/or grossly reckless, thereby justifying the imposition of punitive damages against Defendants.

24

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and all on behalf of all others similarly situated, seek judgment against the Defendants as follows:

a.    An order certifying the Class under Rule 1707 of the Pennsylvania Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b.    An award of three times the actual and monetary damages sustained by . Plaintiffs and the Class members, pursuant to the provisions of the **UTPCPL** and as set forth in Count I of this Complaint;

c.    An award of actual and compensatory damages, pursuant to Count II of this Complaint;

d.    An award of restitution in the amount of actual and compensatory damages, pursuant to Count III of this Complaint;

·e.    An award of punitive damages, pursuant to Count IV of this Complaint;

f.    An award of prejudgment and post-judgment interest on all amounts awarded;

g.    An award of attorneys' fees, pursuant to Counts I and III of this Complaint

h.    An award of expenses and costs of suit; and

i.    An award of such other relief as the Court may deem just and proper.

**The damages sought by Plaintiffs, individually and on behalf of all others similarly situated, exceed the jurisdictional arbitration limits to be proven at trial.**

*Signatures submitted on following page.*

25

Respectfully submitted,

THE SLUSSER LAW FIRM
I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

By: _____
    CHRISTOPHER B. SLUSSER, ESQUIRE
    Supr. ID #78609

By: _____
    JOHN M. SOLT, ESQUIRE
    Supr. ID #89146

By: _____
    JOSEPH R. BARANKO, JR., ESQUIRE
    Supr. ID # 39124

By: _____
    JEFFREY A. ROCKMAN, ESQUIRE
    Supr. ID # 47463

By: _____
    JOHN LUCAS, ESQUIRE
    Supr. ID # 53503
    1620 N. Church St., Ste. 1
    Hazleton, PA 18202
    Telephone: 570-453-0463

Attorneys for Plaintiffs

## VERIFICATION

I, Jeffrey A. Rockman, Esquire, verify that I am the attorney for the Plaintiffs, David Hagenbaugh and Heather Hagenbaugh in this action and that the statements in the foregoing Complaint, are true and correct to the best of my knowledge, information and belief. I make this verification in lieu of the Plaintiffs because of the urgency of the filing of this Complaint, the unavailability of the Plaintiffs, the exigencies of the circumstances and/or because the Complaint does not include an averment of fact not appearing of record in the action or does not contain a denial of fact. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsifications to authorities.

JEFFREY A. ROCKMAN, ESQUIRE

## **VERIFICATION**

I, Sherri A. Homanko, Plaintiff, hereby verify that the statements made in the foregoing *COMPLAINT* are true and correct to the best of my knowledge and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 8/31/20          Sherri A. Homanks
          SHERRI A. HOMANKO

## VERIFICATION

I, Michael P. Homanko, Jr., Plaintiff, hereby verify that the statements made in the foregoing

*COMPLAINT* are true and correct to the best of my knowledge and belief.   I understand that false

statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn

falsification to authorities.

DATE: _08/28/2020_                          MICHAEL P. HOMANKO, JR.

(

## VERIFICATION

We, Frederick L. Lubrecht and Marianne P. Lubrecht, his wife, Plaintiffs, hereby verify that the statements made in the foregoing *COMPLAINT* are true and correct to the best of our knowledge and belief. We understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 9/01/2020

FREDERICK L. LUBRECHT

DATE: 9/01/2020

MARIANNE P. LUBRECHT

THE SLUSSER LAW FIRM

BY:    **CHRISTOPHER B. SLUSSER, ESQUIRE**        **ATTORNEYS FOR PLAINTIFFS**
         **IDENTIFICATION NO. 78609**

         **JOHN M. SOLT, ESQUIRE**
         **IDENTIFICATION NO. 89146**

         **JOSEPH R. BARANKO, JR., ESQUIRE**
         **IDENTIFICATION NO. 39124**

         **JEFFREY A. ROCKMAN, ESQUIRE**
         **IDENTIFICATION NO. 47463**

         **JOHN LUCAS, ESQUIRE**
         **IDENTIFICATION NO. 53503**

1620 NORTH CHURCH STREET, SUITE 1
HAZLETON, PA 18202
(570) 453-0463

| | | |
|---|---|---|
| DAVID HAGENBAUGH and | : | IN THE COURT OF COMMON PLEAS |
| HEATHER HAGENBAUGH, his wife | : | |
| on behalf of themselves and all others | : | OF LUZERNE COUNTY |
| similarly situated; | : | |
| MICHAEL P. HOMANKO, JR. | : | |
| on behalf of himself and all others similarly | : | CLASS ACTION COMPLAINT |
| situated; | : | |
| SHERRI A. HOMANKO | : | |
| on behalf of herself and all others similarly | : | JURY TRIAL DEMANDED |
| situated; | : | |
| and | : | |
| FREDERICK L. LUBRECHT and | : | |
| MARIANNE P. LUBRECHT, his wife | : | CIVIL ACTION NO. 2020-07988 |
| on behalf of themselves and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| NISSAN NORTH AMERICA d/b/a | : | |
| NISSAN USA; | : | |
| HYUNDAI MOTOR COMPANY; | : | |
| KIA MOTORS AMERICA; | : | |
| AIRPORT ROAD MOTORS N., LLC. d/b/a | : | |
| HAZLETON NISSAN; | : | |
| AIRPORT ROAD MOTORS HY., LLC. | : | |
| d/b/a HAZLETON HYUNDAI; | : | |
| AIRPORT ROAD MOTORS K, LLC d/b/a | : | |
| HAZLETON KIA; | : | |
| MICHAEL S. SAPORITO; | : | |
| ANTONIO D. PIERCE; AND | : | |
| JESSIE W. ARMSTEAD, | : | |
| | : | |
| Defendants | : | |

## PRAECIPE TO ATTACH EXHIBITS TO
## PLAINTIFFS' COMPLAINT

TO THE PROTHONOTARY OF LUZERNE COUNTY:

Please attach Exhibit A, Exhibit B and Exhibit C to the Complaint that was electronically

filed on September 1, 2020, in the above-referenced matter.

