## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HAGENBAUGH and | : | |
| HEATHER HAGENBAUGH, his wife | : | |
| MICHAEL P. HOMANKO, JR. | : | |
| SHERRI A. HOMANKO and | : | |
| FREDERICK L. LUBRECHT and | : | CLASS ACTION COMPLAINT |
| MARIANNE P. LUBRECHT, his wife, | : | |
| Individually and on behalf of all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | Case No. 3:20-CV-01838-MEM |
| NISSAN NORTH AMERICA, INC. | : | |
| HYUNDAI MOTOR AMERICA | : | |
| KIA MOTORS AMERICA, | : | |
| AIRPORT ROAD MOTORS N., LLC. | : | |
| d/b/a HAZLETON NISSAN , | : | |
| AIRPORT ROAD MOTORS HY., LLC. | : | |
| d/b/a HAZLETON HYUNDAI, | : | |
| AIRPORT ROAD MOTORS K, LLC | : | |
| d/b/a HAZLETON KIA, | : | |
| MICHAEL S. SAPORITO, | : | |
| ANTONIO D. PIERCE | : | |
| and | : | |
| JESSIE W. ARMSTEAD | : | |
| | : | |
| Defendants | : | |
| | : | |

## PLAINTIFFS' FIRST AMENDED
## CLASS ACTION COMPLAINT

Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife, Michael P. Homanko, Jr. and Sherri A. Homanko, and Frederick L. Lubrecht and Marianne P. Lubrecht, his wife, hereby bring this action individually and behalf of all others similarly situated (hereafter, the "Class") pursuant to Pennsylvania Rules of Civil Procedure 1701 et. seq. against Defendants herein named for fraudulently inducing consumers into purchasing and/or leasing new vehicles by offering free services under a certain "Set for Life Program", which is more fully described herein. Plaintiffs

1

allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## THE PARTIES

1.      Plaintiffs, David Hagenbaugh and Heather Hagenbaugh, his wife (collectively referred to herein as the "Hagenbaughs"), are adult individuals residing at 308 Plymouth Avenue, Wilkes-Barre, Luzerne County, Pennsylvania 18702.

2.      Plaintiffs, Michael P. Homanko, Jr. and Sherri A. Homanko (collectively referred to herein as the "Homankos"), are adult individuals residing at 349 West 30th Street, Hazle Township, Luzerne County, Pennsylvania 18202. Michael P. Homanko, Jr. is the father of Sherri A. Homanko.

3.      Plaintiff, Frederick L. Lubrecht and Marianne P. Lubrecht his wife (collectively referred to herein as the "Lubrechts"), are adult individuals residing at 269 Turnberry Lane, Hazle Township, Luzerne County, Pennsylvania 18202.

4.      Defendant, Nissan North America Inc. ("Nissan") is, upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at One Nissan Way, Franklin, Tennessee 37067.

5.      Defendant, Hyundai Motor America ("Hyundai") is, upon information and belief, a corporation organized under the laws of the State of California, with its corporate headquarters located at 10550 Talbert Ave., Fountain Valley, California 92708.

6.      Defendant, Kia Motors America ("Kia") is, upon information and belief, a corporation organized and existing under the laws of the State of California, with its corporate headquarters located at 111 Peters Canyon Road, Irvine, California 92606. At all times material

hereto, Defendant, Kia was/is a subsidiary of Defendant, Hyundai, which owns approximately one-third of Kia's stock and is Kia's largest stakeholder. (Defendants, Hyundai, Nissan and Kia are hereinafter sometimes collectively referred to as the "Manufacturers.")

7.      Defendant, Airport Road Motors N., LLC. d/b/a Hazleton Nissan ("Hazleton Nissan"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 661 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Nissan was an authorized Nissan dealer.

8.      Defendant, Airport Road Motors Hy., LLC. d/b/a Hazleton Hyundai ("Hazleton Hyundai"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 703 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Hazleton Hyundai was an authorized Hyundai dealer.

9.      Defendant, Airport Road Motors K, LLC. d/b/a Hazleton Kia ("Hazleton Kia"), is a limited liability corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a current or former place of business located at 701 Airport Road, Hazle Township, Luzerne County, Pennsylvania 18202. At all times material hereto, Defendant, Hazleton Kia was an authorized Kia dealer. (Defendants, Hazleton Nissan, Hazleton Hyundai and Hazleton Kia are hereinafter sometimes collectively referred to as the "Dealerships.")

