## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID HAGENBAUGH, *et al*.,** | : | |
| **individually and on behalf of all** | | |
| **others similarly situated,** | : | |
| | | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-1838** |
| | | |
| **v.** | : | **(JUDGE MANNION)** |
| | | |
| **NISSAN NORTH AMERICA d/b/a** | : | |
| **NISSAN USA, *et al*.,** | | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

### I.   FACTUAL BACKGROUND

On November 20, 2020, Plaintiffs filed an amended complaint with attached Exhibits. (Doc. 19). Plaintiffs are three pairs of individuals (two married couples and one father and daughter) residing in Luzerne County, Pennsylvania. (Doc. 19, ¶¶ 1-3). Defendants are three auto manufacturers incorporated and headquartered in other states, three limited liability company auto dealerships incorporated in Pennsylvania, and two remaining individual dealership owners residing in other states.[1] (Id., ¶¶ 4-12).

---

[1] One of the dealership owners, Defendant Antonio D. Pierce, was dismissed from this action with prejudice pursuant to a stipulation. (Doc. 76).

Defendant manufacturers are Hyundai Motor America, ("HYUNDAI"), Kia Motors America, ("KIA"), and Nissan North America, Inc., ("NISSAN").

According to the amended complaint, Defendant dealerships, with approval of Defendant manufacturers and owners, advertised a "Set for Life Program" which represented that vehicle purchasers would receive certain benefits, including engine warranties, oil and filter changes, car washes, loaner vehicles, and state inspections, free for the duration of their ownership of the vehicle. (Id., ¶ 20). Amid financial difficulties, Defendant dealerships sold numerous vehicles without repaying the financing for those vehicles to certain manufacturer-affiliated financing entities, while still advertising the Set for Life Program benefits to purchasers. (Id., ¶¶ 16, 24). The Defendant dealerships went out of business in November of 2018, about two years after opening. (Id., ¶ 25). Since the dealership closures, Defendant manufacturers have refused customers' demands to provide them with the Set for Life Program benefits. (Id., ¶¶ 25-27).

Each pair of Plaintiffs purchased a vehicle from one of the Defendant dealerships and each either signed an agreement with the dealership upon purchase specifying the benefits of the Set for Life Program or was provided a brochure upon purchase specifying the benefits. (Id., ¶¶ 28, 32, 37). After the dealerships closed, Plaintiffs demanded that Defendant manufacturers

continue to provide the Set for Life Program benefits on behalf of the closed dealerships they had authorized, and Defendant manufacturers refused. (Id., ¶¶ 31, 36, 40).

## II.    PROCEDURAL BACKGROUND

Plaintiffs, on behalf of those similarly situated, brought this putative class action against Defendants in the Luzerne County Court. (Doc. 1-2). Included among Plaintiffs' putative class are "[a]ll individuals located within and/or residents of the Commonwealth of Pennsylvania, who purchased or leased automobiles" at the Defendant dealerships between November 1, 2016, and November 30, 2018. (Id., ¶ 42a.) In their complaint, Plaintiffs raise four causes of action and allege violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. §201-1, *et seq*.), (Count I), breach of contract, (Count II), unjust enrichment, (Count III), and fraud, (Count IV). (Doc. 1-2, ¶¶ 54, 64, 69, 74-80). With respect to Defendant manufacturers, Plaintiffs allege that they are liable under agency theories, contract, and fraud for misrepresenting that they would guarantee the benefits in the Set for Life Program if Defendant dealerships failed to honor them.

