UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID HAGENBAUGH, *et al.*,   :

        Plaintiffs,   :   CIVIL ACTION NO. 3:20-1838

v.   :   (JUDGE MANNION)

NISSAN NORTH AMERICA, INC.,   :
*et al.*,
     :
        Defendants.
     :

## MEMORANDUM

Three car dealerships in Northeast Pennsylvania courted customers to buy their Nissan, Hyundai, and Kia cars by offering a "Set for Life Program," which featured free tune ups, oil changes, and the like. Plaintiffs bought the cars; then the dealerships went out of business. The plaintiffs say the manufacturers refused to honor the Set for Life Program benefits. One of those manufactures, Kia, now moves to dismiss the amended complaint. (Doc. 111). Kia says it was not involved with the Set for Life Program. Upon review of the amended complaint (Doc. 19), the court believes the plaintiffs have sufficiently alleged a breach of contract, but Pennsylvania law requires dismissal of the tort and statutory claims since the claims against Kia are really contract claims. So, the court will **GRANT in part** and **DENY in part** Kia's motion to dismiss as follows.

I.  **BACKGROUND**

The factual background in this matter is taken from the allegations in Plaintiffs' amended complaint (Doc. 19), which the court must accept as true for purposes of Kia's motion to dismiss.

Plaintiffs are three pairs of individuals (two married couples and one father and daughter) residing in Luzerne County, Pennsylvania. Defendants are three auto manufacturers[1] incorporated and headquartered in other states, three limited liability company auto dealerships incorporated in Pennsylvania, and two remaining individual dealership owners residing in other states. Defendant manufacturers are Hyundai Motor America, ("Hyundai"), Kia Motors America, ("Kia"), and Nissan North America, Inc., ("Nissan").

Defendant dealerships, with approval of Defendant manufacturers and owners, advertised a "Set for Life Program" which represented that vehicle purchasers would receive certain benefits, including engine warranties, oil and filter changes, car washes, loaner vehicles, and state inspections, free for the duration of their ownership of the vehicle. The Homanko plaintiffs

---

[1] Kia points out that its United States entity is not truly a "manufacturer" but a distributor and warrantor of Kia-branded vehicles in the United States. (Doc. 15 at 13). The court will keep with the term "manufacturer" for now since that is the term used throughout Plaintiffs' amended complaint.

purchased a vehicle from the "Hazleton Kia" dealership and were provided a brochure upon purchase specifying the benefits of the Set for Life Program.

The specific factual averments pertaining to Kia's alleged involvement in the Set for Life Program are as follows. A certain dealership agreement ("the Dealership Agreement") existed between Kia and its authorized Dealership, Hazleton Kia, for Hazleton Kia to sell Kia automobiles. The Dealership Agreement contained Kia's permission for Hazleton Kia to identify itself by using a portion of Kia's name, *i.e.*, "Hazleton Kia." The Dealership Agreement further provided Hazleton Kia could identify itself as authorized to sell Kia's products, use Kia's internationally known logo and trademark and engage in advertising campaigns, all of which were subject to Kia's approval and control. Kia knew of, approved and ratified the Set for Life Program, the marketing plan and advertising materials promoting the same and authorized the use of its logo by Hazleton Kia in connection with said advertising materials. Plaintiffs aver these actions by Kia were intended to create an expectation by Kia customers that Kia stood behind the Set for Life Program.

Hazleton Kia's financial condition began to deteriorate to such a degree that it was apparent that there was no way the promises made in the Set for Life Program could or would be honored. Rather than demand that its

authorized Dealership pull the program, Kia continued to permit Hazleton Kia to advertise and promote the Set for Life Program in an effort to boost sales and rehabilitate Hazleton Kia's financial condition. Kia specifically engaged in the aforementioned conduct—including advertising the Kia brand in connection with the Set For Life Program, continuing to allow Hazleton Kia to serve as its authorized dealer, authorizing or ratifying the Set For Life Program, and allowing the use of Kia's corporate, trademarked logo on advertising materials promoting the same—to create the expectation among the consuming public that Kia would step in and honor the Set for Life Program should Hazleton Kia be unable to do so. Plaintiffs relied upon these expectations.

Amid financial difficulties, the dealerships sold numerous vehicles without repaying the financing for those vehicles to certain manufacturer-affiliated financing entities, while still advertising the Set for Life Program benefits to purchasers. The dealerships went out of business in November of 2018, about two years after opening. Since the dealership closures, Kia has refused customers' demands to provide them with the Set for Life Program benefits. Had Plaintiffs known that Kia would not guarantee the Set for Life Program, they would have either not purchased their Kia vehicles or would have done so under different terms.

