IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL P. HOMANKO, JR.** and | : | **No. 3:20cv1838** |
| **SHERRI A. HOMANKO;** | : | |
| **individually and on behalf of all** | : | **(Judge Munley)** |
| **others similarly situated,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KIA MOTORS AMERICA;** | : | |
| **AIRPORT ROAD MOTORS K, LLC** | : | |
| **d/b/a HAZLETON HYUNDAI;** | : | |
| **MICHAEL S. SAPORITO;** and | : | |
| **JESSIE W. ARMSTEAD,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is a partial motion to dismiss for failure to state a claim filed by Defendant Kia America, Inc., formerly known as Kia Motors Inc. ("Kia"), to Plaintiffs Michael P. Homanko, Jr. and Sherri A. Homanko's second amended class action complaint. (Doc. 140). This matter is ripe for decision.

## Background

This is an action against Kia relative to a vehicle maintenance and service benefit program offered by a local Kia dealership, Defendant Airport Road Motors

K, LLC d/b/a Hazleton Kia ("Hazleton Kia"), which is now defunct.[1] (See Doc. 138, Sec. Am. Compl.).

Prior to ceasing operations, Hazleton Kia advertised a Set For Life Program ("Set for Life") which promised that "all purchasers would receive powertrain/engine/transmission warranties, free oil and filter changes, free car washes, free loaner vehicles and free state inspection[.]" (Id. ¶ 13). Plaintiffs, a father and daughter, purchased a new 2017 Kia Sorrento from Hazleton Kia on or about August 21, 2017. (Id. ¶ 28). They allege that they were provided Set For Life brochures featuring Defendant Kia's logo. (Id. ¶ 29). These brochures specifically stated that Set For Life benefits would be available for as long as the plaintiffs owned their Kia Sorrento. (Id. ¶ 31). But Hazleton Kia went out of business approximately one year after the plaintiffs purchased their Kia Sorrento and about two years after the dealership first opened its doors. (Id. ¶¶ 13, 27, 39). Set For Life maintenance and service benefits stopped being honored. (See id. ¶ 39)

As for Kia's alleged involvement in Set for Life, the plaintiffs aver as follows: Hazleton Kia entered into a dealership agreement with Kia, which authorized

---

[1] These background facts derive from plaintiffs' second amended complaint. The court accepts all factual allegations in the second amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

Hazleton Kia to sell Kia vehicles. (Id. ¶ 11).  Among other things, Hazleton Kia

agreed to: (a) market Kia's new vehicles; (b) attain certain sales targets; (c)

conspicuously display Kia's approved signage; and (d) send Hazleton Kia's

salespersons to Kia's sales and service meetings. (Id.)  In turn, Kia authorized

Hazleton Kia to, *inter alia*: (a) market Kia vehicles locally and nationally; (b) sell

and lease Kia vehicles to consumers; (c) identify as a Kia authorized dealership;

(d) use Kia logos and marks in advertising, promotion, sales, and servicing of Kia

vehicles; and, most relevant to this case, (e) engage in their own independent

advertising and promotion of Kia vehicles, goods, and services subject to Kia's

prior approval. (Id.)

     Per plaintiffs, Kia knew of, approved, and ratified Set for Life and its

advertising and marketing plans. (Id. ¶¶ 13-15).  Kia also authorized the use of its

logo by Hazleton Kia in connection with Set For Life advertising and marketing.

(Id.)  Plaintiffs contend that Kia's conduct "intended to create the expectation

among potential car purchasers/lessees" that Kia had guaranteed Set For Life

benefits. (Id. ¶¶ 14-15).  For example, plaintiffs allege that Kia provided prior

approval and ratification of Hazelton Kia's use of Defendant Jesse Armstead's

notoriety as a retired professional football player to advertise Kia vehicles and

Set For Life benefits through meet-and-greet appearances, advertisements, and on social media.[2] (Id. at ¶ 16).