Respectfully submitted,

THE SLUSSER LAW FIRM
I certify that this filing complies with the provisions of the *Public Access Policy
of the Unified Judicial System of Pennsylvania: Case Records of the Appellate
and Trial Courts* that require filing confidential information and documents
differently than non-confidential information and documents.

Date: 10/05/2020          By: _____
                          JEFFREY A. ROCKMAN, ESQUIRE
                          Supr. ID # 47463
                          1620 N. Church St., Ste. 1
                          Hazleton, PA 18202
                          Telephone:  570-453-0463

                          Attorneys for Plaintiffs

# EXHIBIT "A"



# LIFETIME

## ✓ WARRANTY*
### LIFETIME POWERTRAIN WARRANTY
### ENGINE • TRANSMISSION

**WARRANTY***
Lifetime Powertrain Warranty covers the engine and transmission on all eligible vehicles purchased at Hazleton Automall. Coverage begins immediately and runs as long as you own the vehicle and service the vehicle at the Hazleton Automall dealership you purchased the vehicle from.

**ENGINE:**
Cylinder block and cylinder head and all internally lubricated parts, turbo charger, supercharger, harmonic balancer, timing cover, intake and exhaust manifolds, valve covers, oil pan and engine mounts.

**TRANSMISSION:**
Transmission case and all internally lubricated parts, torque converter, flywheel/flex plate, vacuum modulator and transmission mounts.

*See Dealer for details. Set for Life™ services are non-transferable.*

# LIFETIME

## ✓ OIL & FILTER CHANGES*
### IN YOUR NEW OR CERTIFIED VEHICLE
### FOR AS LONG AS YOU OWN IT!

We realize that your new vehicle represents a major financial investment. The best way to protect your investment is to further invest a little of your time taking care of it. Our goal is to make this as easy as possible for you. Oil Changes for Life, when you purchase a new or certified vehicle, is only one of the benefits that make you Set For Life™ at Hazleton Automall.

This program covers replacing the oil and filter in your new or certified pre-owned vehicle as per the factory recommended intervals in your owner's manual for as long as you own the vehicle. Services are only covered when performed at the Hazleton Automall dealership that sold the vehicle. We do not reimburse for services performed at any other facility. While this may not be the most expensive service your vehicle will ever need, it is one of the most important.

*See Dealer for details. Set for Life™ services are non-transferable.*



# LIFETIME

## ✓ CAR WASHES*
### AT OUR ON-SITE CAR WASH FOR
### AS LONG AS YOU OWN YOUR VEHICLE!

Hazleton Automall dealerships offer unlimited car washes at our on-site car wash for as long as you own your car. The estimated 5 year value of unlimited car washes is $2,700. Please keep in mind that our car wash will be closed during inclement weather at our operation.

*See Dealer for details. Set for Life™ services are non-transferable.*



# LIFETIME

## ✓ LOANER VEHICLES*
### IF YOUR VEHICLE NEEDS TO
### STAY WITH US OVERNIGHT

Complimentary loaner vehicles are available *by appointment if your vehicle needs to stay with us overnight!

*See Dealer for details. Set for Life™ services are non-transferable.*



**LAW 553-PA-ARB-e 12/14**

RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

Dealer Number: ▮▮▮▮   Contract Number: ▮▮▮▮   Seller Contract Name and Address

Buyer Name and Address
(Including County and Zip Code)

Co-Buyer Name and Address
(Including County and Zip Code)

You, the Buyer (and Co-Buyer if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller – Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 0.00 % | $ 0.00 | $ 23,688.50 | $ 23,688.50 | $ 24,413.50 |

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | $ 327.81 | Monthly beginning 9/16/2017 |
| One Final Payment Of | $ 326.19 | On 8/16/2023 |

**Arbitration.** Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X
Co-Buyer Signs X

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with the terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

LAW 553-PA-ARB-e 12/14 v1    Page 1 of 6

**ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)**

1. Cash Price

| | | |
|---|---|---|
| Vehicle | | $ 22,700.00 |
| Accessories and Installation | | N/A |
| Government Taxes | | 1,316.50 |
| Vehicle Delivery | | N/A |
| to DEALER | for DOC FEE | 135.00 |
| to DEALER | for INSPECT FEE | 49.00 |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| | | $ 24,205.50  (1) |

<div style="float:right; border:1px solid;">

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A , N/A .

SELLER'S INITIALS    N/A

OPTIONAL GAP CONTRACT: A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term  N/A         $  N/A        Name of Gap Contract

will to buy a Gap contract.