10.      Defendant, Michael S. Saporito ("Saporito"), is an adult individual residing at 382 Old York Road, Hamilton, New Jersey 08620.

11.      Defendant, Antonio D. Pierce ("Pierce"), is an adult individual residing at 1376 Via Romero, Palos Verdes Estates, California 90274.

12.    Defendant, Jessie W. Armstead ("Armstead"), is an adult individual residing at 2300 Top Rail Lane, Southlake, Texas 76092. (Defendants, Saporito, Pierce and Armistead are hereinafter sometimes collectively referred to as the "Owners.")

13.    At all times material hereto, Dealerships were owned and/or controlled by the Owners. At all times material hereto, Owners personally directed, participated or cooperated in the misfeasance that forms the basis of this Complaint and as such, can be held personally liable therefore under Pennsylvania case precedent.

14.    Whenever any reference is made in this Complaint to any representation, act or transaction of the Dealerships, or any principals, officers, directors, employees, agents, or representatives thereof, including but not limited to the Owners, such allegations shall be deemed to mean that such principals, officers, directors, employees, agents or representatives of the Dealerships, whether they were acting on their own behalf or for their own benefit, did or authorized such representations, acts or transactions on behalf of the Manufacturers and, based upon the Manufacturers' actions and/or conduct, possessed the actual or apparent authority to do so.

**FACTUAL HISTORY**

15.    Sometime in or about 2014, Owners agreed to open a retail auto mall in Hazle Township, Luzerne County, Pennsylvania known as the Hazleton Auto Mall, which was to consist of separate Nissan, Hyundai, Kia and Honda dealerships. In or about February 2015, Defendants, Hazleton Nissan, Owners and certain entities which were owned and/or controlled by Owners, including All Pro Airport Rd., N 4, LLC., All Pro Airport Rd. Detail-3, LLC., and Airport Road Motors Detail (collectively, the "Nissan Financing Entities"), sought and subsequently received financing from Nissan Motor Acceptance Corporation ("NMAC"), an entity which is closely

affiliated with Defendant, Nissan and which provides wholesale credit to authorized Nissan dealers to purchase vehicle inventory for retail sale to the public and for working capital and real estate loans. Wholesale credit lines are commonly referred to as "floorplan financing."

16.    As a condition to its agreement to extend such floorplan financing, NMAC required, among other things, that Hazleton Nissan enter into an Automotive Wholesale Finance and Security Agreement ("WSA") pursuant to which Hazleton Nissan agreed to promptly repay to NMAC, upon the retail sale of each Nissan vehicle, the monies advanced by NMAC when Hazleton Nissan purchased that vehicle at wholesale. Under the terms of the WSA, Hazleton Nissan's failure to pay NMAC upon the retail sale of a Nissan vehicle constituted a default thereunder and is commonly referred to as a "sale out of trust" or "SOT". NMAC further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Nissan, Owners and the Nissan Financing Entities. Finally, and pursuant to the terms of the WSA, Hazleton Nissan, Owners and the Nissan Financing Entities granted permission to NMAC to conduct periodic audits of Hazleton Nissan's books and records in order to verify, among other things, that it was promptly paying NMAC upon the retail sale of each Nissan vehicle.

17.    Defendants, Hazleton Hyundai, Hazleton Kia, Owners and certain entities/affiliates which were owned and/or controlled by Owners, including All Pro Airport Rd. K/HY 2, LLC. (the "Hyundai/Kia Financing Entity), also sought and subsequently received financing from Hyundai Capital America ("HCA"), an entity which is closely affiliated with Defendants, Hyundai and Kia and which provides floorplan financing to authorized Hyundai and Kia dealers. As a condition to HCA's agreement to extend such floorplan financing, Hazleton Hyundai and Hazleton Kia executed separate Inventory Loan and Security Agreements (the "Hyundai ILSA's"), dated June 10, 2015, pursuant to which Hazleton Hyundai and Hazleton Kia agreed to promptly repay to HCA, upon the retail sale of each Hyundai and Kia vehicle, the monies advanced by HCA when

5

Hazleton Hyundai and Hazleton Kia purchased that vehicle at wholesale. Under the terms of the ILSA's, Hazleton Hyundai's and Hazleton Kia's failure to pay HCA upon the retail sale of a Hyundai or Kia vehicle constituted a default thereunder. HCA further required that all floorplan financing be cross-guaranteed and cross-collateralized jointly and severally by Hazleton Hyundai, Hazleton Kia, Owners and the Hyundai/Kia Financing Entity. Finally, and pursuant to the terms of the ILSA's, Hazleton Hyundai, Hazleton Kia and the Hyundai/Kia Financing Entity granted permission to HCA to conduct periodic audits of Hazleton Hyundai's and Hazleton Kia's books and records in order to verify, among other things, that they were promptly paying HCA upon the retail sale of each Hyundai and Kia vehicle.