Defendants removed this case on October 7, 2020, averring that this court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) or, alternatively, jurisdiction under §1332(d), i.e., the Class Action Fairness Act of 2005 ("CAFA"). (Doc. 1-2, ¶¶1-2, 32-34). On November 3, 2020, Plaintiffs filed a motion to remand this case back to state court, (Doc. 6), which Plaintiffs ultimately withdrew on June 2, 2022, (Doc. 87), after the court had ordered the parties to conduct additional discovery regarding the citizenship of the Defendant Dealership for jurisdictional purposes, (Doc. 86).[2]

On January 4, 2021, two Defendants who manufactured some of the vehicles at issue, HYUNDAI and KIA, filed a motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6), (Doc. 43). Also, on January 4, 2021, NISSAN and HYUNDAI filed a motion to compel arbitration and stay litigation, (Doc. 44), pursuant to Plaintiffs' written arbitration agreements and

---

[2] Even though the Plaintiffs withdrew their remand motion, the court must still have subject matter jurisdiction to hear this case. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995) ("[Section 1447(c)] allows and indeed compels a district court to address the question of jurisdiction, even if the parties do not raise the issue."). Having reviewed the motion to remand and accompanying filings, and the Defendants' supplemental briefing on the jurisdictional issue, (Doc. 89), the court is satisfied that it has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), (d).

the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1, *et seq.*[3] NISSAN and HYUNDAI attached Exhibits to their motion to compel. Defendant manufacturers filed their briefs in support of both motions on January 15, 2021. (Docs. 52 & 53). Plaintiffs filed their briefs in opposition to Defendant manufacturers' motions on February 8, 2021, with Exhibits attached. (Docs. 61 & 62). On March 4, 2021, Defendant manufacturers filed their reply briefs in support of their motions. (Docs. 69 & 70).

For the reasons that follow, NISSAN and HYUNDAI's motion to compel arbitration and stay litigation will be **GRANTED**. The court will **SEVER** the proceedings in this case as to all claims against NISSAN and HYUNDAI pending arbitration pursuant to §3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §3. This case is not stayed and will **PROCEED** with respect to the claims of the Plaintiffs who bought Kia vehicles asserted against Defendant manufacturer KIA. In light of the severance, KIA and HYUNDAI's joint motion to dismiss Plaintiffs' amended complaint (Doc. 45) will be **DISMISSED**

---

[3] The third of the Defendant manufacturers, KIA, did not join in the motion to compel arbitration since the sales contract regarding the two Plaintiffs who bought Kia vehicles did not contain an arbitration agreement.

without prejudice to filing separate motions and briefs in the appropriate forum.[4]

## III.   STANDARD

"When addressing a motion to compel arbitration, a court must first determine which standard of review to apply; *to wit*: either the motion to dismiss standard under Federal Rule of Civil Procedure 12, or the motion for summary judgment standard under Rule 56." Stephenson v. AT&T Services, Inc., 2021 WL 3603322, *2 (E.D. Pa. Aug. 12, 2021) (citing Guidotti v. Legal Helpers Debt Resol., LLC., 716 F.3d 764, 771-72 (3d Cir. 2013)). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* (quoting Guidotti, 716 F.3d at 773-74) (internal citations omitted). "Where arbitrability is not apparent on the face of the complaint, the issue should be judged under the Rule 56

---

[4]"[T]he plain language of §3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Torres v. CleanNet, U.S.A., Inc., 90 F.Supp.3d 369, 371 n. 1 (E.D. Pa. 2015) (citing Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004)). "[T]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Id.*

standard." *Id.* (citing Guidotti, 716 F.3d at 773-74; Griffin v. Credit One Fin., 2015 WL 6550618, at *2 (E.D. Pa. Oct. 29, 2015)).

In the instant case, the amended complaint and its attachments, (Docs. 19-1 & 19-2), show, on their face, that there is the existence of arbitration agreements with respect to some of the Plaintiffs. Thus, the Rule 12(b)(6) motion to dismiss standard will be applied in reviewing NISSAN and HYUNDAI's motion to compel arbitration and in determining the validity and enforceability of the agreements "without discovery's delay." [5] Guidotti, 716 F.3d at 776; *see also* Sanford v. Bracewell & Guiliani, LLP, 618 Fed.Appx. 114, 117-18 (3d Cir. 2015) ("Because the affirmative defense of arbitrability was therefore apparent from the face of the complaint and the documents relied upon therein, the motion should have been reviewed under Rule 12(b)(6)[.]") (internal quotations and citation omitted).