II.  **LEGAL STANDARD**

Kia's motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the complaint fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. *Id.* Furthermore, to satisfy federal pleading requirements, the non-moving party must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224,

231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

The court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is

justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

Finally, the court is sitting in diversity resolving a matter of state law in this case; thus, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

## III. DISCUSSION

A review of the amended complaint, the parties' submissions, and applicable law reveals, in the court's view, Plaintiffs have adequately alleged their contract and quasi-contract claims against Kia at this stage. However, as explained below, Pennsylvania's "gist of the action" doctrine requires dismissal of Plaintiffs' remaining non-contractual claims against Kia.

### A.  Breach of Contract and Unjust Enrichment

Kia argues the court should dismiss Plaintiffs' breach of contract claim because the plaintiffs are not in privity of contract with Kia, and the plaintiffs have failed to plead an exception to the privity requirement. Plaintiffs argue their breach of contract claims against Kia should go forward because they have alleged an exception to the privity requirement: namely, the dealership,

Hazleton Kia, with which Plaintiffs' allegedly entered a contract for the Set for Life Program, was Kia's agent, and Kia could thus be liable for the Set for Life Program benefits promised by the dealership. The court agrees.

"A breach of contract claim under Pennsylvania law requires a plaintiff to establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 486 (E.D. Pa. 2016) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). "Pennsylvania law requires privity for a breach of contract claim." *Id.* (citing *Ill. Union Ins. Co. v. Hydro Int'l, PLC*, 929 F.Supp.2d 365, 373 (M.D. Pa. 2013)). "Privity of contract exists when there is a connection or relationship which exists between two or more contracting parties." *Id.* (quoting *Travelers Indemnity Co. v. Mahiai*, 76 Pa. D & C.4th 34, 45 (Pa. Com. Pl. Ct. 2005)). Plaintiffs seem to concede they were not in privity of contract with Kia with regard to the Set for Life Program. They claim instead that Hazleton Kia, which Plaintiffs were in privity of contract with, was Kia's agent. Specifically, Plaintiffs aver Hazleton Kia was authorized by Kia to represent that Kia would provide the benefits set forth in the Set for Life Program. The existence of an agency relationship is an exception to the privity requirement. *See Whitaker*, 198 F.Supp.3d at 487 (citing *Robbins*

*Motor Transp., Inc. v. Translink, Inc.*, No. CIV.A. 07-150, 2009 WL 803711, at *9 (E.D. Pa. Mar. 26, 2009)).

Plaintiffs attempt to allege the existence of an agency relationship between Kia and the Hazleton Kia dealership on the basis of two agency theories: actual and apparent authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013) (quoting Restatement (Third) of Agency §2.01 (2006)). "Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Id.* (internal quotation marks and citations omitted). Actual authority, then, focuses on the manifestations from the alleged principal to the alleged agent, while apparent authority focuses on the manifestations from the alleged principal to the third party with whom the agent contracts. Whether based on actual or apparent authority, "the element of control is the touchstone of a principal-agent relationship." *Rantnetwork, Inc. v. Underwood*, No. 4:11-CV-1283, 2012 WL 1021326, at *5 (M.D. Pa. Mar. 26, 2012) (citations omitted).

Here, Plaintiffs have sufficiently alleged an agency relationship with regard to the Set for Life Program between Kia and the Hazleton Kia dealership based on actual authority. Viewed in the light most favorable to the Plaintiffs, the amended complaint alleges: (1) Kia permitted Hazleton Kia to use Kia's trademarked name and logos when doing business with the public; (2) Kia required Hazleton Kia's salesmen to attend regular sales and service meetings with Kia for the purposes of obtaining and implementing Kia's policies; (3) Kia retained control of and retained the right to approve all independent advertising and promotions done by Hazelton Kia, including for the Set for Life Program; (4) Kia reviewed, approved, and ratified the Set for Life Program, including the associated advertising strategy for the same; and (5) Kia specifically reviewed, approved, and ratified the Set for Life Program Agreement brochures that Plaintiffs were given with the installment sales contract for their vehicle, which were emblazoned with Kia's logo. These allegations demonstrate a significant degree of control by Kia of Hazelton Kia with regard to the Set for Life Program offered to Plaintiffs. And the court finds these allegations are sufficient at this stage to raise the contention that Hazelton Kia had actual authority to offer the Set for Life Program as an agent of Kia above the speculative level. Thus, the court will deny Kia's motion to dismiss on the ground that Plaintiffs' failed to allege contractual