As alleged, Hazleton Kia's financial condition began to deteriorate soon after opening for business. (Id. ¶ 22). Per plaintiffs, Kia knew or should have been aware of Hazleton Kia's financial problems through the terms of financing and inventory agreements that Kia or its closely affiliated entities executed with Hazleton Kia. (Id. ¶¶ 9-10, 23). Hazleton Kia's woes were allegedly to a point where Kia knew or should have known that Hazleton Kia could not possibly continue to represent that Set For Life benefits would be honored. (Id. ¶ 25). Instead, Kia permitted Set For Life marketing to continue in the hopes that it would generate additional sales and leases of Kia vehicles and enable Hazleton Kia to escape their financial troubles. (Id. ¶¶ 24, 26).

In seeking to hold Kia liable in this matter, plaintiffs allege that Kia's conduct created an expectation among the plaintiffs and the consuming public that Kia would step in and honor Set for Life benefits. (Id. ¶¶ 14-15, 30-33). Per plaintiffs, Set For Life benefits induced them to purchase their Kia Sorrento at a price they would not have otherwise agreed to and they relied upon Kia's representations to their detriment. (Id. ¶¶ 35-36). Since Hazleton Kia closed its

---

[2] Defendant Armstead is alleged to be a co-owner of Hazleton Kia. (Doc. 16, Sec. Am. Compl. ¶¶ 4-7).

doors, Kia has refused customers' demands to refund all or part of the purchase or lease price of vehicles, including the demands of the plaintiffs. (Id. ¶¶ 27, 39).

Plaintiffs' second amended complaint asserts four (4) causes of action. Count I seeks recovery under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. §§ 201-1, ("UTPCPL"). (Id. ¶¶ 49-62) Count II advances a breach of contract claim and Count III asserts a claim for unjust enrichment. (Id. ¶¶ 70-76).  Count IV asserts a cause of action for fraud under the common law. (Id. ¶¶ 77-90).

Plaintiffs previously raised these same claims in their first amended complaint. (Doc. 19).  At that time, Kia moved to dismiss all claims. (Doc. 111). In a memorandum dated September 29, 2023, Judge Mannion granted the motion to dismiss as to plaintiffs' UTPCPL and fraud claims. (Doc. 129).  In doing so, Judge Mannion determined that Pennsylvania's gist of the action doctrine barred the UTPCPL and fraud claims as alleged. Hagenbaugh v. Nissan N. Am., Inc., No. 3:20cv1838, 2023 WL 6465414, at *4–*6 (M.D. Pa. Sept. 29, 2023).  He also provided plaintiffs leave to amend those causes of action. Id. at *7.

In the second amended complaint, plaintiffs now emphasize that the Set For Life promises were collateral to the terms of the standardized contracts executed by plaintiffs and other customers when purchasing or leasing new or used Kia vehicles. (Doc. 138, Sec. Am. Compl. ¶ 20)  Plaintiffs also allege that

5

the terms of the standardized contracts did not incorporate Set For Life or any specific promises of that benefits program, but rather, the standardized contracts purported to disclaim any and all warranties, obligations, and representations not specifically referenced. (Id.).

Kia responded with a motion to dismiss the UTPCPL and common law fraud claims from the second amended complaint. (Doc. 140).  Having been fully briefed, the motion to dismiss is ripe for disposition.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332(a).  Plaintiffs are citizens of the Commonwealth of Pennsylvania. (Doc. 138, Sec. Am. Compl. ¶ 2).  Kia is alleged to be a corporation organized and existing under the laws of California with its principal place of business in Irvine, California. (Id. ¶ 3).   Hazleton Kia is alleged to be a limited liability corporation ("LLC") organized under the laws of the Commonwealth of Pennsylvania. For the purposes of 28 U.S.C. § 1332(a), however, the citizenship of an LLC is determined by the citizenship of its members. See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015); Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010). The second amended complaint alleges that Defendants Michael Saporito and Jesse Armstead were members of the Hazleton Kia entity. (Id. ¶¶ 5-7).  Defendant Saporito is alleged to be a citizen of

6

New Jersey and Defendant Armstead is alleged to be a citizen of Texas. (Id. ¶¶ 5-6).   Hazelton Kia is thus a citizen of states other than Pennsylvania because it is a limited liability company, and its members are non-Pennsylvania citizens. (Doc. 1, Not. of Removal ¶ 14).