Buyer Signs X
</div>

2. Total Downpayment =

| | | |
|---|---|---|
| Trade-in 2002 - PONTIAC   GRAND AM   (Make)    (Model) | | |
| Trade-In 1G2NE52E23C418307   (Year)   (V/N) | | |
| Gross Trade-In Allowance | | 725.00 |
| Less Pay-Off Made By Seller | | |
| Equals Net Trade-In | | 725.00 |
| + Cash | | |
| + Other  N/A | | |
| (If total downpayment is negative, enter "0" and see 4H below) | | $ 725.00  (2) |

3. Unpaid Balance of Cash Price ( 1 minus 2 ) | $ 23,480.50  (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf:

A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies

| | | | |
|---|---|---|---|
| Life | Term N/A | $ N/A | |
| Disability | Term N/A | $ N/A | |

B. Other Optional Insurance Paid to Insurance Company or Companies:

| | | |
|---|---|---|
| (Describe)  N/A | Term  N/A | $  N/A |
| (Describe)  N/A | Term  N/A | $  N/A |

C. Official Fees Paid to Government Agencies

| | | |
|---|---|---|
| to ST. OF PA | for PA TIRE TAX | 5.00 |
| to ST. OF PA | for ONLINE REG | 14.00 |
| to N/A | for N/A | N/A |

| | |
|---|---|
| D. Optional Gap Contract | N/A |
| E. Government Taxes Not Included in Cash Price | N/A |
| F. Government License and/or Registration Fees | |
| STATE OF PA | 9.00 |
| G. Government Certificate of Title Fees | |
| (Includes $ 24.00   security interest recording fee ) | 75.00 |

H. Other Charges (Seller must identify who is paid and describe purpose)

| | | |
|---|---|---|
| to N/A | for Prior Credit or Lease Balance | $ N/A |
| to N/A | for EXT. WARRANTY/SERVICE | N/A |
| to N/A | for MAINTENANCE | N/A |
| to DEALER | for NOTARY | 6.00 |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |

| | | |
|---|---|---|
| Total Other Charges and Amounts Paid to Others on Your Behalf | | 108.00  (4) |
| Amount Financed (3 + 4) | | $ 23,588.50  (5) |
| Finance Charge | | 0.00  (6) |
| Total of Payments-Time Balance (5 + 6) | | $ 23,588.50  (7) |

If you do not meet your contract obligations, you may lose the vehicle.

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments and Total Sale Price shown on page 1 on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.** You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed or missing.
**Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.** Insurance you must have on the vehicle.
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on page 1. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is: (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more; or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
• You do not pay any payment on time;
• You give false or misleading information on a credit application;
• You start a proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem. If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay to reinstate. If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**h. Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement.** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

**4. WARRANTIES SELLER DISCLAIMS**

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. SERVICING AND COLLECTION CONTACTS**

You agree that we may try to contact you, in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. RIGHT TO RECEIVE STATEMENT OF ACCOUNT**

Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

**8. ADDITIONAL RIGHTS**

If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

**9. APPLICABLE LAW**

Federal law and the law of the state of the Seller's address shown on page 1 of this contract apply to this contract.

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked in this box, policies or certificates from the named insurance companies will describe the terms and conditions.

**Optional Credit Insurance**

Check the insurance you want and sign if you do.

☒ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☒ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name
N/A
Home Office Address

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments on your credit contract while you are disabled. The policies does not cover your sickness or your payment or the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

| Other Optional Insurance | | |
|---|---|---|
| Type of Insurance | N/A | Term N/A |
| Premium $ N/A | | |
| Description of Coverage | | |
| N/A | | |
| Insurance Company Name | | |
| N/A | | |
| Home Office Address | | |
| Type of Insurance | N/A | Term N/A |
| Premium $ N/A | | |
| Description of Coverage | | |
| N/A | | |
| Insurance Company Name | | |
| N/A | | |
| Home Office Address | | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

☐ I want the insurance checked in this box.

Buyer Signature X _____  Date _____

Co-Buyer Signature X _____  Date _____

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. ___ Buyer Signs X ____ Co-Buyer Signs X ____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

See the rest of this contract for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

NOTICE TO BUYER: DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.

Buyer Signs X _____ Date 05/04/2017  Co-Buyer Signs X _____ Date 05/04/2017

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 6, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 05/04/2017  Co-Buyer Signs X _____ Date 05/04/2017

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address N/A

Seller Signs HAZLETON NISSAN  Date 05/04/2017  By X _____  Title F&I manager

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



**HAZLETON Nissan**
*Exceeding Your Expectations*

**HAZLETON NISSAN**
www.hazletonnissan.com

661 Airport Rd.
Hazle Township, PA 18202
Phone: 570-455-7800
Fax: 570-455-2840

DEAL #: 2012
STK #: 2N326A
CUST #: 1080

| | | |
|---|---|---|
| PURCHASER'S NAME | DAVID J MARTERRANO (MAURER & MARTERANO) | SS. NO. 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 DATE 05/04/2017 |
| PURCHASER'S ADDRESS | 208 PLYMOUTH AVE | DOB 12/01/1975 |
| CITY, STATE & ZIP | WILKES BARRE PA 18702 | LIC. NO. 23 156 266 PHONE 570/826-7222 |