18.    Upon information and belief, Dealerships also entered into certain dealership agreements (hereafter, the "Dealership Agreements") with the Manufacturers pursuant to which, *inter alia*, the Dealerships agreed to (a) actively and vigorously market the Manufacturers' new vehicles; (b) use their best efforts to attain certain sales targets set forth by the Manufacturers; (c) conspicuously display at Dealership' facilities the Manufacturers' approved sales, service and parts signs and (d) send Dealerships' sales persons to any/all of Manufacturers' regularly scheduled sales and service meetings for the purpose of obtaining current Manufacturers' information and policies.

19.    Pursuant to the terms of the Dealership Agreements, the Manufacturers agreed, upon information and belief, to market their vehicles nationwide and locally within Northeastern Pennsylvania. The Manufacturers further granted authority to Dealerships to (a) sell and/or lease the Manufacturers' vehicles to consumers; (b) identify themselves as the Manufacturers' authorized dealerships; and (c) use the Manufacturers' logos/marks in the advertising, promotion, sale and servicing of the Manufacturers' vehicles and other products. Moreover, and upon information and belief, Manufacturers also granted authority to the Dealerships to engage in their

own independent advertising and promotion of the Manufacturers' vehicles, goods and services, subject to the Manufacturers' prior approval. Upon information and belief, the Dealership Agreements provided the Manufacturers with the right to revoke the Dealerships' status as authorized dealers of Manufacturers' vehicles if the Dealerships breached the provisions contained therein. Plaintiffs are currently not in possession of these Dealership Agreements and intend to obtain same through discovery.

20.    The Hazleton Auto Mall opened in or about November 2016. The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, used and advertised a uniform set of marketing tactics and aggressive sales pitches to induce consumers into purchasing and leasing new vehicles. Specifically, the Dealerships, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, advertised a "Set for Life Program" pursuant to which the Dealerships represented that all purchasers would receive powertrain/engine/transmission warranties, free oil and filter changes, free car washes, free loaner vehicles and free state inspections for as long as they owned their vehicles (hereinafter, the "Set for Life Program").

21.    The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, created brochures and signage advertising the Set for Life Program, which were emblazoned with the Manufacturers' internationally recognizable, trademarked logos. Dealerships and Owners, with the Manufacturers' prior knowledge, approval and/or ratification, also advertised the Set for Life Program on local radio and television and through social media. In so doing, Dealerships, Owners and Manufacturers intended to create the expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

22.    The Dealerships' sales personnel, with the Manufacturers' and Owners' prior knowledge, approval and/or ratification, also prominently displayed and strategically placed the brochures and signage detailing the Set for Life Program throughout the Dealerships' facilities in close physical proximity to the Manufacturers' internationally recognizable, trademarked logos. In so doing, Dealerships, Owners and Manufacturers intended to create the expectation among potential car purchasers that Manufacturers had guaranteed that the benefits specified therein would be provided.

23.    Defendants, Pierce and Armstead are well-known, retired professional football players. Pierce and Armstead, with the Manufacturers', Dealerships' and Defendant, Saporito's prior knowledge, approval and/or ratification, utilized their public notoriety by participating in several "meet and greet" appearances at the Dealerships' facilities. These "meet and greet" appearances were advertised in advance in local newspapers and on social media. During these appearances, Defendants, Pierce and Armstead extolled the virtues of the Manufacturers' vehicles in general and the benefits of the Set for Life Program in particular, for the intended purpose of inducing consumers to purchase and/or lease new vehicles from the Manufacturers through their authorized Dealerships.