---

[5]Plaintiffs claim they need discovery, in part, "on the issue of whether the parties agreed to arbitrate disputes" and on the issue of "whether [they] were deceived about any of the provisions contained in the sales agreements." However, there is no dispute as to the existence of the agreements and the agreement of some Plaintiffs to arbitrate. Since Plaintiffs submitted the sales contracts with their amended complaint, (Docs. 19-1 & 19-2), as in Stephenson, 2021 WL 3603322, at *2 n.2, the court denies Plaintiffs' request "to conduct limited discovery on the question of arbitrability and finds that there is a sufficient factual record regarding arbitrability and, therefore, no additional discovery is necessary."

Thus, the standard under Rule 12(b)(6) will be applied in this case to the motion to compel arbitration which provides that dismissal is warranted if, "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests." Hite v. Lush Internet, Inc., 244 F.Supp.3d 444, 449 (D. N.J. 2017) (citation omitted). "A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Id.* (citing Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "Although a court must accept as true all factual allegations in a complaint, that tenet is inapplicable to legal conclusions, and [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citation omitted).

## IV. DISCUSSION

Stated simply, and in viewing the factual allegations of the amended complaint in the light most favorable to the Plaintiffs, as the court must, *see* Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,* 716 F.3d 764, 772–74 (3d Cir. 2013), Plaintiffs allege they are owed lifetime warranties and services

regarding the vehicles they purchased from the three Defendant dealerships that comprised the Hazleton Auto Mall. The Defendant dealerships are now closed, and the "Set for Life Agreements" cannot be enforced against them. As such, Plaintiffs have also sued the dealerships' owners and the three Defendant manufacturers. Hagenbaugh Plaintiffs purchased a Nissan vehicle and Lubrecht Plaintiffs purchased a Hyundai vehicle. There is no genuine dispute that the sales contracts of the stated Plaintiffs who bought Nissan and Hyundai vehicles contained arbitration agreements that require disputes to be resolved in an arbitration or small claims court. Nor is there any dispute that the stated Plaintiffs signed the sales contracts. In fact, Plaintiffs attached the contracts to their amended complaint, (Docs. 19-1 & 19-2), and referenced them in their pleading to support their breach of contract claim. (*See also* Decl. of Bianca Roberts, Doc. 44-1 (Hagenbaugh contract); Doc. 19-2, (Lubrecht contract)). Even though the court is utilizing the motion to dismiss standard and generally may not consider matters outside of the pleadings, here, the sale contracts can be considered since a "document integral to or explicitly relied upon in the complaint may be considered." In re Burlington Coat Factory Sec. Litig.*,* 114 F.3d 1410, 1426 (3d Cir. 1997).

Roberts avers in her Declaration, (Doc. 44-1 at 2), that when Hagenbaugh Plaintiffs bought their Nissan vehicle, on May 4, 2017, they signed a "Retail Installment Sale Contract – Simple Finance Charge (with Arbitration Provision)," (Doc. 44-2).

The Hagenbaugh contract provided: "**Agreement to Arbitrate**: By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by court action." (Doc. 44-2, at 2). The Lubrecht Contract similarly provided: "BUYER ACKNOWLEDGES THAT IF THIS BOX IS CHECKED, THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE." (Doc. 19-2 at 3). The applicable box was checked and Lubrecht then signed the agreement. Paragraph 12 of Lubrechts' contract also detailed the arbitration clause. (Doc. 19-2 at 4). These Plaintiffs also acknowledged reading and accepting their contracts as well as the arbitration agreements.

Specifically, the arbitration agreement which was contained in the contract signed by the Hagenbaugh Plaintiffs plainly stated:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting

transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. 44-2 at 7). Similarly, the arbitration agreement which was contained in the contract signed by the Lubrecht Plaintiffs clearly stated:

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. 19-2 at 4). Based on the arbitration agreements, NISSAN and HYUNDAI move the court to stay this case as against them and to compel Plaintiffs to arbitrate their claims against them pursuant to the agreements.