privity or an exception. The court also finds the plaintiffs' alternative unjust enrichment claim should go forward at this stage. "Given that plaintiffs are permitted to plead in the alternative, it is premature at this juncture to dismiss the unjust enrichment claim." *Tray, Inc. v. Devon Int'l Grp., Inc.*, No. CV 21-1254, 2021 WL 1734845, at *9 (E.D. Pa. May 3, 2021) (quoting *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F.Supp.2d 452, 460 (E.D. Pa. 2013)). Thus, Kia's motion to dismiss the unjust enrichment claim will be denied.

### B.   Gist of the Action

Next, Kia moves to dismiss the plaintiffs' claims for violation of Pennsylvania's Uniform Trade Practice Consumer Protection Law (UTPCPL) and common law fraud. Kia argues, among other things, these claims are barred by the gist of the action doctrine. The plaintiffs do not respond to this argument, and, in any event, the court agrees.

The gist of the action doctrine in Pennsylvania provides that "an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Earl v. NVR, Inc.*, 990 F.3d 310, 314–15 (3d

- 11 -

Cir. 2021) (quoting *Dixon v. Nw. Mut.*, 146 A.3d 780 (Pa. Super. Ct. 2016)). "Whether the gist of the action doctrine applies in any particular setting is a question of law." *PPG Industries, Inc. v. Generon IGS, Inc.*, 760 F.Supp.2d 520, 528 (W.D. Pa. 2011) (citations omitted).

In *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014), the Pennsylvania Supreme Court delineated the test for applying the gist of the action doctrine:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

The focus, then, is on the alleged duty breached, not the labels affixed to a claim. "Put simply, consistent with *Bruno* and its predecessors,[] to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, "[w]hat's this case really about?" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010)).

The gist of the action doctrine does not preclude liability under the UTPCPL where the contract is only collateral to any allegedly deceptive conduct. *Earl v. NVR, Inc.*, 990 F.3d 310, 316 (3d Cir. 2021). In *Earl*,

> [The plaintiff,] Earl[,] entered into a contractual relationship with the defendant, NVR, Inc. ("NVR"). In that case, the contract was for the purchase of a new home. *Id.* at 311. Earl was "attracted to the purchase by NVR's marketing," which advertised "the Home as one which would contain 'quality architecture, timeless design, and beautiful finishes.'" *Id.* During the construction process, NVR's agents told her "that the Home would be constructed in a good and workmanlike manner; that NVR would remedy any deficiencies encountered by Earl; and that the Home would be constructed in accordance with relevant building codes and standards." *Id.* at 312. But when Earl moved into the home, she found numerous material defects which NVR failed to properly remedy. *Id.* The home was, moreover, missing several of the features and amenities promised by NVR. *Id.*

*Okulski v. Carvana, LLC*, No. CV 20-1328, 2021 WL 2223834, at *2 (E.D. Pa. June 2, 2021). The Court held that the gist of the action did not bar Earl's UTPCPL claim. The Court reasoned:

> Earl alleges NVR made false representations to her about the Home prior to the formation of the contract (in terms of how the Home was "marketed"), in further discussions held during the contract period, and while the Home was in the process of being constructed. Earl also alleges that NVR made false representations after the contract period, once she moved into the house. These alleged actions are collateral to the terms of the contract itself.

*Earl*, 990 F.3d at 315. The Court in *Okulski* similarly found that the plaintiff's allegations involved conduct collateral to the terms of the parties' contract for the sale of a used car. In that case, "Okulski allege[d] that he was induced to purchase the Vehicle by Defendants' marketing and pre-transaction representations—such as the company's advertisement of the Vehicle as

- 13 -

'CARVANA CERTIFIED' and subject to a 'careful 150-point inspection,' and its representation that the Vehicle had never been damaged or in an accident—and that the Vehicle failed to live up to these representations." *Okulski*, 2021 WL 2223834, at *3. Like *Earl*, the *Okulski* court reasoned that where a "defendant is alleged to have made false promises to induce the plaintiff to enter an agreement, *the subjects of which are not express terms of the parties' contract*, this conduct is collateral to the defendant's contractual obligations." *Id.* at *4 (emphasis added).