Additionally, the amount in controversy exceeded $75,000 at the time this matter was commenced based on plaintiffs' requests for relief, including their claims for actual damages, compensatory damages, punitive damages, and treble damages and attorneys' fees recoverable pursuant to the UTPCPL. (Id., Requests for Relief).

Because complete diversity of citizenship exists among the parties and the amount in controversy exceeded $75,000 at the commencement of the action, the court has jurisdiction over this case.  See 28 U.S.C. § 1332(a) ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]"); 28 U.S.C. § 1441 (A defendant can generally move a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).

The court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) as part of the Class Action Fairness Act of 2005 ("CAFA").  "CAFA confers on district courts

'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members[.]" Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014)(citing 28 U.S.C. § 1332(d)(2), (d)(5)(B), (d)(6); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 590 (2013). Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). As detailed above, there is complete diversity in this matter. As for the numerosity requirement, plaintiffs' class allegations identify the proposed class (with exclusions) as "residents" and "individuals located within" the Commonwealth of Pennsylvania who purchased or leased a new or used Kia from Hazleton Kia between November 1, 2016 through November 30, 2018, which plaintiffs estimate is at least 1000 individuals. (Id. ¶¶ 41-43). Given the plaintiffs' alleged damages and requests for relief and the estimated number of individuals in the proposed class, the amount in controversy exceeds $5,000,000, as aggregated across all individual claims.

All of plaintiffs' claims arise under state law. As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). "[S]ubstantive issues should be decided as

8

the Pennsylvania Supreme Court would rule if it were deciding on case[,]" and

"[i]n making that prediction, the decisions of intermediate Pennsylvania appellate

courts receive significant weight in the absence of an indication that the highest

state court would rule otherwise." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th

183, 204 (3d Cir. 2022)(citations and quotation marks omitted).

**Legal Standard**

Kia filed the motion to dismiss plaintiffs' UTPCPL and fraud claims pursuant

to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

relief can be granted.  The court tests the sufficiency of the complaint's

allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all

factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Citing the breach of contract claim, which it does not move to dismiss, Kia argues that the gist of the action doctrine bars the plaintiffs' claims for fraud and for violation of the UTPCPL.  Kia also argues that plaintiffs failed to plead facts satisfying all elements of these claims.  The court will begin with a discussion of the gist of the action doctrine.

**1. Gist of the Action Doctrine**

Under Pennsylvania law, the gist of the action doctrine provides "that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014)(citations omitted).

To determine if a claim is barred by the gist of the action doctrine, the Pennsylvania Supreme Court has set forth the following test:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their

> contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.
>
> If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. at 68 (citations omitted)(formatting modified).

Even under the gist of the action doctrine, "it is still possible for the same act to breach both a duty under tort law and a contractual duty." SodexoMAGIC, LLC, 24 F.4th at 217. Moreover, "a precontractual duty not to deceive through misrepresentation or concealment exists independently of a later-created contract." Id. (citing Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991)(further citation omitted). "And even if such a duty could be retroactively incorporated into a contract, that would still not foreclose a tort action." Id.

Plaintiffs' second amended complaint emphasizes that Kia's representations relative to Set For Life benefits "were collateral to the terms of the standardized sales contract which the [plaintiffs] were required to execute when they purchased their new Kia vehicle." (Doc. 138, Sec. Am. Compl. ¶ 38). They further allege that "[t]he terms of the standardized sales contract…did not incorporate, either expressly or impliedly, the Set for Life Program and/or any of the benefits that were promised therein. To the contrary, the terms of the

11

[plaintiffs'] Retail Installment Sales Contract purported to disclaim any/all warranties, obligations and representations which were not specifically referenced therein." (Id.)