| VEHICLE BEING PURCHASED | | VEHICLE PRICE | $22700 00 |
|---|---|---|---|
| PLEASE STATE WHETHER THE FOLLOWING: ☐ NEW ☐ CAR ☐ USED ☑ TRUCK ☐ DEMO | STOCK NO. 2N326A | | |
| MAKE NISSAN | | | |
| MODEL ROGUE | TYPE 4 Wheel | | |
| COLOR MAROON | YEAR | | |
| VIN KNMAT2MT3HP607145 | | $ 22700 00 | |
| DELIVERED 05/04/2017 SALESMAN LUCIANO DUONG FERIA | GAP INSURANCE | | |
| IF A NEW VEHICLE SALE | ENVIRONMENTAL PROTECTION ITEMS | | |
| IF USED VEHICLE SALE CHECK APPROPRIATE BOX | SECURITY | | |
| | LESS REBATE (IF APPLICABLE) | | |
| | LESS TRADE-IN VALUE | 725 00 | |
| | SERVICE CONTRACT | | |
| CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY | MAINTENANCE CONTRACT | | |
| | TOTAL TAXABLE AMOUNT | 21975 00 | |
| | SALES TAX | 1318 50 | |
| TRADE IN DESCRIPTION AND ALLOWANCE | DOCUMENTARY FEE | 138 00 | |
| Year 2003 Make PONTIAC Model GRAND A Color | REGISTRATION FEE | 9 00 | |
| Serial No. 1G2NF52E23C213307 | TITLE FEE | 51 00 | |
| Trade In Value $ 725.00 | NOTARY FEE | 5 00 | |
| Less Balance Owed $ | ENCUMBRANCE FEE | 24 00 | |
| Net Trade In Allowance $ 725.00 | LICENSE FEE | 43 00 | |
| Balance Owed To | INSPECTION FEE | | |
| Address | ON LINE REGISTRATION FEE | 14 00 | |
| Account No. | PTA EXCISE TIRE TAX | 5 00 | |
| Mfd. From Good Thru | PAYOFF ON TRADE | | |
| I CERTIFY THE ODOMETER READING ON MY ABOVE TRADE READS 83801 MILES THE ODOMETER HAS ☐ HAS NOT ☐ EXCEEDED 100,000 MILES SIGNATURE | TOTAL | 23588 50 | |
| | DEPOSIT | | |
| IF A LEASE THE FOLLOWING APPLY: | CASH DUE ON DELIVERY | | |
| MONTHLY PAYMENT AMOUNT $ N/A | BALANCE TO FINANCE | 23588 50 | |

MONTHLY PAYMENT AMOUNT $ N/A
TERM: N/A
MILEAGE PER YEAR N/A
TOTAL DUE AT DELIVERY $ N/A

I understand these payments and terms are conditional on approval from primary lender only.

SIGNATURE

☐ BUYER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE. BUYER HAS READ ALL PAGES OF THIS AGREEMENT AND AGREES TO ALL TERMS AND CONDITIONS IN THIS AGREEMENT.

Accepted By 05/04/2017                    05/04/2017

*THANK YOU - WE APPRECIATE YOUR BUSINESS*
THE FRONT AND BACK OF THIS ORDER COMPRISE THE ENTIRE AGREEMENT AFFECTING THIS PURCHASE.
IF A CREDIT SALE REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS FORM.

508331*1 HZNIS-FI



# Welcome to the Hazleton Nissan Family!

We want to make sure you enjoy all of the benefits associated with being a part of our family.
Here are some reminders for servicing and caring for your vehicle in the future.

## Express Service

**This is your maintenance minder.** When this light appears, it is time to visit our Express Service Department for your free oil changes as recommended by the manufacturer. No appointment is necessary. To keep things moving efficiently, all other maintenance, repairs, and warranty work will be done in our main shop.

Customer's Initials _____

## Car Wash

**Free car washes are unlimited** and our extended hours make it easy to keep your Nissan looking great. Please keep in mind that the car wash will be closed during inclement weather or below freezing temperatures. You can always call **(570) 455-8300** to see if it is open.

Customer's Initials _____

## Main Service Department

Our main service department is for maintenance other than oil changes (brakes, tires, etc.) and repairs. Please call our appointment coordinators at (570) 455-4801 or visit www.HazletonNissan.com to schedule your visit in advance.

Customer's Initials _____

## Loaner Cars & Shuttle Service

Our loaner cars are available by appointment if your car needs to stay with us overnight. We also have a team of shuttles to take you where you need to go within a 10 mile radius Monday – Saturday.

Customer's Initials _____

Customer Signature: _____ Date: 05/04/2017

Dealer Signature: _____ Date: 05/04/2017

50294*1*HZNIS-FI

# EXHIBIT "B"

DEAL#: 4970
STK#: ZY2042S
CUST#: 9420

# WE OWE

| NAME | MARIANNE P LUBRECHT FREDERICK L LUBRECHT SR | STOCK # ZY2042S | ☒ NEW | ☐ USED |

ADDRESS 269 TURNBERRY LN   YEAR 2018   MAKE HYUNDAI

CITY HAZLE TOWNSHP   STATE PA   ZIP 18202-9595   MODEL TUCSON

PHONE 570/987-0082   VIN KM8J3CA45JU736176

SALESPERSON RAMON CASTRO   DEL. DATE 06/28/2018

| QTY. | NAME OF ITEM OR SERVICE OWED | PART | LABOR |
|------|------------------------------|------|-------|
|      |                              |      |       |
|      |                              |      |       |
|      |                              |      |       |
|      |                              |      |       |
|      | **LIFETIME WARRANTY, LIFETIME INSPECTION, LIFETIME LOANER VEHICLES** LIFETIME OIL CHANGES AT FACTORY RECOMMENDED INTERVALS AND LIFETIME CAR WASHES NOTHING ELSE PROMISED OR OWED |      |       |

I hereby accept this WE-OWE with the understanding that it is valid for only (30) THIRTY DAYS FROM DATE OF ISSUANCE, and that I must make an ADVANCE APPOINTMENT WITH THE SERVICE DEPARTMENT before the above work can be performed.

(FOR APPOINTMENT CALL SERVICE DEPT.)

CUSTOMER _____

DATE 06/28/2018

APPROVED _____ MGR.