24.    Soon after opening for business in or about November 2016, Dealerships, upon information and belief, began to experience financial difficulties. Specifically, Dealerships, with Owners' knowledge and consent, sold numerous Nissan, Hyundai and Kia vehicles SOT, and without paying NMAC or HCA for same. At all times material hereto, Manufacturers were aware of or, through the exercise of rudimentary due diligence should have been aware of Dealerships' deteriorating financial condition. Nevertheless, Manufacturers continued to expressly and/or impliedly authorize and/or ratify Dealerships' decision to advertise the Set for Life Program in the hope that it would generate additional sales of Manufacturers' vehicles and thereby enable

Dealerships to escape the financial hole which they had dug. At all times material hereto, Manufacturers knew or should have known that Dealerships, as a result of their deteriorating financial condition, could not possibly continue to represent that the Set for Life Program's benefits would be available to consumers for as long as they owned their vehicles.

25.    Hazleton Hyundai and Hazleton Kia went out of business in or about late September 2018, less than two years after opening. Hazleton Nissan went out of business in or about November 2018. Despite repeated demands from defrauded consumers, Manufacturers have refused and continue to refuse to provide the benefits specified in the Set for Life Program.

26.    Defendant, Manufacturers had intimate knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners due to the financial relationship between the parties, information that was not otherwise available to Plaintiffs and/or to the general public.

27.    Notwithstanding Defendant, Manufacturers' knowledge of the dire financial condition of the Defendant, Dealerships and Defendant, Owners, Defendant, Manufacturers permitted the Set for Life Program to continue.

## PLAINTIFFS' EXPERIENCES
### THE HAGENBAUGHS

28.    The Hagenbaughs purchased a new 2017 model year Nissan Rogue, VIN # KNMAT2MT4HP500743 from Defendant, Hazleton Nissan on or about May 4, 2017. Defendant, Hazleton Nissan and the Hagenbaughs signed an agreement which specified several of the benefits which were part of the Set for Life Program (hereinafter, the "Set for Life Agreement"). Defendant, Hazleton Nissan further provided brochures to the Hagenbaughs and represented that said brochures contained the full list of benefits under the Set for Life Program. Both the Set for Life Agreement and the related brochures stated that the benefits specified therein would be available

9

for as long as the Hagenbaughs owned their Nissan vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with Defendant, Nissan's internationally known, trademarked logo. Copies of the Hagenbaughs' Retail Sale Installment Contract, the signed Set for Life Agreement between the Hagenbaughs and Hazelton Nissan and the related Set for Life Program brochures are collectively attached hereto as Exhibit "A" and are incorporated herein.

29.    The Hagenbaughs reasonably relied upon Defendant, Nissan's conduct, actions and manifestations to the general public that Defendant, Nissan had granted Defendant, Hazleton Nissan the actual and/or apparent authority to obligate Defendant, Nissan to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Nissan was unable to do so.

30.    Defendant, Nissan's conduct, actions and manifestations in this regard include but are not limited to, the following: publicly advertising the Nissan brand on local radio stations, local television and on social media; representing Hazleton Nissan as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Nissan for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

31.    When Hazleton Nissan ceased operations at the Hazleton Auto Mall in November 2018, the Hagenbaughs subsequently demanded that Defendant, Nissan provide the benefits specified in the Set for Life Program. However, Defendant, Nissan refused, and continues to refuse to do so.

**THE LUBRECHTS**

32.    The Lubrechts purchased a new 2018 model year Hyundai Tucson wagon, VIN # KM8J3CA48JU741730 from Defendant, Hazleton Hyundai on or about June 28, 2018. Defendant, Hazleton Hyundai and the Lubrechts signed a Set for Life Agreement which specified several of the benefits contained in the Set for Life Program. Defendant, Hazleton Hyundai further provided brochures to the Lubrechts and represented that said brochures contained the full list of benefits under the Set for Life Program. The Set for Life Agreement and related brochures both stated that the benefits specified therein would be available for as long as the Lubrechts owned their Hyundai vehicle. Moreover, both the Set for Life Agreement and related brochures were emblazoned with Defendant, Hyundai's internationally known, trademarked logo.

33.    Hazleton Hyundai and the Lubrechts also executed a document, dated June 28, 2018, entitled **"WE OWE"**, which included the following representation:

**"LIFETIME WARRANTY, LIFETIME INSPECTION, LIFETIME LOANER VEHICLES, LIFETIME OIL CHANGES AT FACTORY RECOMMENDED INTERVALS AND LIFETIME CAR WASHES."**

The Set for Life Agreement, the related Set for Life Program Brochures, the document entitled **"WE OWE"** and other sales materials reflecting the Lubrechts' purchase are collectively attached hereto as Exhibit "B" and are incorporated herein.