"The FAA 'establishes a strong federal policy in favor of compelling arbitration over litigation.'" Stephenson, 2021 WL 3603322, at *3 (quoting Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000)). Under §2 of the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Hite, 244 F.Supp.3d at 449-50 (citing 9 U.S.C. §2); Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010). "Arbitration is 'strictly a matter of contract,'"

- 11 -

and only if a party has agreed to arbitrate, will the court be authorized to mandate that he do so. Sanford, 618 Fed.Appx. at 117 (citing Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999)).

> As the court in Stephenson explained:
>
> > [9 U.S.C. §2] "reflects the fundamental principle that arbitration is a matter of contract." Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Further, §2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Id. (internal citations omitted). A "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. In hearing such a petition, the court "must resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25).

2021 WL 3603322, at *3. "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is a[] [valid] agreement to arbitrate and[,] [if so,] (2) the dispute at issue falls within the scope of that agreement." Hite, 244 F.Supp.3d at 450 (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009)). "Only after a court finds that an agreement to arbitrate claims exists and covers the parties' dispute may it compel arbitration." Id. (citing 9 U.S.C. §4).

As to the first question, "[i]n determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract

formation." <u>Stephenson</u>, 2021 WL 3603322, at *3 (citing <u>Kirleis v. Dickie,</u> <u>McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 160 (3d Cir. 2009)). "Under Pennsylvania law, 'a contract is formed when there is an offer, an acceptance of that offer and an exchange of consideration.'" *Id*. (quoting <u>Yocca v.</u> <u>Pittsburgh Steelers Sports, Inc.</u>, 578 Pa. 479, 494 n.21 (Pa. 2004)).

Here, the arbitration agreements signed by the Hagenbaugh and Lubrecht Plaintiffs, (Docs. 44-2 & 19-2), are in writing and indicate that they understood the terms of the contracts and, had a clear intent to arbitrate all disputes and claims since the contracts plainly and conspicuously indicated that they are governed by the FAA. *See id*. at *4 ("An offer must be intentional, definite in its terms and communicated[.]") (quoting <u>Morosetti v.</u> <u>Louisiana Land & Expl. Co.</u>, 522 Pa. 492, 494 (Pa. 1989)); *see also id*. at *7 (holding "mutual promises to arbitrate constitute sufficient consideration."). As such, the court finds that the arbitration agreements are enforceable contracts under Pennsylvania law since "(1) an offer was communicated to Plaintiff[s], (2) Plaintiff[s] accepted that offer, and (3) the Arbitration Agreement[s] [are] supported by consideration." *Id*. at *4.

Next, the court finds that Plaintiffs' claims against NISSAN and HYUNDAI are within the scope of the arbitration agreements. As NISSAN and HYUNDAI explain in their brief:

- 13 -

> [Plaintiffs] claim they bought their vehicles because they were promised lifetime warranties and services they never received. *See* Am. Compl. ¶¶ 50–80. That claim clearly "arises out of or relates to" their purchase agreements or a "resulting transaction or relationship," including "any such relationship with third parties who do not sign this contract . . . ." Roberts Decl., [Doc. 44-2] at 6 (Hagenbaugh Contract); Am. Compl., Ex. B [Doc. 19-2] at 3 (Lubrecht Contract) (similar). That is especially true here, as Plaintiffs seek benefits they were allegedly promised in exchange for buying their vehicles. *See* Abrams v. Chesapeake Energy Corp., 2017 WL 6541511, at *6 (M.D. Pa. Dec. 21, 2017) (compelling arbitration because the claims related to amounts owed under contract containing arbitration agreement). Plaintiffs' claims also relate to their alleged relationship with NISSAN and HYUNDAI, which would not exist if they had not agreed to purchase Nissan- and Hyundai-branded vehicles under these contracts. It follows that their claims against NISSAN and HYUNDAI are arbitrable.