By contrast, claims sounding in fraudulent inducement (like the claims in this case) may be barred by the gist of the action doctrine as simply "concern[ing] the performance of contractual duties when the representations upon which the fraudulent inducement claim rests were later incorporated into the specific executory promises of the contract." *Corle Bldg. Sys., Inc. v. Ogden Welding Sys., Inc.*, No. 3:21-CV-00104-SLH, 2023 WL 4766019, at *6 (W.D. Pa. July 26, 2023) (citing *Downs*, 639 Fed.Appx. at 820 (recognizing, in light of *Bruno*, that "where the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract, the claim may be dismissed under the gist of the action doctrine.")).

Here, the court concludes that the plaintiffs' claims all stem from the alleged duties and obligations owed to them by nature of the Set for Life Program, under which the plaintiffs allege Kia was obligated to perform. Distilled to their essentials, the plaintiffs' allegations against Kia amount to: Kia said it would provide the Set for Life Program benefits alongside the dealerships but did not. The heart of the plaintiffs' fraud and UTPCPL claims is that Kia did not provide the Set for Life benefits. The alleged duty to provide those benefits is not "a broader social duty owed to all individuals," *Bruno*, 106 A.3d at 68, but rather arises from Kia's alleged promise (through Hazelton Kia) to provide those benefits. That claim sounds in contract.

The contrast between the allegations in this case and those in *Earl*, *Okulski*, and *Knight v. Springfield Hyundai*, 81 A.3d 940, 951 (Pa. Super. Ct. 2013), on which *Earl* and *Okulski* relied, further emphasizes the applicability of the gist of the action doctrine to the plaintiffs' fraud and UTPCPL claims. *Earl*, *Okulski*, and *Knight*, all involved extracontractual representations that did not concern specific, express duties in an alleged contract. In *Earl*, the plaintiff was promised that the home she purchased would contain "quality architecture, timeless design, and beautiful finishes," that the home would be constructed in a good workmanlike manner, and that the defendant would remedy any deficiencies encountered by the plaintiff. *Earl*, 990 F.3d at 311–

12. In *Okulski,* the plaintiff was promised the used car he purchased was "Carvana Certified," subject to a "careful 150-point inspection," and had never been damaged or in an accident. *Okulski*, 2021 WL 2223834, at *3. In *Knight*, the plaintiff was promised the used car she purchased "had only 26,539 miles on it," "had not been in any prior accidents or previously damaged," and "had one prior owner," and she was promised that the defendant dealership "would submit the necessary information to have the title and registration placed in her name." *Knight*, 81 A.3d at 951. All of these promises were "not express terms of the parties' contract[s]," *Okulski*, 2021 WL 2223834, at *4, bringing them outside the ambit of the gist of the action doctrine.

Here, by contrast, the alleged fraudulent promises from Kia relative to the Set for Life Program were the subjects of the express terms Plaintiffs say Kia was obligated by contract to perform. The Set for Life Program promises are not collateral to Plaintiffs' tort and UTPCPL claims—they are central to those claims.

The plaintiffs' allege generally that Kia violated numerous provisions of the UTPCPL and Pennsylvania's "automotive industry trade practices." (Doc. 19). But they support that allegation only by reference to "the false and misleading representations described herein *in connection with the Set for*

*Life Program.*" (Doc. 19) (emphasis added). The representations "in connection with the Set for Life Program" described in the amended complaint all pertain to Kia's and its alleged agent, Hazelton Kia's, duty to provide the Set for Life Program benefits—an alleged contractual duty. The plaintiffs' allegations in their fraud claim are similarly limited to Kia's alleged representations that it would provide the Set for Life Program benefits. Therefore, these claims are barred by the gist of the action doctrine.

The court will thus grant Kia's motion to dismiss the plaintiffs' fraud and UTPCPL claims. Dismissal will be without prejudice since it has not been shown that any amendment would be futile; perhaps there are facts the plaintiffs' can plead to bring their UTPCPL or fraud claims against Kia outside the ambit of the gist of the action doctrine.

## IV. CONCLUSION

In light of the foregoing, the court will **GRANT in part** and **DENY in part** Kia's motion to dismiss (Doc. 111). The court will **GRANT** Kia's motion to dismiss Plaintiffs' UTCPL and fraud claims against it; those claims will be **DISMISSED** without prejudice. Kia's motion will be **DENIED** in all other respects. An appropriate order follows.

_____
**MALACHY E. MANNION**
United States District Judge

**DATE: September 29, 2023**
20-1838-04