The second amended complaint makes clear that the plaintiffs allege that they were fraudulently induced into executing the sales contract for the Kia Sorrento by the promises of Set For Life maintenance and service benefits, which are not themselves delineated in the sales contract.  The question is now whether that clarity permits separate tort and contract causes of action based on Kia's alleged failures to honor Set For Life benefits or whether, as Kia argues, "this is a distinction without any significance." (Doc. 146, Def. Br. in Supp. at 11).

Pennsylvania law indicates "that the gist of the action doctrine should not preclude liability under the UTPCPL where the contract is collateral to any allegedly deceptive conduct." Earl v. NVR, Inc., 990 F.3d 310, 316 (3d Cir. 2021)(citing Dixon v. Nw. Mut., 146 A.3d 780, 790 (Pa. Super. Ct. 2016), Knight v. Springfield Hyundai, 81 A.3d 940, 951 (Pa. Super. Ct. 2013); see also Okulski v. Carvana, LLC, No. CV 20-1328, 2021 WL 2223834, at *2–*5 (E.D. Pa. June 2, 2021).  Where a complaint is not primarily premised upon the terms of a contract, but on the marketing and representations that induced plaintiffs to enter a contract in the first instance, the gist of the action doctrine does not apply. See Earl, 990 F.3d at 315 (discussing Knight, 81 A.3d at 951).

In <u>Knight</u>, a panel of the Superior Court of Pennsylvania determined that the gist of the action doctrine did not apply to UTPCPL claims where a Hyundai dealership allegedly: a) made promises online regarding the purchase of a new car, which the plaintiff confirmed over the phone, but pulled a bait-and-switch to a used car when the plaintiff went to the dealership; b) manipulated the odometer of the used car; c) concealed the car's involvement in an accident; d) misrepresented the number of private owners; e) lied about the vehicle's operating condition, including known mechanical issues; f) failed to submit information to put the title and registration in the plaintiff's name as promised; g) lied about financing being approved; and h) misrepresented that the plaintiff could refinance the vehicle or purchase another vehicle after six months. <u>Id.</u> at 951.

Per the Superior Court, "[a]lthough [the plaintiff] purchased the vehicle pursuant to the contract, the alleged representations by [the dealership] occurred prior to the signing of any contract." <u>Id.</u>  Moreover, because the "false advertisements, statements, and assurances" in that case were rendered unlawful by provisions of the UTPCPL, the court determined that the plaintiff's claims were "not masked claims for breach of contract; the gist of the action here is in tort, and the contract is collateral to the matters alleged." <u>Id.</u>

Similarly, in Okluski, the district court determined that the gist of the action did not preclude a plaintiff's UTPCPL and fraud claims where the plaintiff averred that he was induced to purchase a vehicle by defendants' marketing and pre-transaction representations, such as the company's advertisement of the vehicle as certified and subject to a multi-point inspection and a representation that the vehicle had never been damaged or in an accident.  2021 WL 2223834 at *3.

Although the defendants in this case are not alleged to have made misrepresentations about the vehicle itself prior to sale as in the above cases, the plaintiffs allege that they bought their Kia Sorrento based on all of the defendants' pre-contractual promises that they would provide service and maintenance benefits throughout the life of plaintiffs' ownership of the vehicle. This case is sufficiently like Knight and Okluski to analogize the facts and apply the same principles.

 In light of the above considerations, the gist of the action doctrine does not apply to the claims as alleged in plaintiffs' second amended complaint.

### 2. Plaintiffs' UTPCPL Claim

As alternative arguments, Kia challenges the sufficiency of plaintiffs' UTPCPL and fraud claims.  The court will review each of these claims in turn.

As enacted, the UTPCPL declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce as defined" by statute or by

promulgated regulations. 73 PA. STAT. § 201-3(a).  The statute lists specific

"unfair or deceptive acts or practices." 73 PA. STAT. § 201-2(4)(i)-(xxi). The last

articulated act or practice in the statute is a catch-all provision which makes it

unlawful to engage "in any other fraudulent or deceptive conduct which creates a

likelihood of confusion or of misunderstanding." 73 PA. STAT. § 201-2(4)(xxi).