33519*1*HZHYU-FI



**HAZLETON HYUNDAI**
www.hazletonhyundai.com

703 Airport Rd.
Hazle Township, PA 18202
Phone: 570-455-4300
Fax: 570-455-4343

DEAL#: 4970
STK#: ZY2042S
CUST#: 9420

2716

| | |
|---|---|
| PURCHASER'S NAME | MARIANNE P LUBRECHT / FREDERICK L LUBRECHT SR |
| SOC. SEC. NO. | |
| DATE | 06/28/2018 |
| PURCHASER'S ADDRESS | 269 TURNBERRY LN |
| D/O/B | 10/21/1959 |
| RESIDENCE PHONE | 570/987-0082 |
| CITY, STATE & ZIP | HAZLE TOWNSHP PA 18202-9595 |
| LIC. NO. | 18747094 |
| BUSINESS PHONE | |

| VEHICLE BEING PURCHASED | | VEHICLE PRICE | 26750 | 00 |
|---|---|---|---|---|
| PLEASE ENTER MY ORDER FOR THE FOLLOWING: ☒NEW ☐CAR ☐USED ☒TRUCK ☐DEMO ☐ | STOCK NO. ZY2042S | | | |
| YEAR 2018   MAKE HYUNDAI   MILEAGE 85 | | | | |
| MODEL OR SERIES TUCSON   BODY TYPE Wagon | | | | |
| COLOR R5U/Blue   TRIM SEL | | | | |
| M.V.I. OR SER. NO. KM8J3CA45JU736176   ENG. TYPE 2.0 Liter | | | | |
| TO BE DELIVERED ON OR ABOUT 06/28/2018   SALESMAN RAMON CASTRO | | $ | 26750 | 00 |

| | | |
|---|---|---|
| IF A NEW VEHICLE SALE... The only warranties applying to this vehicle are those offered by the manufacturer. | GAP INSURANCE | | |
| | ENVIRONMENTAL PROTECTION ITEMS | | |
| IF USED VEHICLE SALE-CHECK APPROPRIATE BOX | SECURITY | | |
| ☐ AS IS: the Vehicle is sold "as is" by us. This motor vehicle is sold as is without any warranty. The purchaser will bear the entire expense of repairing or correcting any defects that presently exist or that may occur in the Vehicle. | LESS REBATE (if Applicable) | 2500 | 00 |
| OR | LESS TRADE-IN VALUE | 28268 | 00 |
| ☒ The only Dealer Warranty on this vehicle is the Limited Warranty which is issued with and made part of this order form. | SERVICE CONTRACT | | |
| CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY | MAINTENANCE CONTRACT | | |
| "The information you see on the window form for this vehicle is part of this contract. Information in the window form overrides any contrary provisions in the contract of sale." | TOTAL TAXABLE AMOUNT | -4018 | 00 |
| | SALES TAX | 1047 | 00 |
| TRADE-IN DESCRIPTION AND ALLOWANCE | DOCUMENTARY FEE | 141 | 00 |
| Yr. 2017   Make KIA   Model SPORTAG   Color By2/Bro | REGISTRATION FEE | | |
| Yr. 2010   Make TOYOTA   Model PRIUS | TITLE FEE | 53 | 00 |
| Serial No. KNDPNCAC7H7158400   JTDKN3DU5A1206631 | NOTARY FEE | 5 | 00 |
| Trade-In Value $ 28268.00 | ENCUMBRANCE FEE | | |
| Less Balance Owed $ 22199.03 | LICENSE FEE | 9 | 00 |
| Net Trade-In Allowance $ 6068.97 | INSPECTION FEE | 49 | 00 |
| Balance Owed To: KMF-LEASE NO LIEN | ON LINE REGISTRATION FEE | 14 | 00 |
| Address: | PTA EXCISE TIRE TAX | 5 | 00 |
| Account No.: | PAYOFF ON TRADE | 22199 | 03 |
| Info. From   Good Thru | TOTAL | 19504 | 03 |
| I CERTIFY THE ODOMETER READING ON MY ABOVE TRADE READS 15084 MILES. THE ODOMETER HAS ☐HAS NOT ☒ EXCEEDED 100,000 MILES, SIGNATURE: | DEPOSIT | 500 | 00 |
| IF A LEASE, THE FOLLOWING APPLY: | CASH DUE ON DELIVERY | | |
| MONTHLY PAYMENT AMOUNT $ _____ | BALANCE TO FINANCE | 19004 | 03 |
| TERM: _____ | I understand these payments and terms are conditional on approval from primary lender only. | | |
| MILEAGE PER YEAR _____ | | | |
| TOTAL DUE AT DELIVERY $ _____ | SIGNATURE: | | |

THERE ARE NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, MADE BY THE SELLER HEREIN, OR THE MANUFACTURER, ON THE VEHICLE OR CHASSIS DESCRIBED ON THE FACE HEREOF EXCEPT IN THE CASE OF A NEW VEHICLE OR CHASSIS. THE PRINTED NEW VEHICLE WARRANTY DELIVERED TO PURCHASER WITH THE VEHICLE OR CHASSIS AND HEREBY MADE A PART HEREOF AS THOUGH FULLY SET FORTH HEREIN IS THE ONLY WARRANTY APPLICABLE TO SUCH NEW VEHICLE OR CHASSIS AND IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN THE CASE OF A USED VEHICLE OR CHASSIS. THE APPLICABILITY OF AN EXISTING MANUFACTURER'S WARRANTY THEREON, IF ANY, SHALL BE DETERMINED SOLELY BY THE TERMS OF SUCH WARRANTY. ASK SALES PERSON FOR COPY OF COMPLETE WARRANTY.

THIS CONTRACT IS NOT BINDING UPON EITHER THE DEALER OR THE PURCHASER UNTIL SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. YOU, THE BUYER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND ANY TIME BEFORE RECEIPT OF A COPY OF THIS CONTRACT SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE BY GIVING WRITTEN NOTICE OF CANCELLATION TO DEALER.