34.    The Lubrechts reasonably relied upon Defendant, Hyundai's conduct, actions and manifestations to the general public that Defendant, Hyundai had granted Defendant, Hazleton Nissan the actual and/or apparent authority to obligate Defendant, Hyundai to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Hyundai was unable to do so.

35.    Defendant, Hyundai's manifestations in this regard include but are not limited to, the following: publicly advertising the Hyundai brand on local radio stations, local television and on social media; representing Hazleton Hyundai as its authorized dealer; authorizing and/or

11

otherwise ratifying the advertising campaign undertaken by Hazleton Hyundai for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on Set for Life Agreements and on signage and brochures advertising the Set for Life Program.

36.    When Hazleton Hyundai ceased operations at the Hazleton Auto Mall in late September 2018, the Lubrechts subsequently demanded that Defendant, Hyundai provide the benefits specified in the Set for Life Program. However, Defendant, Hyundai wrongfully refused, and continues to refuse to do so.

## THE HOMANKOS

37.    The Homankos purchased a new 2017 model year Kia Sorento, VIN # 5XYPKDA50HG337817 from Defendant, Hazleton Kia on or about August 21, 2017. Defendant, Hazleton Kia provided brochures to the Hagenbaughs and represented that said brochures contained the full list of benefits under the Set for Life Program.  The Set for Life Program brochures specifically stated that the benefits specified therein would be available for as long as the Homankos owned their Kia vehicle. Moreover, the Set for Life Program brochures were emblazoned with Defendant, Kia's internationally known, trademarked logo.  A true and correct copy of the Homankos Retail Installment Sale Contract and the Set for Life Program brochures are collectively attached hereto as Exhibit "C" and are incorporated herein.

38.    The Homankos reasonably relied upon Defendant, Kia's conduct, actions and manifestations to the general public that Defendant, Kia had granted Defendant, Hazleton Kia the actual and/or apparent authority to obligate Defendant, Kia to continue to provide the benefits specified in the Set for Life Program in the event that Hazleton Kia was unable to do so.

39.    Defendant, Kia's conduct, actions and manifestations in this regard include but are not limited to the following: publicly advertising the Kia brand on local radio stations, local television and on social media; representing Hazleton Kia as its authorized dealer; authorizing and/or otherwise ratifying the advertising campaign undertaken by Hazleton Kia for the Set for Life Program; and authorizing and/or otherwise ratifying the use of its trademarked and internationally known logo on signage and brochures advertising the Set for Life Program.

40.    When Hazleton Kia ceased operations at the Hazleton Auto Mall in late September 2018, the Homankos subsequently demanded that Defendant, Kia provide the benefits specified in the "Set for Life" program. However, Defendant, Kia wrongfully refused, and continues to refuse to do so.

## CLASS ALLEGATIONS

41.    This action is being brought by Plaintiffs as a Class Action pursuant to Pennsylvania Rules of Civil Procedure 1701 et seq., on Plaintiffs' own behalf and on behalf of a class of persons to which Plaintiffs belong as defined below:

42.    Members of Plaintiffs' Class are defined as follows:

a.    All individuals located within and/or residents of the Commonwealth of Pennsylvania, who purchased or leased automobiles at the Hazleton Auto Mall in Hazle Township, Pennsylvania from the Hazleton Nissan, Hazleton Hyundai and/or Hazleton Kia dealerships during the period of November 1, 2016 through November 30, 2018.

43.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) the Manufacturers and Dealerships and their subsidiaries, parents, successors, predecessors, and any entity in which the Manufacturers and Dealerships have a controlling interest and Manufacturers' and/or Dealerships' current or

13

former employees, officers and directors; (3) the Owners and their families; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims have been finally adjudicated on the merits or otherwise released; (6) Plaintiffs' counsel and Defendants' counsel; and (7) the legal representatives, successors and assigns of any such excluded persons.

44.    The exact number of Class members is currently unknown and unavailable to Plaintiffs, but individual joinder in this case is impracticable. The Class likely consists of at least two thousand individuals. Members of the Class can easily be identified through Dealerships' and/or Manufacturers' records.