(Doc. 52 at 13-14). Moreover, the arbitrator will decide if the Plaintiffs' claims against NISSAN and HYUNDAI are within the scope of the agreements to arbitrate. In fact, as indicated above, the contracts Plaintiffs signed provided that a dispute about whether a claim was within the scope of the agreement was an issue to be decided by arbitration. *See* Rent-A-Center W., Inc., 561 U.S. at 68-69.

Additionally, Plaintiffs point out that NISSAN and HYUNDAI were not signatories to the agreements. No doubt that Hagenbaugh and Lubrecht Plaintiffs were signatories to the agreements, but NISSAN and HYUNDAI were not. Plaintiffs argue that NISSAN and HYUNDAI cannot enforce the agreements to arbitrate because they are not signatories to the sale

- 14 -

contracts. Thus, Plaintiffs contend that the presumption of arbitrability does not apply here, and they cite to Griswold v. Coventry First, LLC, 762 F.3d 264 (3d Cir. 2014). In response, NISSAN and HYUNDAI contend that equitable estoppel allows them as non-signatories to enforce the arbitration agreements against Plaintiffs.

In Torres, 90 F.Supp.3d at 379, the court explained this theory of equitable estoppel as follows:

> A non-signatory to a contract may bind a signatory to arbitrate a dispute when "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (internal quotation marks omitted). "In the wake of Arthur Andersen ... we must expressly consider whether the relevant state contract law recognizes the particular principle as a ground for enforcing contracts [by or] against third parties." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted). Pennsylvania law embraces the theory of equitable estoppel. Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014) (citing Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa. Super. Ct. 2006)).

Thus, "equitable estoppel is a viable theory that enables a non-signatory [such as NISSAN and HYUNDAI] to compel a signatory [i.e., Hagenbaugh and Lubrecht Plaintiffs] to arbitrate." Id.; see also Sanford, 618 Fed.Appx. at 118 ("Under the FAA, arbitration provisions may be enforced against non-signatories under the doctrine of equitable estoppel if the

relevant state contract law recognizes [that principle] as a ground for enforcing contracts against third parties.") (internal quotations and citation omitted).

"Thus, in order for equitable estoppel to apply, a non-signatory must establish that: (1) a close relationship exists between the entities involved; and (2) the claims against it are 'intimately founded in and intertwined with the underlying contractual obligations.'" *Id*. (citing <u>Griswold</u>, 762 F.3d at 272).

NISSAN and HYUNDAI contend that Plaintiffs' claims against them are intimately founded in and intertwined with the sale contracts that contain the arbitration agreements since Plaintiffs claim that NISSAN and HYUNDAI, along with the other Defendants, breached these contracts. (citing Doc. 19, ¶¶ 59–65). "Claims are intertwined with an arbitration agreement when the signatory's claims rely on the terms of the agreement or assume the existence of, arise out of, or relate directly to, the written agreement." *Id*. (internal quotations and citations omitted). Here, the court finds that Plaintiffs' breach of contract claims against NISSAN and HYUNDAI, which rely upon the benefits of the contracts and the Set for Life program, are "founded in and intertwined with" the obligations of the sale contracts which had the arbitration clauses. Plaintiffs plainly rely upon the terms of the sale contracts to allege that NISSAN and HYUNDAI are liable to them for breach the terms.

As NISSAN and HYUNDAI point out, (Doc. 52 at 18), it would be inequitable to allow Plaintiffs to "invoke the [sales] contracts against the Manufacturers [with respect to their breach of contract claim] and then complain when the Manufacturers invoke those same contracts against them." *See* Sanford, 618 Fed.Appx. at 118 (holding that "[an] attempt to 'claim the benefit of the contract and simultaneously avoid its burdens' is precisely the situation the doctrine of equitable estoppel seeks to prevent.") (citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir. 2001)).