Pennsylvania law provides plaintiffs a private cause of action to recover

damages when they suffer "any ascertainable loss of money or property, real or

personal" as a result of the use of methods, acts, or practices declared unlawful

by the UTPCPL in the sections listed above.[3] 73 PA. STAT. § 201-9.2(a).

To establish a claim under the UTPCPL, a party must demonstrate that:

> (1) they purchased or leased 'goods or services primarily
> for a personal, family, or household purpose'; (2) they
> suffered an 'ascertainable loss of money or property'; (3)
> the loss occurred 'as a result of the use or employment by
> a vendor of a method, act, or practice declared unlawful by'
> the [UTPCPL]; and (4) the consumer justifiably relied upon
> the unfair or deceptive business practice when making the
> purchasing decision.

Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 646 (Pa. 2021) (citations omitted).

Plaintiffs allege that Kia engaged in nine (9) separate "unfair or deceptive

acts or practices," including violation of the catch-all provision. (Doc. 138, Sec.

Am. Compl. ¶ 52).  Plaintiffs also aver that Kia's conduct violated regulations

---

[3] Such an action is limited to where a person "purchases or leases goods or services primarily
for personal, family or household purposes[.]" 73 PA. STAT. § 201-9.2(a)

promulgated pursuant to the UTPCPL, 73 PA. STAT. § 201-3.1. (Id. ¶¶ 59-60

(citing 37 PA. CODE. §§ 301.1, 301.2)).

Kia argues that the plaintiffs fail to allege how Kia itself engaged in these

"unfair or deceptive acts or practices" as made unlawful by UTPCPL.  Kia takes

the position that the acts complained of are attributable to the dealership and its

owners.  Despite Kia's attempts to divorce itself from the conduct of the other

defendants, however, this case is not postured in a manner that permits the court

to evaluate Kia's oversight of the dealership, weigh whether Kia had requisite

contacts with the plaintiffs prior to the purchase, or analyze the extent of Kia's

involvement in the purchase agreements that were executed.  Rather, the court

presumes the allegations of the second amended complaint to be true.

Plaintiffs allege that Kia knew of, approved, and ratified Set for Life and its

advertising and marketing plans. (Doc. 138, Sec. Am. Compl. ¶¶ 13-15).  Per

plaintiff, Kia also authorized the use of its logo by Hazleton Kia in connection with

Set For Life advertising and marketing. (Id.)   As alleged, Kia's conduct "intended

to create the expectation among potential car purchasers/lessees" that Kia had

guaranteed Set For Life benefits. (Id. ¶¶ 14-15).  Such allegations are sufficient

to state the plaintiffs' claim for each of the UTPCPL violations they allege.

Kia also argues that plaintiffs cannot meet the element of justifiable

reliance.  After careful consideration of the facts averred in the second amended

complaint, the court disagrees.  From the sum of plaintiffs' allegations, the promises to provide future Set For Life maintenance and service benefits for plaintiffs' Kia Sorrento were advertised, marketed, and offered to plaintiffs in conjunction with purchase and were represented to last as long as plaintiffs owned the vehicle.  These benefits have costs, and per plaintiffs, Kia misled them into thinking that those benefits would be provided long-term and free of charge if the vehicle was purchased.  Plaintiffs aver that they purchased the vehicle at a price they otherwise would not have agreed to based upon Set For Life related advertisements and representations, i.e., the plaintiffs considered projected costs of future vehicle maintenance and service when they bought the vehicle, and this thinking factored into their purchase considerations. (Id. ¶ 36). Accordingly, plaintiffs' second amended complaint sufficiently alleges that they justifiably relied upon unfair or deceptive acts or practices attributable to Kia. The motion to dismiss plaintiffs' UTPCPL will thus be denied.