☒ BUYER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE. BUYER HAS READ ALL PAGES OF THIS AGREEMENT AND AGREES TO ALL TERMS AND CONDITIONS IN THIS AGREEMENT.

| | | |
|---|---|---|
| Accepted By: | 06/28/2018 | 06/28/2018 |
| | Date   Dealer or His Authorized Representative | Date   Purchaser's Signature |

"THANK YOU — WE APPRECIATE YOUR BUSINESS"
THE FRONT AND BACK OF THIS ORDER COMPRISE THE ENTIRE AGREEMENT AFFECTING THIS PURCHASE.
IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS FORM.

©2013 The Reynolds and Reynolds Company

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

50632*1*HZHYU-FI

## ADDITIONAL TERMS AND CONDITIONS

1. As used in this Order, the terms (a) "Seller" shall mean the authorized Dealer to whom this Order is addressed and who shall become a party hereto by its acceptance hereof, (b) "Purchaser" shall mean the party executing this Order as such on the face hereof, and (c) "Manufacturer" shall mean the Company that manufactured the vehicle or chassis, it being understood by Purchaser and Seller that Seller is in no respect the agent of Manufacturer, that Seller and Purchaser are the sole parties to this Order and that reference to Manufacturer herein is for the purpose of explaining generally certain contractual relationships existing between Seller and Manufacturer with respect to new motor vehicles.

2. The Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of the new motor vehicle ordered by Purchaser is changed by Manufacturer prior to its delivery to Purchaser, Dealer reserves the right to change the cash delivery price to Purchaser. If the cash delivery price is increased by Dealer, Purchaser may, if dissatisfied with the higher figure, cancel this Order. In the event a used motor vehicle ("trade-in") has been traded as part of the consideration for the new motor vehicle, the trade-in shall be returned to Purchaser upon payment of a reasonable charge for storage and repairs (if any). If the trade-in has been previously sold by Dealer, the amount received for it shall be returned to Purchaser less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said trade-in for sale.

3. Where Purchaser wishes to trade in a used motor vehicle ("trade-in") as part of the consideration for the motor vehicle ordered, Dealer may appraise the trade-in at the time of the execution of this Order by Purchaser. Dealer also reserves the right to reappraise the trade-in at the time of delivery.
The Dealer shall not alter a trade-in appraisal from the time of the initial appraisal until the time of delivery unless:
  (a) intervening factors indicate an apparent decrease in the value of the trade-in over and above ordinary wear and tear; and/or
  (b) a change occurs in the mechanical performance of the vehicle.
If such reappraised value is lower than the original allowance as shown on the front of this Order, Purchaser may, if dissatisfied, cancel this Order. Such right of cancellation must be exercised prior to actual delivery to the Purchaser of the motor vehicle ordered and the surrender of the used motor vehicle to Dealer.

4. Purchaser agrees to deliver to Dealer satisfactory evidence of title to any used motor vehicle traded in as a part of the consideration for the motor vehicle ordered hereunder at the time of delivery of such used motor vehicle to Dealer. Purchaser warrants any such used motor vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted herein.

5. Unless this Order shall have been cancelled by Purchaser under and in accordance with the provisions of paragraph 2 or 3 above, Dealer shall have the right, upon failure or refusal of Purchaser to accept delivery of the motor vehicle ordered hereunder and to comply with the terms of this Order, to retain as liquidated damages any cash deposit made by Purchaser.

6. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts thereof at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's orders. Correspondingly, in the event of any such change by Manufacturer, Dealer shall have no obligation to Purchaser to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Purchaser.

7. Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

8. The price for the motor vehicle specified on the face of this Order includes reimbursement for Federal Excise taxes, but does not include sales taxes, use taxes or occupational taxes based on sales volume, (Federal, State or Local) unless expressly so stated. Purchaser assumes and agrees to pay, unless prohibited by law, any such sales, use or occupational taxes imposed on or applicable to the transaction covered by this Order, regardless of which party may have primary tax liability therefor.

9. The Purchaser, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order.

10. The Purchaser agrees to pay balance due on the terms specified and accept delivery of the vehicle within 48 hours after notification the vehicle is ready for delivery. In the event Purchaser fails to take delivery of the vehicle, Purchaser's deposit may be retained by Dealer as liquidated damages for Dealer's expense and efforts in the matter, and Dealer may dispose of or sell the vehicle as Dealer sees fit.

11. Buyer agrees that this Agreement includes all of the terms and conditions on the front and back side hereof, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises, with any retail installment sale contract, the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Agreement. Buyer, by signing this Agreement, acknowledges that he has read its terms and has received a true copy of this Agreement.

This Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative. YOU, THE BUYER, MAY CANCEL THIS AGREEMENT AND RECEIVE A FULL REFUND ANY TIME BEFORE RECEIPT OF A COPY OF THE AGREEMENT SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE BY GIVING WRITTEN NOTICE OF CANCELATION TO DEALER.

---

**12. ARBITRATION CLAUSE.** This arbitration clause applies if the box on the front of this Agreement is checked.

This Arbitration Clause significantly affects your rights in any dispute with us. Please read the Arbitration Clause carefully before you sign this Agreement.

- EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
- DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. THE INFORMATION YOU AND WE MAY OBTAIN IN DISCOVERY FROM EACH OTHER IN ARBITRATION IS GENERALLY MORE LIMITED THAN IN A LAWSUIT.