45.    The claims of Plaintiffs as representative parties are typical of the claims of the Class, including, but not limited to the following:

      a.    As with all members of the Class, Plaintiffs were subject to and relied upon the misrepresentations, deceptive sales practices, advertising practices and policies of the Manufacturers, Dealerships and/or Owners in connection with the Set for Life Program;

      b.    As with all members of the Class, Plaintiffs were induced to purchase vehicles at the Hazleton Auto Mall by the benefits specified in the Set for Life Program;

      c.    As with all members of the Class, Plaintiffs have been harmed by similar or identical misconduct by the Manufacturers, Dealerships and/or Owners in that they were denied the benefits specified in the Set for Life Program;

      d.    Plaintiffs' injuries and/or damages are typical of other members of the Class.

46.    There are questions of law and fact common to the Class, including, but not limited to the following:

a.    Whether Plaintiffs and all members of the Class were offered the benefits specified in the Set for Life Program as an inducement upon which they relied, to their detriment, when they purchased and/or leased their vehicles from Dealerships;

b.    Whether Plaintiffs and all members of the Class reasonably relied upon the actions, conduct and/or manifestations of the Manufacturers that the Dealerships possessed the actual or apparent authority to represent and guarantee that the Manufacturers would provide the benefits specified in the Set for Life Program in the event the Dealerships were unable to do so;

c.    Whether Plaintiffs and all members of the Class have been refused the benefits specified in the Set for Life Program by the Manufacturers;

d.    Whether Manufacturers', Dealerships' and Owners' advertising and sales practices in connection with the Set for Life Program were deceptive, thereby violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, et seq; and

e.    Whether Manufacturers', Dealerships' and Owners' outrageous and/or unconscionable acts in connection with the Set for Life Program, as aforedescribed, warrants the award of punitive damages.

47.    The interests of the Class will be fairly and adequately asserted and protected by the representative parties and their counsel. First, Plaintiffs have no conflict of interest in the maintenance of the Class Action. Second, Plaintiffs' attorneys are experienced in handling and litigating fraud and consumer protection claims. Third, sufficient financial resources are available to assure that the interest of the Class will be protected.

48.    Adjudicating this controversy as a Class Action would be the fairest and most efficient means of resolution:

15

a.      Common questions of law and fact predominate over any issues involving only individual Class members.

b.      the size of the Class is not so great as to cause difficulties in the management of this action as a Class Action;

c.      prosecution of separate claims by individual members of the Class would most likely would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the Class which would confront the party opposing the Class with incompatible standards of conduct; (ii) adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

d.      to the undersigned's knowledge, there is currently no litigation which has been commenced by any members of the Class involving any of the same issues raised herein;

e.      this forum is appropriate for the litigation of the claims of the entire Class since Plaintiffs and the vast majority of the Class members reside in Luzerne County and since the causes of action and/or the transactions or occurrences giving rise to the causes of action raised herein occurred in Luzerne County;

f.      given the complexities of the issues raised and/or the expenses of litigation, the separate claims of individual Class members may be insufficient in amount to support separate actions; and

g.      it is likely that the amount which may be recovered by individual Class members may be so small in relation to the expense and effort of administering the action as not to justify a Class Action.

49.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class Action.

## COUNT I

### (Unfair Trade Practices and Consumer Protection Law)
### 73 P.S. §§ 201-1, *et seq.*)
### (vs. All Defendants)

50.     Plaintiffs incorporate herein by reference Paragraphs 1 through 49 inclusive, of this Complaint as if the same were more fully set forth herein at length.

51.     At all relevant times hereto, there was in effect the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Sec. 201-1, <u>et seq.</u> ("**UTPCPL**")

52.     The vehicles purchased by Plaintiffs and the other Class members purchased vehicles from Defendants "primarily for personal, family or household purposes" within the meaning of Section 201-9.2 of the UTPCPL.

53.     Section 201-2(4) of the **UTPCPL** defines **"UNFAIR METHODS OF COMPETITION"** and **"UNFAIR OR DECEPTIVE ACTS OR PRACTICES"** in pertinent part, as follows:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

(ix) Advertising goods or services with intent not to sell them as advertised;

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xiv) Failing to comply with the terms or any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

<u>See</u>, 73 P.S. Section 201-2(4)(i), (ii), (iii), (v), (vii), (ix), (x), (xiv) and (xxi).