Additionally, as NISSAN and HYUNDAI point out in their brief:

Plaintiffs lump the Dealerships and Manufacturers together, claiming that "Defendants" collectively committed all of the supposed wrongdoing. *See, e.g.*, Am. Compl. ¶ 54 (describing "Defendants' false and misleading representations"); *id*. ¶ 60 ("Defendants represented that they would provide . . . the benefits specified in the Set for Life Program"); *id*. ¶ 68 ("Defendants . . . reaped . . . ill-gotten profits"). Allegations of "collective wrongdoing" are enough in and of themselves to trigger the equitable estoppel doctrine. *See* Noye, 765 F.App'x at 747 (finding a close nexus where complaint referred to signatories and nonsignatories interchangeably); Colon v. Conchetta, Inc., 2017 WL 2572517, at *6 (E.D. Pa. June 14, 2017) ("[I]t would be completely inequitable to disallow the non-signatories from compelling arbitration in light of [plaintiff's] allegations of collective wrongdoing"); Caparra v. Maggiano's Inc., 2015 WL 5144030, at *8 (E.D. Pa. Sept. 1, 2015) (applying equitable estoppel because claims against parties and nonparties were "indistinguishable as they stem from the same incident").

- 17 -

(Doc. 52 at 16). Thus, the court finds that equitable estoppel allows NISSAN and HYUNDAI to enforce the arbitration agreements with respect to all of Plaintiffs' claims against them. *See* Colon v. Conchetta, Inc., 2017 WL 2572517, at *6 (holding that "[plaintiff's] allegations of substantially interdependent and concerted misconduct dictate that all of the Defendants are covered under the arbitration agreement pursuant to the equitable estoppel doctrine."); Torres, 90 F.Supp.3d at 381 (holding that since "[a]ll of the claims in the Complaint stem from the franchisor/franchisee relationship established by the Franchise Agreement and thus are intimately founded in and intertwined with the Franchise Agreement," "equitable estoppel empowers [non-signatory] Defendants to enforce the arbitration agreement."); s*ee also* Sanford, 618 Fed.Appx. at 118-19 (since "[Plaintiffs] elected to proceed under a claim for breach of the [sale contracts], [they are] bound by [their] terms, including the arbitration provision," and "[p]rinciples of equitable estoppel therefore mandate arbitration of [their] claims[.]).

Since the court has found that enforceable agreements to arbitrate exist as to the Defendants, including non-signatory manufacturers NISSAN and HYUNDAI, the court must determine whether Plaintiffs' claims against NISSAN and HYUNDAI are within the scope of the arbitration agreements.

The arbitration clauses in the sale contracts require arbitration of "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute)" shall be resolved by binding arbitration. As NISSAN and HYUNDAI point out, (Doc. 69 at 16), in their amended complaint, "Plaintiffs take issue not only with the Dealerships' alleged pre-contractual promises but also with the Manufacturers' post-contractual refusal to fulfill those alleged promises." (citing Doc. 19, ¶31, "When Hazleton Nissan ceased operations . . ., the Hagenbaughs subsequently demanded that [NISSAN] provide the benefits specified in the Set for Life Program. [NISSAN] refused, and continues to refuse to do so."; Doc. 19, ¶36, similar allegations as to HYUNDAI)). It is also clear that Plaintiffs' claims against NISSAN and HYUNDAI relate to matters in the sale contracts which contain the arbitration clauses. Further, the arbitration agreements cover broad claims, including claims that "arise[] out of" or "relate[] to" the "purchase" or "relationship" with the Dealerships or with any "third parties who do not sign this contract," such as NISSAN and HYUNDAI. Thus, the court finds that

Plaintiffs' claims against NISSAN and HYUNDAI fall squarely within the scope of the arbitration agreements.[6]