### 3. Plaintiffs' Fraud Claim

Plaintiffs' fraud claim in Count IV of the second amended complaint is premised upon fraudulent misrepresentation. (Doc. 138, Sec. Am. Compl. ¶ 84). To succeed with such a claim, plaintiffs must ultimately prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false;

17

(4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance. <u>Gregg</u>, 245 A.3d at 645–46 (citing <u>Bortz v. Noon</u>, 729 A.2d 555, 560 (Pa. 1999)).

Kia argues that plaintiffs' allegations fail to meet the heightened pleading standard required by the Federal Rules of Civil Procedure, which provide that "a party must state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b).  Specifically, Kia cites deficiencies in plaintiff's pleading that Kia itself engaged in fraudulent acts with the requisite knowledge and intent.

Rule 9(b) "has been interpreted to require that plaintiffs 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged' and 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" <u>Alpizar-Fallas v. Favero</u>, 908 F.3d 910, 919 (3d Cir. 2018)(quoting <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007))(internal quotation marks, bracketing and further citation omitted).

As discussed above, plaintiff's second amended complaint connects Kia to the alleged wrongful conduct.  Regarding plaintiffs' own experience, they purchased a Kia Sorrento in August 2017 after being provided Set For Life brochures with Kia's logo on them and seeing related signage across the

18

dealership. (Doc. 138, Sec. Am. Compl. ¶¶ 28-29).  Plaintiffs aver that Set For Life was offered with Kia's knowledge, approval, and/or ratification. (Id. ¶ 14). Plaintiffs also aver that Hazleton Kia had financial difficulties from the time it opened, approximately one year before plaintiff's purchase, and Kia knew that this particular dealership's finances were deteriorating. (Id. ¶¶ 9-11, 23).  As alleged, Kia nonetheless continued to authorize and/or ratify advertising and marketing of Set For Life at the dealership knowing that these representations about free, long-term service benefits could not be made during the time plaintiffs were customers. (Id. ¶¶ 24-26).   These allegations provide the specificity about the requisite conduct and state of mind to move forward with a fraud claim against Kia.

Kia also argues that the plaintiffs' fail to connect their justifiable reliance and damages allegations to Kia.  As noted above in Section 2, plaintiffs sufficiently allege their justifiable reliance on conduct attributable to Kia.  As for pleading of an injury attributable to Kia caused by such reliance, plaintiffs aver that they would not have purchased the vehicle or that they would have purchased the vehicle on different terms if they knew the truth. (Id. ¶ 62).

Fraud must be proven by clear and convincing evidence, and whether the evidence meets the required standard to justify its submission to the jury is a question of law. Gerfin v. Colonial Smelting & Ref. Co., 97 A.2d 71, 72 (Pa.

19

1953).  Despite Kia's arguments, the court is not weighing the sufficiency of

plaintiffs' evidence at this stage, but rather deciding whether the second

amended complaint states a plausible fraud claim with the requisite specificity.

The court concludes that plaintiffs' allegations meet that standard.  Accordingly,

Kia's motion to dismiss the plaintiffs' fraud claim will be denied. [4]

**Conclusion**

For the reasons set forth above, Kia's motion to dismiss plaintiffs' second

amended complaint will be denied.  An appropriate order follows.

---

[4] Kia also raises the economic loss doctrine in a single paragraph of their motion to dismiss the plaintiffs' fraud claim.  Application of the economic loss doctrine turns on the source of the duty plaintiffs claim the defendant owed.  Dittman v. UPMC, 196 A.3d 1036, 1054 (Pa. 2018)(citing Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 288 (Pa. 2005)(further citation omitted)).  "[I]f the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." Id.  As noted above regarding the gist of the action doctrine, a precontractual duty not to deceive through misrepresentation exists independently of a later-created contract. SodexoMAGIC, 24 F.4th at 217.  Because the duty not to deceive exists outside of the contractual duties in the sales agreement, the economic loss doctrine does not bar plaintiffs' fraud claims.

Date: _9/30/24_

_____
JUDGE JULIA K. MUNLEY
United States District Court