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose any one of the following arbitration organizations and its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, New York 10017-4605 (www.adr.org), the National Arbitration Forum, Box 50191, Minneapolis, Minnesota 55405-0191 (www.arb-forum.com) or JAMS, 1920 Main Street, Suite 300 Irvine, California 92614 (www.jamsadr.com). You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. We will pay that portion of your filing, administration, service or case management fee and your arbitrator or hearing fee that the arbitrator determines that we must pay in order to make this agreement to arbitrate enforceable. Each party shall be responsible for its own attorney, expert or other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq) and not by any state law concerning arbitration.

You and we retain the right to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Agreement. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

*THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.*

DEAL# 4970
CUST# 9420

**HAZLETON Hyundai**

# Welcome to the Hazleton Hyundai Family!

We want to make sure you enjoy all of the benefits associated with being a part of our Set For Life Family.
Here are some reminders for servicing and caring for your vehicle in the future.

## Express Service

This is your maintenance minder indicator. When this light appears, it is time to visit our Express Service Department for your complimentary oil and filter service and multi-point inspection as recommended by the manufacturer. Our volume of satisfied customers enrolled in the Set For Life complimentary oil and filter service, combined with Hazleton Hyundai's unparalleled quality of work can result in longer wait times. To keep things moving efficiently, all other maintenance, repairs, and warranty work will be done in our main shop.

Customer's Initials _____

## Car Wash

Complimentary car washes are unlimited! We have extended hours that make it easy to keep your Hyundai looking like new! Hazleton Detail Center reserves the right to close due to inclement weather, holidays, and equipment maintenance. You can always call (570) 455-8300 to see if it is open.

Customer's Initials _____

## Executive Wash Club Upgrade

I understand that I have the option to upgrade to the Executive Wash Club for $504.00 for the lifetime of my ownership of this vehicle. I understand this upgrade is nontransferable and agree that cancellation does not entitle me to any refund, prorated or otherwise.

Customer's Initials _____

## Main Service Department

Our main service department is for all repairs and other maintenance items such as brakes, tires, etc. Please call our appointment coordinators at (570) 455-4300 to schedule your visit in advance.

Customer's Initials _____

## Loaner Cars & Shuttle Service

Our loaner cars are available by appointment if your car needs to stay with us overnight. We also have a team of shuttles to take you where you need to go within a 10-mile radius Monday – Saturday.

Customer's Initials _____

Customer Signature: _____  Date: 06/28/2018

Dealer Signature: _____  Date: 06/28/2018

50299*T*HZHYU-FI

# EXHIBIT "C"

**LAW 553-PA-eps-14 12/14**

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

DEAL#: 3757
BTK#: ZK19109
CUST#: 4205

Dealer Number _____  Contract Number **74905**

| Buyer Name and Address (Including County and Zip Code) MICHAEL P HOMANKO JR 349 W 30TH ST HAZLE TOWNSHIP, PA 18202-9827 COUNTY: LUZERNE | Co-Buyer Name and Address (Including County and Zip Code) SHERRI A HOMANKO 349 W 30TH ST HAZLE TOWNSHIP, PA 18202-9827 COUNTY: LUZERNE | Seller-Creditor (Name and Address) HAZLETON KIA 772 AIRPORT ROAD HAZLETON, PA 18202 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2017 | KIA SORENTO | 5,001 - 6,000 | 5XYPKDA50HG337817 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 18400.00 is |
|---|---|---|---|---|
| 4.55 % | $ 4676.87 | $ 31869.61 | $ 36546.48 | $ 54946.48 |

Returned Check Charge: You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 507.59 | Monthly beginning 10/05/2017 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Buyer Initials X _____  Co-Buyer Initials X _____

39536*1*H2KIA-FI

Scanned by CamScanner

| | | |
|---|---|---|
| Gross Trade-In Allowance | (VIN) | |
| Less Pay Off Made By Seller | | $ N/A |
| Equals Net Trade In | | $ N/A |
| + Cash | | $ N/A |
| + Other REBATES | | $ 15000.00 |
| (If total downpayment is negative, enter "0" and see 4H below) | | $ 3400.00 |

3  Unpaid Balance of Cash Price (1 minus 2)                                           $ 18400.00 (2)
4  Other Charges Including Amounts Paid to Others on Your Behalf              $ 27493.61 (3)
   A  Cost of Optional Credit Insurance Paid to Insurance
      Company or Companies

| Life | | | |
|---|---|---|---|
| Disability | Term N/A | $ | N/A |
| B  Other Optional Insurance Paid to Insurance Company or Companies | Term N/A | | N/A |
| (Describe) N/A | | | $ N/A |
| (Describe) N/A | Term N/A | | N/A |
| C  Official Fees Paid to Government Agencies | Term N/A | | N/A |
| to N/A | for N/A | | N/A |
| to N/A | for N/A | | $ N/A |
| to STATE OF PA | for INSPECTION FEE | | N/A |
| D  Optional Gap Contract | | | $ 49.00 |
| E  Government Taxes Not Included in Cash Price | | | N/A |
| F  Government License and/or Registration Fees | | | N/A |
| REG FEE | | | |
| G  Government Certificate of Title Fees | ON-LINE DLR FEE | | $ 51.00 |
| (includes $ N/A security interest recording fee) | | | |
| H  Other Charges (Seller must identify who is paid and | | | $ 53.00 |
| describe purpose) | | | |
| to N/A | for Prior Credit or Lease Balance | | 0.00 |
| to HAZLETON KIA | for DOCUMENTATION FEE | | 138.00 |
| to KIA SERVICE CONTRACT | for SERVICE CONTRACT | | 2500.00 |
| to HAZLETON KIA | for LIEN/ENCUMBERANCE FEE | | 25.00 |
| to N/A | for N/A | | N/A |
| to HAZLETON KIA | for NOTARY FEE | | 5.00 |
| to HAZLETON KIA | for TEMP TAG FEE | | 30.00 |
| to HAZLETON KIA | for PLATINUM PROTECT | | 1525.00 |
| to N/A | for N/A | | N/A |
| to N/A | for N/A | | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | | $ 4376.00 |