54.    Defendants have violated each of the **UTPCPL's** provisions referenced in Paragraph 51 by making the false and misleading representations described herein in connection with the Set for Life Program. As a result of Defendants' false and misleading representations, Plaintiffs and members of the Class have suffered "ascertainable losses" as defined by the **UTPCPL** in that they have been denied the benefits specified and promised in the Set for Life Program.

55.    At all relevant times hereto, there was in effect Chapter 301 of the Pennsylvania Code, entitled **"AUTOMOTIVE INDUSTRY TRADE PRACTICES"** (**"AITP"**). The provisions of Chapter 301 of the **AITP** are issued under Section 3.1, 73 P.S. Section 201.3.1, of the **UTPCPL.**

56.    Sections 301.1 and 301.2 of the **AITP** provide in relevant part, as follows:

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

*Advertisement*—An oral, written or graphic statement which offers for sale a particular motor vehicle or motor vehicle goods and services or which indicates the availability of a motor vehicle or motor vehicle goods and services, including a statement or representations made in a newspaper, periodical, pamphlet, circular, other publication or on radio or television; contained in a notice, handbill, sign, billboard, poster, bill, catalog or letter; or printed on or contained in a tag or label which is attached to merchandise.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

With respect to an advertisement or sales presentation offering or making available for sale a new or used motor vehicle or maintenance service or repair on a new or used motor vehicle, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

(3)     The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:

(i)     Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.

(vi)     Failing to make delivery of the advertised goods and services within the promised delivery period unless the failure is caused by reasons beyond the control of the advertiser.

(4)     The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

(5)     The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another

(6)     The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

(18)     The advertising by a motor vehicle manufacturer, dealer or repair shop of a sale or promotion in connection with the sale of a motor vehicle or motor vehicle maintenance or repair services unless the advertisement clearly and conspicuously discloses the expiration date, if any, and other conditions of the sale or promotion,

including but not limited to whether the supply of vehicles or other sale goods is limited and, if so, in what manner.

57.     Defendants have violated each of the **AITP's** provisions referenced in Paragraphs 54-55 inclusive, by making the false and misleading representations described herein in connection with the Set for Life Program.

58.     Plaintiff and Class members have suffered injuries caused by Defendants' false and misleading representations because they would not have purchased the vehicles if they knew the truth and/or would have purchased them on different terms.

## COUNT II

### (Breach of Contract)
### vs. All Defendants

59.     Plaintiffs incorporate herein by reference Paragraphs 1 through 58 inclusive, of this Complaint as if the same were more fully set forth herein at length.

60.     Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships. Defendants further represented that the specified benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Plaintiffs and Class members relied upon said representations as an inducement for their agreement to purchase vehicles from Defendant, Dealerships.

61.     Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were unable to do so.

62.     Defendants, Manufacturers, Dealerships and Owners were and remain contractually bound to provide the benefits specified in the Set for Life Program to Plaintiffs and Class members. Defendants, Manufacturers and Owners were and remain contractually bound to continue to provide these benefits now that Dealerships have ceased business operations.

63.     Despite Plaintiffs' and Class members' repeated demands, Defendants, Manufacturers and Owners have wrongfully refused to provide the benefits specified in the Set for Life Program. As a result, Plaintiffs and Class members have been denied the benefit of their bargain.

64.     Defendants' refusal, as described above, constitutes a breach of their contracts with Plaintiffs and Class members.

65.     As a direct and proximate result of said breach, Plaintiffs and Class members have suffered and continue to suffer damages, for which they are legally entitled to recover.

## COUNT III

### (Unjust Enrichment)
### vs. All Defendants

66.     Plaintiffs incorporate herein by reference Paragraphs 1 through 65 inclusive, of this Complaint as if the same were more fully set forth herein at length.

67.     This Count is being plead in the alternative to the preceding Count II for breach of contract.

68.     Defendants, through their wrongful and unlawful conduct as described above, have reaped enormous, ill-gotten profits from the sale of the Manufacturers' vehicles to Plaintiffs and Class members. Defendants' profits would have been reduced, but for their wrongful and unlawful refusal to provide Plaintiffs and Class members with the benefits specified in the Set for Life Program.

69.    Accordingly, Defendants have been unjustly enriched by their wrongful and unlawful conduct. Defendants should not be allowed to retain the proceeds from the benefits conferred upon them by Plaintiffs and Class members.