Moreover, under the FAA, the court must "interpret the contract as written," Henry Schein, Inc. v. Archer and White Sales, Inc.,139 S. Ct. 524, 529 (2019), and "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract," and "a court possesses no power to decide the arbitrability issue." *Id*. As the court in Robertson v. Enbridge (U.S.) Inc., 2020 WL 5754214, at *4 (W.D. Pa. Jul. 31, 2020), adopted by 2020 WL 5702419, (W.D. Pa. Sept. 24, 2020), found, "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." (citing, in part, DeAngelis v. Icon Entertainm't Grp., 364 F. Supp.3d 787,797 (S.D. Ohio 2019) ("Whether a nonsignatory can enforce

---

[6]Since the court finds that equitable estoppel principles require the arbitration of Plaintiffs' claims against NISSAN and HYUNDAI, the court need not address Defendants' alternate argument that Plaintiffs are also estopped from avoiding the arbitration clause under third-party beneficiary principles. *See* Johnson v. Pa. Nat'l Ins. Cos., 527 Pa. 504, 594 A.2d 296, 298 (1991); E.I. DuPont, 269 F.3d at 195. Nor does the court need to address NISSAN's contention that it can also enforce the Hagenbaughs' arbitration agreement "because it extends to any 'assigns' of the contracts, [ ], and because the relevant Dealership assigned certain rights under the Hagenbaughs' contract to NISSAN's wholly owned subsidiary." (citing Doc. 44-1).

the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant.") (string citations omitted).

In short, since the arbitration agreements in the instant case delegated issues of arbitrability to an arbitrator, the court finds that the issue of whether Plaintiffs must arbitrate their claims against the two non-signatory defendants NISSAN and HYUNDAI must be decided by an arbitrator. *See id*. at *5 (holding that "[i]n light of <u>Henry Schein</u> and the clear language of the Arbitration Agreements, whether [defendant] may enforce the Arbitration Agreements against Plaintiff is a question for the arbitrator.").

Finally, "[b]ecause [] valid arbitration agreement[s] exist[] as to the aforementioned [Plaintiffs] and covers the[ir] claims [against defendants NISSAN and HYUNDAI], [the court] has] no choice but to grant a motion to compel arbitration of their claims." <u>O'Quinn v. TransCanada USA Services, Inc.</u>, 469 F.Supp.3d 591, 603 (S.D. W.Va. 2020) (citation omitted). The court also finds it appropriate to sever Plaintiffs' claims against NISSAN and HYUNDAI, as opposed to staying this entire case. "Courts have wide discretion in determining when severance is appropriate." *Id.* (citations omitted). "In determining whether severance is appropriate, courts look to factors such as, whether severance would facilitate settlement or judicial economy ... the convenience of the parties, avoiding prejudice, promoting

expedition and economy, and the separability of law and logic." *Id*. (citations omitted). Here, the court finds that severing and only staying the claims that Hagenbaugh and Lubrecht Plaintiffs have against defendants NISSAN and HYUNDAI is "in the interests of justice, judicial economy, and most fair." *See id*. Plaintiffs who bought Kia vehicles and have claims against KIA are not subject to an arbitration agreement and their claims are not stayed and will proceed.

## V.   CONCLUSION

Based on the foregoing, the court will **GRANT** the motion to compel Hagenbaugh and Lubrecht Plaintiffs to comply with their arbitration agreements filed by NISSAN and HYUNDAI, **(Doc. 44)**, and the court will **SEVER** and **STAY** the litigation only with respect to the claims against NISSAN and HYUNDAI. *See* Colon v. Conchetta, Inc., 2017 WL 2572517, at *7; O'Quinn, *supra*. The claims of Plaintiffs against KIA are not stayed and will **PROCEED.** The joint motion to dismiss Plaintiffs' amended complaint, (Doc. 19), filed by HYUNDAI and KIA, **(Doc. 43)**, will be **DISMISSED without prejudice** with both parties permitted to file a separate motion to dismiss, if it so chooses, in the appropriate forum. An appropriate Order will follow.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 23, 2023**
20-1838-02

- 23 -