5  Amount Financed (3 + 4)                                                             $ 31869.61 (5)
6  Finance Charge                                                                       $ 4676.87 (6)
7  Total of Payments-Time Balance (5 + 6)                                              $ 36546.48 (7)

**If you do not meet your contract obligations, you may lose the vehicle.**

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
N/A , Year N/A , SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.                              _____
                                            Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____ N/A _____

---

N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

**Other Optional Insurance**

| ☒ TIRE & WHEEL | 72 |
|---|---|
| Type of Insurance | Term |
| Premium $ 1525.00 | |
| Description of Coverage PLATINUM | |
| PROTECTION PLAN | |
| Insurance Company Name SAFE-GUARD | |
| Home Office Address TWO CONCOURSE PKWY | |
| ATLANTA, GA 30328 | |

| ☐ N/A | N/A |
|---|---|
| Type of Insurance | Term |
| Premium $ N/A | |
| Description of Coverage N/A | |
| N/A | |
| Insurance Company Name N/A | |
| N/A | |
| Home Office Address N/A | |
| N/A | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X _____  08/21/2017
Buyer Signature                          Date

X _____  08/21/2017
Co-Buyer Signature                       Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

---

Buyer Initials _____   Co-Buyer Initials X _____

Scanned by CamScanner

## IMPORTANT AGREEMENTS

**FINANCE CHARGE AND PAYMENTS**

a. How we will figure Finance Charge. We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

c. Security interest. You give us a security interest in:
* The vehicle and all parts or goods put on it;
* All money or goods received (proceeds) for the vehicle;
* All insurance, maintenance, service, or other contracts we finance for you; and
* All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. Insurance you must have on the vehicle. You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. You may owe late charges. You will pay a late charge on each late payment as shown on page 1. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
* You do not pay any payment on time;
* You give false or misleading information on a credit application;
* You start a proceeding in bankruptcy or one is started against you or your property; or
* You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. You may have to pay collection costs. If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.

d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

f. We will sell the vehicle if you do not get it back. If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

Buyer Initials X _____ Co-Buyer Initials X _____

Scanned by CamScanner

g. **What we may do about optional insurance,** maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement:** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract. because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).

**I, WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**
Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

8. **ADDITIONAL RIGHTS**
If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

9. **APPLICABLE LAW**
Federal law and the law of the state of the Seller's address shown on page 1 of this contract apply to this contract.

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X_____   Co-Buyer Signs X_____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See the rest of this contract for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.

Buyer Signs X_____   Date 08/21/2017   Co-Buyer Signs X_____   Date 08/21/2017

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X_____   Date 08/21/2017   Co-Buyer Signs X_____   Date 08/21/2017
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X_____   Address_____
Seller Signs  HAZLETON KIA   By X_____   Title  FINANCE MGR

Seller assigns its interest in this contract to  CAPITAL ONE AUTO FINANCE   (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse

Seller  HAZLETON KIA   By_____   Title  FINANCE MGR

LAW FORM NO. 553-PA-eps-14   PEN.1749   U.S. PATENT NO. D464,762
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
395586*1*HZKIA-FI
08/21/2017  08:55 pm
LAW 553-PA-eps-14 12/14 v1   Page 4 of 4.

Scanned by CamScanner

# LIFETIME WARRANTY*

## LIFETIME POWERTRAIN WARRANTY
### ENGINE • TRANSMISSION

# LIFETIME OIL & FILTER CHANGES*

IN YOUR NEW OR CERTIFIED VEHICLE FOR AS LONG AS YOU OWN IT!

# LIFETIME CAR WASHES

AT OUR ON-SITE CAR WASH FOR AS LONG AS YOU OWN YOUR VEHIC

# LIFETIME LOANER VEHICLE

IF YOUR VEHICLE NEEDS TO STAY WITH US OVERNIGH



# LIFETIME

## STATE INSPECTION*
THAT'S RIGHT! WE'LL DO YOUR PA STATE INSPECTION

# LIFETIME
## SUNDAY EXPRESS SERVICE*
HAZLETON AUTOMALL OFFERS EXPRESS SERVICE 7 DAYS A WEEK







**HONDA**
HAZLETON HONDA
451 Airport Road
Hazle Township, PA 18202
www.hazletonhonda.com
Sales: 570-455-8500

**NISSAN**
HAZLETON NISSAN
661 Airport Road
Hazle Township, PA 18202
www.hazletonnissan.com
Sales: 570-455-4800

**HYUNDAI**
HAZLETON HYUNDAI
703 Airport Road
Hazle Township, PA 18202
www.hazletonhyundai.com
Sales: 570-455-4300

**KIA**
HAZLETON KIA
701 Airport Road
Hazle Township, PA 18202
www.hazletonkia.com
Sales: 570-455-5800




# LIFETIME
- WARRANTY*
- OIL & FILTER CHANGES*
- CAR WASHES*
- LOANER VEHICLES*
- STATE INSPECTION*
- SUNDAY EXPRESS SERVICE*
*See Dealer for details.

SET FOR LIFE™
EXCLUSIVELY AT HAZLETON AUTOMALL

HAZLETON Automall
Exceeding Your Expectations