70.    In equity and good conscience, it would be unjust and inequitable to permit Defendants to enrich themselves at Plaintiffs' and Class members' expense.

71.    Defendants must therefore disgorge their unjustly acquired profits and other monetary benefits resulting from their unlawful conduct and provide restitution to Plaintiffs and Class members.

## COUNT IV

### (Fraud)
### vs. All Defendants

72.    Plaintiffs incorporate herein by reference Paragraphs 1 through 71 inclusive, of this Complaint as if the same were more fully set forth herein at length.

73.    Defendants represented that they would provide Plaintiffs and Class members with the benefits specified in the Set for Life Program if they agreed to purchase vehicles from Defendant, Dealerships. Defendants further represented that the benefits in the Set for Life Program would be provided for as long as Plaintiffs and Class members owned their vehicles. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

74.    Defendant, Manufacturers further represented to Plaintiffs and Class members, through Manufacturers' conduct, actions and manifestations to the general public, that Dealerships' possessed the actual and/or apparent authority to obligate Manufacturers to continue to provide the benefits specified in the Set for Life Program in the event that Dealerships were

unable to do so. Said representations were material and were relied upon by Plaintiffs and Class members as an inducement for their decision to purchase vehicles from Defendant, Dealerships.

75.     Defendants knew, or should have known, that their representations were false when made. Plaintiffs and Class members relied upon Defendants' material, false representations to their great detriment when they decided to purchase vehicles from Defendant, Dealerships.

76.     In addition to their affirmative misrepresentations as afore-described, Defendant, Manufacturers had access to information concerning the dire financial condition of Defendants, Dealerships and Owners which Defendant, Manufacturers concealed from Plaintiffs and the general public.

77.     Due to their knowledge of the failing financial condition of the Dealerships and Owners, Defendant, Manufacturers knew that the promises made to Plaintiffs and to the general public in the Set for Life Program would not be honored.

78.     Despite the foregoing, Defendant, Manufacturers allowed Defendants, Dealerships and Owners to continue to make the promises in the Set for Life Program after it was apparent to Defendant, Manufacturers that said promises would not be honored.

79.     As a direct and proximate result of Defendants' material, fraudulent representations, Plaintiffs and Class members have suffered and will continue to suffer damages, for which they are legally entitled to recover.

80.     Defendants' conduct, as described above, was wanton, willful, malicious and/or grossly reckless, thereby justifying the imposition of punitive damages against Defendants.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and all on behalf of all others similarly situated, seek judgment against the Defendants as follows:

a.  An order certifying the Class under Rule 1707 of the Pennsylvania Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b.  An award of three times the actual and monetary damages sustained by Plaintiffs and the Class members, pursuant to the provisions of the **UTPCPL** and as set forth in Count I of this Complaint;

c.  An award of actual and compensatory damages, pursuant to Count II of this Complaint;

d.  An award of restitution in the amount of actual and compensatory damages, pursuant to Count III of this Complaint;

e.  An award of punitive damages, pursuant to Count IV of this Complaint;

f.  An award of prejudgment and post-judgment interest on all amounts awarded;

g.  An award of attorneys' fees, pursuant to Counts I and III of this Complaint

h.  An award of expenses and costs of suit; and

i.  An award of such other relief as the Court may deem just and proper.

**The damages sought by Plaintiffs, individually and on behalf of all others similarly situated, exceed the jurisdictional arbitration limits to be proven at trial.**

Plaintiff's demand a Jury Trial pursuant to F.R.C.P. 38

*Signatures submitted on following page.*

Respectfully submitted,

THE SLUSSER LAW FIRM

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.


By:    s/ *CHRISTOPHER B. SLUSSER, ESQUIRE*
       CHRISTOPHER B. SLUSSER, ESQUIRE
       Supr. ID #78609
       JOHN M. SOLT, ESQUIRE
       Supr. ID #89146
       JOSEPH R. BARANKO, JR., ESQUIRE
       Supr. ID # 39124
       JEFFREY A. ROCKMAN, ESQUIRE
       Supr. ID # 47463
       JOHN LUCAS, ESQUIRE
       Supr. ID # 53503

       1620 N. Church St., Ste. 1
       Hazleton, PA 18202
       Telephone: 570-453-0463

       Attorneys for Plaintiffs